**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>DEQSER LLC, *et al*.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-10687 (CTG)<br>(Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTORS TO (I) MAINTAIN, CONTINUE, AND RENEW THEIR UMBRELLA, LIABILITY, COMMERCIAL AUTO AND OTHER INSURANCE POLICIES AND AGREEMENTS, AND (II) HONOR ALL OBLIGATIONS IN RESPECT THEREOF**

KNY 26671 LLC ("**KNY**") one of the debtors and debtors-in-possession in the above captioned matters, of the proposed administratively consolidated Chapter 11 Cases, by and through its undersigned counsel, respectfully moves this Court for entry of interim and final orders, attached as **Exhibit B** and **Exhibit C** respectively, authorizing, but not directing, KNY to (i) maintain its existing insurance policies and pay all insurance obligations arising thereunder or in connection therewith; (ii) renew, revise, extend, supplement, change or enter into new insurance coverage as needed in its business judgment, and (iii) authorizing the Debtor to enter into an insurance premium finance agreement (the "**Agreement**") with IPFS Corporation ("**IPFS**") and incur indebtedness, (iv) granting IPFS a security interest in and lien upon all unearned or returned premiums and related amounts which may become payable under the: (a) property insurance issued by Kinsale Insurance Company, (ii) the property insurance issued by Gotham Insurance Co, (c) the boiler insurance issued by National Fire Insurance Co. of Hartford, (d) the property insurance issued by Arch Specialty Insurance Co., and (e) the property insurance issued by Starr Indemnity

[1] The Debtors in these Chapter 11 cases, along with the last four (4) digits of their federal tax identification numbers, are: (i) Deqser LLC (8269) and (ii) KNY 26671 LLC (9132) (collectively, the "Debtors"). The Debtors' mailing address is: c/o Cooperative Laundry, 1 Eastern Road, Kearny, NJ 07032.

& Liability Co., (the insurance policies referenced herein shall collectively referred to as the "**Financed Policies**") which policies are identified in the Agreement and a lien upon and security interest in loss payments but only to the extent such loss payments reduce the unearned premiums and subject only to any mortgage or loss payee interest pursuant to 11 U.S.C. § 364(c)(2), and (c) granting related relief. In support of the Motion, KNY relies on and incorporates by reference the *Declaration of Sang Cho in Support of Chapter 11 Petitions and First Day Motions (the "**First Day Declaration**"),* filed contemporaneously herewith and represents as follows:

**Jurisdiction and Venue**

1. This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Background**

2. On April 10, 2025 (the "**Petition Date**"), KNY and Deqser LLC ("**Deqser**") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et. seq. (the "**Bankruptcy Code**"), commencing the above-captioned chapter 11 cases (collectively, the "**Chapter 11 Cases**," and each, a "**Chapter 11 Case**") in the United States Bankruptcy Court for the District of Delaware. (KNY and Deqser shall be collectively referred to as the "**Debtors**").

3. The Debtors are operating their businesses and managing their property as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the filing of this Motion, no request has been made for the appointment of a trustee or examiner and no statutory committee has been appointed in the Chapter 11 Cases.

4. KNY operates a commercial laundry and therefore requires insurance to operate its business. Deqser is a holding company that's sole asset is its 100% membership interest in Deqser. As Deqser does not own any tangible assets, it has no insurable property and therefore does not require insurance to operate its business.

5. KNY has been unable to pay in the ordinary course of business pursuant to 11 U.S.C. § 364(a), the premiums for the Financed Policies identified in the Agreement, and has been unable, after reasonable efforts, to obtain unsecured credit for such payment pursuant to 11 U.S.C. § 364(b).

6. KNY has engaged in discussions with various companies in the business of providing insurance premium financing and has determined that IPFS offers the most advantageous terms for such financing. A copy of the Agreement is attached hereto as **Exhibit D** and incorporated herein by reference.

7. Further information regarding the Debtors and the events leading up to the Petition date and the facts and circumstances supporting the relief requested herein are set forth in the First Day Declaration filed contemporaneously herewith.

**Relief Requested**

8. KNY maintains various insurance programs providing coverage for, among other things, general liability, workers' compensation liability, commercial auto, property, Boiler and commercial umbrella (collectively, the "**Insurance Programs**")[2]. The Insurance Programs include coverage primarily from the insurance policies listed on **Exhibit A** hereto (the "**Insurance Policies**"), some of which KNY has obtained through a third-party insurance broker (the "**Insurance Broker**"), and some of which KNY has obtained directly from the Travelers.

[2] The Debtor KNY obtains the benefits of workers compensation insurance from its PEO, ADP TotalSource, Address: 10200 Sunset Drive, Miami FL 33173

9. KNY seeks entry of an order (a) authorizing, but not directing, KNY to continue and, to the extent necessary, revise, extend, renew, supplement, or change its prepetition Insurance Policies, or enter into new policies, if necessary, in the ordinary course of business, (b) authorizing, but not directing, KNY to pay all prepetition obligations in respect thereof, including amounts due to IPFS and administrative fees (collectively, the "**Insurance Obligations**") in the ordinary course of business and pay prepetition obligations in respect thereof.

10. By this Motion, KNY also requests that the Proposed Order, also authorizes the KNY to enter into the Agreement with IPFS and incur secured debt under the Agreement.

11. In connection with its business operations, KNY maintains multiple Insurance Policies that vary in amounts and types of coverage in accordance with prudent business practices, state and local laws governing the jurisdictions in which KNY operates and various contractual obligations. The Insurance Policies include the policies identified above as KNY's Insurance Programs.

12. The total monthly amount that KNY is obligated to pay for insurance is $148,902.66, which is comprised of $42,876.00, that KNY due to IPFS under the Agreement and $106,026.30 that KNY pays directly to the Travelers. These amounts include all related taxes, fees, and charges. The amount due to IPFS is paid to KNY's insurance broker, William R. Seide LLC.

13. KNY does not believe there are any prepetition amounts owing to the Insurance Carriers with respect to the Insurance Policies, however KNY is one month behind in its premium finance facility with IPFS. KNY seeks authority to pay IPFS any pre-petition amounts in respect to the Insurance Policies, and to continue to pay post-petition costs with respect to its premium finance facility with IPFS in the ordinary course of business during the pendency of these cases.

## <u>Basis for Relief</u>

14. It is essential to KNY's business that it receives authority to: (a) maintain its Insurance Policies and Insurance Programs; (b) renew or replace its Insurance Policies and Insurance Programs, if necessary, in the ordinary course of business during the pendency of this case; (c) pay the Insurance Obligations; [and (D) maintain its premium finance arraignments].

### I. Payment of the Insurance Obligations is Authorized under Section 363 of the Bankruptcy Code

15. Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under section 363(b), courts require only that the debtor "show that a sound business purpose justifies such actions." *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (citations omitted); *see also In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987); *In re Adelphia Commc'ns Corp.*, No. 02-41729 (REG), 2003 WL 22316543, at *30 (Bankr. S.D.N.Y. Mar. 4, 2003); *In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re JohnsManville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

16. KNY believes, in its business judgment, that maintaining its Insurance Policies and Insurance Programs is prudent. Maintenance of insurance coverage under the various Insurance Policies is required under the laws of the various states in which KNY operates, and/or the KNY's various financial agreements. Given this requirement, KNY believes that the maintenance of its

Insurance Programs and Insurance Policies, and the renewal, revision, extension, supplementation, change, or entering into new insurance coverage, as needed in its business judgment without further order of the Court, is necessary and essential to KNY's operation of its businesses during these cases. Because KNY is required to maintain insurance coverage during these cases, the cancellation of these policies would be particularly disastrous.

17. Non-payment of the Insurance Obligations could result in cancellation of the Insurance Policies, in which case KNY would not only be in violation of the U.S. Trustee Guidelines, the laws of various states in which the KNY operates, and/or various contractual agreements, but also KNY may be unable to find alternative insurance coverage, or find such alternatives only at a much higher cost than KNY currently incurs.

18. Accordingly, KNY should be granted authorization to pay the Insurance Obligations and to revise, extend, supplement, renew, change or enter into new Insurance Policies, as needed in its business judgment. KNY seeks authority to pay any obligations that may become due in the ordinary course of business with respect to the Insurance Policies if such payment is necessary in KNY's business judgment in order to avoid cancellation or interruption of insurance coverage or brokerage services.

## II. Payment of the Insurance Obligations is Authorized under Sections 1107(a) and 1108 of the Bankruptcy Code.

19. KNY, operating its businesses as a debtor in possession under sections 1107(a) and 1108 of the Bankruptcy Code, is a fiduciary "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [its] creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the duties of a Chapter 11 debtor in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." *Id.*

20. Courts have noted that there are instances in which a debtor in possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.*; *see also In re Mirant Corp.*, 296 B.R. 427, 429-30 (Bankr. N.D. Tex. 2003) (allowing Debtor to pay claims "reasonably believe[d]" to be authorized under the *CoServ* test or whose payment was necessary "in the exercise of its business judgment . . . in order for [the d]ebtors to continue its respective businesses"). The *CoServ* court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *CoServ*, 273 B.R. at 497. The court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.* at 498.

21. Payment of the Insurance Obligations and the revision, extension, supplementation, renewal, change or entering into new Insurance Policies, as needed in KNY's business judgment, meets the *CoServ* court's standard. As noted above, insurance coverage is required by the Office of the United States Trustee (the "**U.S. Trustee**"). *See* 3 United States Trustee Manual, § 3-3.2.3 (Oct. 1998) ("A debtor must obtain appropriate insurance coverage, and documentation regarding the existence of the coverage must be provided to the Office of the United States Trustee as early in the case as possible."). Moreover, as a fiduciary for the bankruptcy estate, KNY could be violating its duties if it in any way jeopardizes the coverage provided under the Insurance Policies.

22. Second, as described above, non-payment of the Insurance Obligations could result in cancellation of the Insurance Policies, in which case KNY would not only be in violation of the laws of the State of New Jersey, the state in which the KNY operates, and various contractual agreements, but also KNY may be unable to find alternative insurance coverage, or find such alternatives only at a much higher cost than KNY currently incurs. Therefore, the potential harm and economic disadvantage that would stem from the cancellation of the Insurance Policies and failure to renew the Insurance Policies or revise, extend, supplement, change or enter into new insurance arrangements as needed in its business judgment, are grossly disproportionate to the amount of the Insurance Obligations, and the costs to renew, revise, extend, supplement, change or enter into new insurance coverage.

23. Accordingly, to meet its fiduciary duties as a debtor in possession under sections 1107(a) and 1108 of the Bankruptcy Code, KNY must be authorized to pay the Insurance Obligations and to revise, extend, supplement, renew, change or enter into new Insurance Policies, as needed in its business judgment. KNY thus seeks authority to pay all Insurance Obligations that may become due with respect to the Insurance Policies if such payment is necessary in the KNY's business judgment in order to avoid cancellation or interruption of insurance coverage or brokerage services. In addition, KNY seeks authority to revise, extend, supplement, renew, change or enter into new Insurance Policies, as needed in its business judgment.

## III. Section 105 of the Bankruptcy Code and the Doctrine of Necessity Supports Payment of the Insurance Obligations.

24. The proposed payments of prepetition Insurance Obligations should be authorized pursuant to section 105 of the Bankruptcy Code and under the "doctrine of necessity." The Court's power to utilize the doctrine of necessity in Chapter 11 cases derives from the Court's inherent equity powers and its statutory authority to "issue any order, process, or judgment that is necessary

or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The United States Supreme Court first articulated the doctrine of necessity over a century ago, in *Miltenberger v. Logansport, C. & S. W. Ry. Co.*, 106 U.S. 286 (1882), in affirming the authorization by the lower court of the use of receivership funds to pay pre-receivership debts owed to employees, vendors and suppliers, among others, when such payments were necessary to preserve the receivership property and the integrity of the business in receivership. *See id.* at 309. The modern application of the doctrine of necessity is largely unchanged from the Court's reasoning in *Miltenberger*. *See In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581-82 (3d Cir. 1981) ("[I]n order to justify payment under the 'necessity of payment' rule, a real and immediate threat must exist that failure to pay will place the continued operation of the [debtor] in serious jeopardy.").

25. The doctrine of necessity "recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); *see In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (stating that where the debtor "cannot survive" absent payment of certain prepetition claims, the doctrine of necessity should be invoked to permit payment); *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) ("[T]he court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor."); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) ("[T]o justify payment of a pre-petition unsecured creditor, a debtor must show that the payment is necessary to avert a serious threat to the chapter 11 process.").

26. The doctrine of necessity is an accepted component of modern bankruptcy jurisprudence. *See Just For Feet*, 242 B.R. at 826 (approving payment of key inventory suppliers'

prepetition claims when such suppliers could destroy debtor's business by refusing to deliver new inventory on eve of debtor's key sales season); *In re Payless Cashways, Inc.*, 268 B. R. 543, 546-47 (Bankr. W.D. Mo. 2001) (authorizing payment of critical prepetition suppliers' claims when such suppliers agree to provide postpetition trade credit); *see also In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994); *Ionosphere Clubs*, 98 B.R. at 175-76.

27. Courts in this district have routinely granted relief similar to that requested herein, including the payment of prepetition amounts that may be due with respect to a debtor's insurance and workers' compensation coverage. *See In re Newbury Common Assocs.*, Case No. 15-12507 (LSS), [Docket No. 336] (Bankr. D. Del. Feb. 29, 2016) (granting interim and final relief); *In re Haggen Holdings, LLC*, Case No. 15-11874 (KG), [Docket Nos. 48 & 250] (Bankr. D. Del. Sept. 10, 2015 and Oct. 2, 2015) (same).

## IV. Entry into the Premium Financing Agreement is a Sound Exercise of the Debtor's Business Judgement.

28. As stated above, section 363 of the Bankruptcy Code provides, in relevant part, that a debtor in possession may enter into transactions, including the use, sale, or lease of property in the ordinary course of business, without notice or a hearing. 11 U.S.C. § 363(c)(1) and requires only that the debtor "show that a sound business purpose" justifies the proposed use of property.

29. Section 362(d) of the Bankruptcy Code authorizes the Court to grant relief from the automatic stay "for cause," including lack of adequate protection. Cause exists to grant an insurance premium finance lender relief upon default on the premium financing agreement, to allow that lender to recover unearned premiums. In re JII Liquidating, Inc., 344 B.R. 875, 890 (Bankr. N.D. Ill. 2006) ("cause exists under § 362(d) to terminate the automatic stay in order to allow [premium finance lender] to receive the refund of the unearned insurance premiums").

30. The Insurance Programs including those identified in the Agreement, are crucial to the operation of the Debtor's business and cannot be obtained without the authorization requested herein. Thus, the authorization sought herein is in the best interest of the estate and its creditors.

31. The Agreement requires the Debtor to make a down payment in the amount of $90,000.00 and to make nine (9) monthly payments, each in the amount of $42,242.72. The annual percentage rate is 8.850 percent and the total amount financed under the Agreement is $366,536.01 with total payments under the Agreement of $380,184.48.

32. The Agreement assigns and grants to IPFS a first priority and senior lien upon and security interest in any and all unearned or returned premiums which may become payable under Insurance Policy. The Debtor requests that IPFS' lien and security interest in such unearned premiums shall be senior to the rights of the Debtor's estate in this and any subsequent proceeding under the Bankruptcy Code and to the rights of any person claiming a lien or security interest in any assets of the Debtor to the extent allowed by 11 U.S.C. § 364(c)(2).

33. The Agreement also assigns and grants to IPFS a first priority senior lien upon and security interest in any loss payment under the Financed Policies but only to the extent such loss payments would reduce the unearned premiums. The Debtor requests that IPFS' lien and security interests in such payments shall be senior to the rights of Debtor's estate in this or any subsequent proceeding under the Bankruptcy Code, but shall be subject to the interest of any mortgagees or other payees.

34. The Debtor requests and the Proposed Order provides IPFS' liens and security interests shall be deemed duly perfected without further action by IPFS, which is consistent with applicable state law.

35. In the event a default by the Debtor in making the monthly payments under the Agreement, but subject to ten days prior notice to (i) KNY and KNYs right to cure, and (ii) Jon Lipshie, Esq., counsel to the Office of the United States Trustee, the Agreement allows IPFS to cancel the Insurance Policy identified in the Agreement and apply to the KNY's account the unearned or returned premiums; and, subject to the rights of loss payees, any loss payments which would reduce the unearned premiums. KNY requests that IPFS may exercise its rights under the Agreement in the event of any such default without moving for relief from the automatic stay of 11 U.S.C. § 362 and without further order of this Court.

**Reservation of Rights**

36. Nothing contained herein is or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' right to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code; or (e) otherwise affect the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract with any party subject to this Motion.

**Immediate Relief is Necessary to Avoid Immediate and Irreparable Harm**

37. Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." KNY respectfully submits that the facts described herein demonstrate that the relief requested is necessary to avoid immediate and irreparable harm to business operations and the value of the estate. Bankruptcy Rule 6003 is therefore satisfied.

**Waiver of any Applicable Stay**

38. To implement the foregoing successfully, KNY seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

**Notice**

39. KNY will provide notice of this Motion to: (a) the Office of the United States Trustee for Region 3, serving the District of Delaware; (b) the Debtors' twenty (20) largest unsecured creditors; (c) counsel to the Debtors' secured lenders: (i) Eastern Funding (ii) Kannegiesser GmnH, (iii) Feenix Venture Partners, (iv) Irazuk LLC, (v) MCA Servicing Co, (vi) Merchant Financial Corporation, (vii) Parkside Funding Group LLC, and (viii) Wynwood Capital Group, (d) the Debtors' proposed DIP Lender, CSV Capital Partners LLC, (e) any party that has requested notice pursuant to Bankruptcy Rule 2002 as of the time of service, and (f) any other party required to be provided notice under Local Rule 9013-1(m). As this Motion is seeking first-day relief, notice of this Motion and any order entered hereon will be served on all parties required by Local Rule 9013-l(m). In light of the nature of the relief requested herein, KNY respectfully submit that no other or further notice is required.

**No Prior Request**

40. No prior request for the relief sought in this Motion has been made to this or any other Court in connection with these Chapter 11 Cases.

WHEREFORE, KNY respectfully requests that the Court: (i) enter interim and final orders, substantially in the forms attached as Exhibits B and C, granting the relief requested herein; and (ii) grant such other relief as is necessary.

Dated: April 15, 2025

GELLERT SEITZ BUSENKELL & BROWN LLC

*/s/ Ronald S. Gellert*
Ronald S. Gellert (DE 4259)
1201 North Orange Street, Suite 300
Wilmington, DE 19801
(302) 425-5806
rgellert@gsbblaw.com

and

MAYERSON & HARTHEIMER, PLLC
Sandra E. Mayerson, Esq.
David H. Hartheimer
Mayerson & Hartheimer, PLLC
845 Third Avenue, 11th Floor
New York, NY 10022
Tel: (646) 778-4381
Fax: (646) 778-4384
sandy@mhlaw-ny.com
david@mhlaw-ny.com

*Proposed Counsel for Debtors and Debtors in Possession*

**EXHIBIT A**

| Company and Address | Policy Information | Term | Finananced or Paid Directly |
|---|---|---|---|
| Travelers<br>PO Box 660317<br>Dallas TX 75266-0317 | Commercial Auto | 08/30/24 - 08/30/25 | Paid directly |
| Travelers<br>PO Box 660317<br>Dallas TX 75266-0317 | Umbrella | 09/13/24 - 09/13/25 | Paid directly |
| Travelers<br>PO Box 660317<br>Dallas TX 75266-0317 | General Liability | 09/13/24 - 09/13/25 | Paid directly |
| Starr Indemnity & Liability Co.<br>399 Park Avenue, 2nd Floor, New York, New York 10022 | Property | 10/26/2024-10/26/2025 | Financed through IPFS |
| Lloyd's London - Certain Underwrite<br>280 Park Ave, East Tower, 25th Floor, New York, NY 10017 | Property | 10/26/2024-10/26/2025 | Financed through IPFS |
| Gotham Insurance Co.<br>412 Mt. Kemble Avenue Suite 300C Morristown, NJ 07960 | Property | 10/26/2024-10/26/2025 | Financed through IPFS |
| Arch Specialty Insurance Co.<br>300 Plaza Three, Jersey City, NJ 07330 | Property | 10/26/2024-10/26/2025 | Financed through IPFS |
| Kinsale Insurance Company<br>2035 Maywill St Ste 100, Richmond, VA 23230 | Property | 10/26/2024-10/26/2025 | Financed through IPFS |
| National Fire Insurance Co. Of Hartford<br>151 N. Franklin Street Chicago, IL 60606 | Boiler | 10/26/2024-10/26/2025 | Financed through IPFS |

**EXHIBIT B**
**Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>DEQSER LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-10687 (CTG)<br>(Joint Administration Requested) |

**INTERIM ORDER AUTHORIZING KNY 26671 LLC TO (I) MAINTAIN EXISTING INSURANCE POLICIES AND PAY ALL INSURANCE OBLIGATIONS ARISING THEREUNDER, AND (II) TO RENEW, REVISE, EXTEND, SUPPLEMENT, CHANGE OR ENTER INTO NEW INSURANCE POLICIES**

Upon the Motion of KNY 26671 LLC ("**KNY**") for entry of interim (this "**Interim Order**") and final orders, pursuant to sections 105, 361, 362, 363, 364, 1107, and 1108 of the Bankruptcy Code, and Bankruptcy Rule 6003 authorizing, but not directing, KNY to (i) maintain its existing insurance policies and to pay all insurance obligations arising thereunder or in connection therewith; and (ii) to renew, revise, extend, supplement, change or enter into new insurance coverage as needed in its business judgment (the "**Motion**");[2] and upon the First Day Declaration; and due and sufficient notice of the Motion having been given under the particular circumstances; and it appearing that no other or further notice need be provided; and it appearing that the relief requested by the Motion is in the best interests of the Debtors, their estate, its creditors, its shareholders and other parties in interest; and after due deliberation thereon and sufficient cause appearing therefor, it is hereby ORDERED:

1. The Motion is GRANTED on an interim basis as set forth herein.

[1] The Debtors in these Chapter 11 cases, along with the last four (4) digits of their federal tax identification numbers, are: (i) Deqser LLC (8269) and (ii) KNY 26671 LLC (9132) (collectively, the "Debtors"). The Debtors' mailing address is: c/o Cooperative Laundry, 1 Eastern Road, Kearny, NJ 07032.
[2] Capitalized terms not defined in this Interim Order shall have the meanings ascribed to them in the Motion.

2. KNY is authorized, but not directed, to maintain its Insurance Policies, and to pay the Insurance Obligations arising under or in connection with the Insurance Policies as such Insurance Obligations as they become due, in an amount not to exceed $42,876.00. For the avoidance of doubt, this includes payment of all Insurance Obligations attributable to the prepetition period (plus any unforeseen deductible payment amounts for prepetition claims).

3. Without further order of this Court, KNY is authorized, but not directed, to renew, revise, extend, supplement, change or enter into new insurance coverage as needed in its business judgment.

4. All banks are (a) authorized and directed to receive, process, honor and pay any and all checks drawn on the payroll, drafts and other forms of payment, including fund transfers, used by KNY to satisfy its Insurance, whether presented before, on or after the Petition Date; (b) authorized to rely on the representations of KNY as to which checks are subject to this Motion; provided that sufficient funds are on deposit in the applicable accounts to cover such payments; and (c) prohibited from placing any holds on, or attempting to reverse, any automatic transfers for Insurance Obligations; provided further, that KNY is authorized to issue new post-petition checks to replace any checks, drafts and other forms of payment, or effect new post-petition fund transfers, which may be inadvertently dishonored or rejected and to reimburse any expenses that may incur as a result of any bank's failure to honor a prepetition check.

5. Neither the provisions contained herein, nor any actions or payments made by KNY pursuant to this Interim Order, shall be deemed an admission as to the validity of the underlying obligation or a waiver of any rights the Debtors may have to subsequently dispute such obligation on any ground that applicable law permits.

6. Nothing in this Interim Order or the Motion shall be deemed to constitute post-petition assumption or adoption of any agreement under section 365 of the Bankruptcy Code. Notwithstanding the relief granted herein and any actions taken hereunder, nothing herein shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any person.

7. The Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the relief requested is necessary to avoid immediate and irreparable harm.

8. Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall be effective and enforceable immediately upon entry hereof.

9. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such motion, and the requirements of the Local Bankruptcy Rules are satisfied.

10. Any objection to the granting of the relief requested by the Motion on a final basis shall be filed with the Court and served on or before **____________, 2025** by **4:00 p.m. (ET)** (the "**Objection Deadline**") upon: (a) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Jon Lipshie, Esq., Jon.Lipshie@usdoj.gov; (b) the Debtors, c/o Cooperative Laundry, 1 Eastern Road, Kearny, NJ 07032.; (c) Gellert Seitz Busenkell & Brown, LLC, 1201 N. Orange St., 3rd Floor, Wilmington, Delaware 19801 (Attn: Ronald S. Gellert, Esq., rgellert@gsbblaw.com); (d) Mayerson & Hartheimer, PLLC, 845 3rd Ave., 11th floor, New York, NY, 10022 (Attn: David H. Hartheimer, Esq., david@mhlaw-ny.com); and (e) any party that has requested notice pursuant to Bankruptcy Rule 2002 as of the time of service.

11. A final hearing on the Motion (the "**Final Hearing**") will be held on **___________________, 2025** at _______**_.m.** (ET).

# EXHIBIT C

**Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>DEQSER LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-10687 (CTG)<br>(Joint Administration Requested) |

**FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 1107 AND 1108 AND FED. R. BANKR. P. 4001, 6003 and 6004 AUTHORIZING KNY 26671 LLC TO (I) MAINTAIN EXISTING INSURANCE POLICIES AND PAY ALL INSURANCE OBLIGATIONS ARISING THEREUNDER, (II) TO RENEW, REVISE, EXTEND, SUPPLEMENT, CHANGE OR ENTER INTO NEW INSURANCE POLICIES (III) AUTHORIZING THE DEBTOR TO ENTER INTO AN INSURANCE PREMIUM FINANCE AGREEMENT WITH IPFS PFCO OF NEW YORK AND (IV) GRANTING RELATED RELIEF**

This matter coming before the Court on the motion of the debtor and debtor in possession for entry of final orders (this "**Order**"), pursuant to sections 105, 361, 362, 363, 364, 1107, and 1108 of the Bankruptcy Code, and Bankruptcy Rules 4001, 6003 and 6004, (i) authorizing, but not directing, the KNY 26671 LLC ("**KNY**") to maintain its existing insurance policies and to pay all insurance obligations arising thereunder or in connection therewith; (ii) authorizing, but not directing KNY to renew, revise, extend, supplement, change or enter into new insurance coverage as needed in its business judgment; (iii) authorizing KNY to enter into a Premium Finance Agreement (the "**Agreement**") with IPFS ("IPFS") including incurring secured debt thereunder, and (iv) granting related relief (the "**Motion**");[2] and the Court having entered an order approving the relief requested in the Motion on an interim basis; and upon the First Day Declaration; and due and sufficient notice of the Motion having been given under the particular circumstances; and it

[1] The Debtors in these Chapter 11 cases, along with the last four (4) digits of their federal tax identification numbers, are: (i) Deqser LLC (8269) and (ii) KNY 26671 LLC (9132) (collectively, the "Debtors"). The Debtors' mailing address is: c/o Cooperative Laundry, 1 Eastern Road, Kearny, NJ 07032.
[2] Capitalize terms not defined in this Order shall have the meanings ascribed to them in the Motion.

appearing that no other or further notice need be provided; and it appearing that the relief requested by the Motion is in the best interests of the Debtors, their estate, their creditors, their shareholders and other parties in interest; and after due deliberation thereon and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED AND DECREED that:**

1. The Motion is GRANTED on a final basis as set forth herein.

2. KNY is authorized, but not directed, to maintain its Insurance Policies, and to pay the Insurance Obligations arising under or in connection with the Insurance Policies as such Insurance Obligations as they become due. For the avoidance of doubt, this includes payment of all Insurance Obligations attributable to the prepetition period (plus any unforeseen deductible payment amounts for prepetition claims).

3. Without further order of this Court, KNY is authorized, but not directed, to renew, revise, extend, supplement, change or enter into new insurance coverage as needed in its business judgment.

4. All banks are (a) authorized and directed to receive, process, honor and pay any and all checks drawn on the payroll, drafts and other forms of payment, including fund transfers, used by KNY to satisfy its Insurance Obligations, whether presented before, on or after the Petition Date; (b) authorized to rely on the representations of KNY as to which checks are subject to this Motion; provided that sufficient funds are on deposit in the applicable accounts to cover such payments; and (c) prohibited from placing any holds on, or attempting to reverse, any automatic transfers for Insurance Obligations; provided further, that KNY is authorized to issue new post-petition checks to replace any checks, drafts and other forms of payment, or effect new post-

petition fund transfers, which may be inadvertently dishonored or rejected and reimburse any expenses that may incur as a result of any bank's failure to honor a prepetition check.

5. KNY is authorized to execute and to enter into the Agreement with IPFS, and the Agreement is approved in all respects including the power of attorney in favor of IPFS to cancel the Financed Policies in an event of default under the Agreement; and it is further

6. KNY is authorized to obtain credit and incur debt (i) secured by a first priority lien upon and security interest in the unearned insurance premiums and other amounts payable under the Financed Policies identified in the Agreement pursuant to Section 364(c)(2) of the Bankruptcy Code which liens shall be deemed perfected without further action by IPFS or this Court; and it is further

7. In the event of a default by KNY under the Agreement, the automatic stay pursuant to 11 U.S.C. § 362(a) is hereby modified to permit IPFS to (i) cancel the Financed Policies (as defined in the Motion) subject only to ten (10) days prior notice to the Debtor and a right to cure, (ii) recover and collect the unearned insurance premiums and fees related to the Financed Policies from the insurance carriers, agents and brokers, and (iii) apply such unearned return premiums and fees to the outstanding indebtedness due and owing IPFS, including principal, interest, late fees, attorneys' fees, and costs as allowed by the Agreements and applicable law; and it is further

8. Except to the extent expressly set forth herein, the automatic stay of section 362(a) of the Bankruptcy Code shall remain in full force and effect for all other purposes; and it is further

9. IPFS has extended credit to KNY in good faith and shall be entitled to the protections afforded by Section 364(e) of the Bankruptcy Code; and it is further

10. Neither the provisions contained in this Order, nor any actions or payments made by KNY pursuant to this Order, shall be deemed an admission as to the validity of the underlying

obligation or a waiver of any rights KNY may have to subsequently dispute such obligation on any ground that applicable law permits.

11. Nothing in this Order or the Motion shall be deemed to constitute post-petition assumption or adoption of any agreement under section 365 of the Bankruptcy Code. Notwithstanding the relief granted herein and any actions taken hereunder, nothing herein shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any person.

12. The Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the relief requested is necessary to avoid immediate and irreparable harm.

13. Notwithstanding Bankruptcy Rule 6004(h), this order shall be effective and enforceable immediately upon entry hereof.

14. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this order.

# **EXHIBIT D**

Docusign Envelope ID: 2735BD2A-8247-47C5-854D-5406774ACB92

NJP.PROCESSING@IPFS.COM
170 NORTHPOINTE PKWY, STE 300
AMHERST, NY 14228
(855)891-2585 FAX: (877)834-6618
CUSTOMER SERVICE: (855)891-2585

**PREMIUM FINANCE AGREEMENT** **IPFS CORPORATION**

| | | |
|---|---|---|
| **A** | **CASH PRICE (TOTAL PREMIUMS)** | **$456,536.01** |
| **B** | **CASH DOWN PAYMENT** | **$90,000.00** |
| **C** | **PRINCIPAL BALANCE (A MINUS B)** | **$366,536.01** |

| AGENT | INSURED |
|---|---|
| (Name & Place of business)<br>WILLIAM R SEIDE LLC<br><br>73 NEWARK POMPTON TPKE<br><br>RIVERDALE,NJ 07457<br>(973)616-5300 FAX: | (Name & Residence or business)<br>KNY 26671 LLC<br>COOPERATIVE LAUNDRY TRI-STATE LLC<br>1 Eastern Rd Unit 2<br><br>Kearny, NJ 07032-6524<br><br>m.yousef@cooperativelaundry.com |

Commercial

Account #: ____________________

**LOAN DISCLOSURE**
**Additional Policies Scheduled on Page 3**

Quote Number: 28192429

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled |
| 8.850% | $13,648.47 | $366,536.01 | $380,184.48 |

**YOUR PAYMENT SCHEDULE WILL BE**

| Number Of Payments | Amount Of Payments | When Payments Are Due Beginning: | |
|---|---|---|---|
| 9 | $42,242.72 | | MONTHLY 11/26/2024 |

YOU HAVE THE RIGHT TO RECEIVE AN ITEMIZATION OF THE AMOUNT FINANCED:
[] I WANT AN ITEMIZATION (DO NOT CHECK IF YOU DO NOT WANT AN ITEMIZATION)

**Security:** Refer to paragraph 1 below for a description of the collateral assigned to Lender to secure this loan.
**Late Charges:** A late charge will be imposed on any installment in default 10 days or more. This late charge will be the greater of 1.5% of the installment due and $25.
**Prepayment:** If you pay your account off early, you may be entitled to a refund of a portion of the finance charge computed by the actuarial method on a 360 day basis or as otherwise allowed by law. The finance charge includes a predetermined interest rate plus a non-refundable service/origination fee of $12.00. See the terms below and on the next page for additional information about nonpayment, default and penalties.

| POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY | SCHEDULE OF POLICIES INSURANCE COMPANY AND GENERAL AGENT | COVERAGE | MINIMUM EARNED PERCENT | POL TERM | PREMIUM |
|---|---|---|---|---|---|---|
| PENDING | 10/26/2024 | LLOYD'S LONDON - CERTAIN UNDERWRITE AMWINS BROKERAGE/NEW YORK | PROPERTY | 10.00% | 12 | 162,500.00 Tax: 8,125.00 |
| | | | | Broker Fee: | | $0.00 |
| | | | | TOTAL: | | $456,536.01 |

The undersigned insured directs IPFS Corporation (herein, "Lender") to pay the premiums on the policies described on the Schedule of Policies. In consideration of such premium payments, subject to the provisions set forth herein, the insured agrees to pay Lender at the branch office address shown above, or as otherwise directed by Lender, the amount stated as Total of Payments in accordance with the Payment Schedule, in each case as shown in the above Loan Disclosure. The named insured(s), on a joint and several basis if more than one, hereby agree to the following provisions set forth on pages 1 and 2 of this Agreement: **1. SECURITY:** To secure payment of all amounts due under this Agreement, insured assigns Lender a security interest in all right, title and interest to the scheduled policies, including (but only to the extent permitted by applicable law): (a) all money that is or may be due insured because of a loss under any such policy that reduces the unearned premiums (subject to the interest of any applicable mortgagee or loss payee), (b) any unearned premium under each such policy, (c) dividends which may become due insured in connection with any such policy and (d) interests arising under a state guarantee fund. **2. POWER OF ATTORNEY**: Insured irrevocably appoints its Lender attorney-in-fact with full power of substitution and full authority upon default to cancel all policies above identified, receive all sums assigned to its Lender or in which it has granted Lender a security interest and to execute and deliver on behalf of the insured documents, instruments, forms and notices relating to the listed insurance policies in furtherance of this Agreement.

**Notice to Insured: (1) Read this agreement before you sign, (2) Do not sign this agreement if it contains blank spaces, (3) You are entitled to a copy of this agreement at the time you sign, (4) Keep your copy of this agreement to protect your legal rights.**

The undersigned hereby warrants and agrees to Agent's Representations set forth herein.

Signed by:
9BA19827441D4E3
Signature of Insured or Authorized Agent

10/23/2024
DATE

Signature of Agent

10-23-24
DATE

inance charge begins to accrue as of the earliest policy effective date.

**4. AGREEMENT EFFECTIVE DATE:** This Agreement shall be effective when written acceptance is mailed to the insured by Lender. **5. DEFAULT AND DELINQUENT PAYMENTS:** If any of the following happens insured will be in default: (a) a payment is not made when it is due, (b) a proceeding in bankruptcy, receivership, insolvency or similar proceeding is instituted by or against insured, or (c) insured fails to keep any promise the insured makes in this Agreement; provided, however, that, to the extent required by applicable law, insured may be held to be in default only upon the occurrence of an event described in clause (a) above. The acceptance by Lender of one or more late payments from the insured shall not estop Lender or be a waiver of the rights of Lender to exercise all of its rights hereunder or under applicable law in the event of any subsequent late payment. **6. CANCELLATION:** Lender may cancel the scheduled policies after providing at least 10 days notice of its intent to cancel or any other required statutory notice if the insured does not pay any installment according to the terms of this Agreement or transfers any of the scheduled policies to a third party and the unpaid balance due to Lender shall be immediately due and payable by the insured. Lender at its option may enforce payment of this debt without recourse to the security given to Lender. **7. CANCELLATION CHARGES:** If Lender cancels any insurance policy in accordance with the terms of this Agreement and applicable law, then the insured shall pay Lender a cancellation charge equal to $5.00 or the maximum amount permitted by law. If cancellation occurs, the insured agrees to pay a finance charge on the outstanding indebtedness at the maximum rate authorized by applicable state law in effect on the date of cancellation until the outstanding indebtedness is paid in full or until such other date as required by law. (Not applicable in KY, NV, and VT) **8. INSUFFICIENT FUNDS (NSF) CHARGES:** If insured's check or electronic funding is dishonored for any reason, the insured will pay to Lender a fee of $20.00 or the maximum amount permitted by law. (Not applicable in AL and KY). **9. MONEY RECEIVED AFTER CANCELLATION:** Any payments made to Lender after Lender's Notice of Cancellation of the insurance policy(ies) has been mailed may be credited to the insured's account without any obligation on the part of Lender to request reinstatement of any policy. Any money Lender receives from an insurance company shall be credited to the balance due Lender with any surplus refunded to whomever is entitled to the money. In the event that Lender does request a reinstatement of the policy(ies) on behalf of the insured, such a request does not guarantee that coverage under the policy(ies) will be reinstated or continued. Only the insurance company has authority to reinstate the policy(ies). The insured agrees that Lender has no liability to the insured if the policy(ies) is not reinstated and Lender may charge a reinstatement fee where permitted up to the maximum amount allowed by law. **10. ASSIGNMENT:** The insured agrees not to assign this Agreement or any policy listed hereon or any interest therein (except for the interest of mortgagees or loss payees), without the written consent of Lender, and that Lender may sell, transfer and assign its rights hereunder or under any policy without the consent of the insured, and that all agreements made by the insured hereunder and all rights and benefits conferred upon Lender shall inure to the benefit of Lender's successors and assigns (and any assignees thereof). **11. INSURANCE AGENT OR BROKER:** The insured agrees that the insurance agent or broker soliciting the policies or through whom the policies were issued is not the agent of Lender; and the agent or broker named on the front of this Agreement is neither authorized by Lender to receive installment payments under this Agreement nor to make representations, orally or in writing, to the insured on Lender's behalf (except to the extent expressly required by applicable law). As and where permissible by law, Lender may compensate your agent/broker for assisting in arranging the financing of your insurance premiums. If you have any questions about this compensation you should contact your agent/broker. **12. FINANCING NOT A CONDITION:** The law does not require a person to enter into a premium finance agreement as a condition of the purchase of insurance. **13. COLLECTION COSTS:** Insured agrees to pay attorney fees and other collection costs to Lender to the extent permitted by law if this Agreement is referred to an attorney or collection agency who is not a salaried employee of Lender, to collect any money insured owes under this Agreement. (Not applicable in KY) **14. LIMITATION OF LIABILITY:** The insured agrees that Lender's liability to the insured, any other person or entity for breach of any of the terms of this Agreement for the wrongful or improper exercise of any of its powers under this Agreement shall be limited to the amount of the principal balance outstanding, except in the event of Lender' gross negligence or willful misconduct (not applicable in KY). Insured recognizes and agrees that Lender is a lender only and not an insurance company and that in no event does Lender assume any liability as an insurer hereunder or otherwise. **15. CLASSIFICATION AND FORMATION OF AGREEMENT:** This Agreement is and will be a general intangible and not an instrument (as those terms are used in the Uniform Commercial Code) for all purposes. Any electronic signature or electronic record may be used in the formation of this Agreement, and the signatures of the insured and agent and the record of this Agreement may be in electronic form (as those terms are used in the Uniform Electronic Transactions Act). A photocopy, a facsimile or other paper or electronic record of this Agreement shall have the same legal effect as a manually signed copy. **16. REPRESENTATIONS AND WARRANTIES:** The insured represents that (a) the insured is not insolvent or presently the subject of any insolvency proceeding (or if the insured is a debtor of bankruptcy, the bankruptcy court has authorized this transaction), (b) if the insured is not an individual, that the signatory is authorized to sign this Agreement on behalf of the insured, (c) all parties responsible for payment of the premium are named and have signed this Agreement, and (d) there is no term or provision in any of the scheduled policies that would require Lender to notify or get the consent of any third party to effect cancellation of any such policy. **17. ADDITIONAL PREMIUM FINANCING:** Insured authorizes Lender to make additional advances under this premium finance agreement at the request of either the Insured or the Insured's agent with the Insured's express authorization, and subject to the approval of Lender, for any additional premium on any policy listed in the Schedule of Policies due to changes in the insurable risk. If Lender consents to the request for an additional advance, Lender will send Insured a revised payment amount ("Revised Payment Amount"). Insured agrees to pay the Revised Payment Amount, which may include additional finance charges on the newly advanced amount, and acknowledges that Lender will maintain its security interest in the Policy with full authority to cancel all policies and receive all unearned premium if Insured fails to pay the Revised Payment Amount. **18. PRIVACY:** Our privacy policy may be found at https://ipfs.com/Privacy. **19. ENTIRE DOCUMENT / GOVERNING LAW:** This document is the entire Agreement between Lender and the insured and can only be changed in writing and signed by both parties except that the insured authorizes Lender to insert or correct on this Agreement, if omitted or incorrect, the insurer's name and the policy number(s). Lender is also authorized to correct patent errors and omissions in this Agreement. In the event that any provision of this Agreement is found to be illegal or unenforceable, it shall be deemed severed from the remaining provisions, which shall remain in full force and effect. The laws of the State of New Jersey will govern this Agreement. **20. AUTHORIZATION:** The insurance company(ies) and their agents, any intermediaries and the agent / broker named in this Agreement and their successors and assigns are hereby authorized and directed by insured to provide Lender with full and complete information regarding all financed insurance policy(ies), including without limitation the status and calculation of unearned premiums, and Lender is authorized and directed to provide such parties with full and complete information and documentation regarding the financing of such insurance policy(ies), including a copy of this Agreement and any related notices. **21. WAIVER OF SOVERIGN IMMUNITY:** The insured expressly waives any sovereign immunity available to the insured, and agrees to be subject to the laws as set forth in this Agreement (and the jurisdiction of federal and/or state courts) for all matters relating to the collection and enforcement of amounts owed under this Agreement and the security interest in the scheduled policies granted hereby.

## AGENT/BROKER REPRESENTATIONS

The agent/broker executing this, and any future, agreements represents, warrants and agrees: (1) installment payments totaling $0.00 and all applicable down payment(s) have been received from the insured in immediately available funds, (2) the insured has received a copy of this Agreement; if the agent/broker has signed this Agreement on the insured's behalf, the insured has expressly authorized the agent/broker to sign this Agreement on its behalf or, if the insured has signed, to the best of the undersigned's knowledge and belief such signature is genuine, (3) the policies are in full force and effect and the information in the Schedule of Policies including the premium amounts is correct, (4) no direct company bill, audit, or reporting form policies or policies subject to retrospective rating or to minimum earned premium are included, except as indicated, and the deposit of provisional premiums is not less than anticipated premiums to be earned for the full term of the policies, (5) the policies can be cancelled by the insured or Lender (or its successors and assigns) on 10 days notice and the unearned premiums will be computed on the standard short rate or pro rata table except as indicated, (6) there are no bankruptcy, receivership, or insolvency proceedings affecting the insured, (7) to hold Lender, its successors and assigns harmless against any loss or expense (including attorney fees) resulting from these representations or from errors, omissions or inaccuracies of agent/broker in preparing this Agreement, (8) to pay the down payment and any funding amounts received from Lender under this Agreement to the insurance company or general agent (less any commissions where applicable), (9) to hold in trust for Lender or its assigns any payments made or credited to the insured through or to agent/broker directly or indirectly, actually or constructively by the insurance companies and to pay the monies, as well as the unearned commissions to Lender or its assigns upon demand to satisfy the outstanding indebtedness of the insured, (10) all material information concerning the insured and the financed policies necessary for Lender to cancel such policies and receive the unearned premium has been disclosed to Lender, (11) no term or provision of any financed policy requires Lender to notify or get the consent of any third party to effect cancellation of such policy, and (12) to promptly notify Lender in writing if any information on this Agreement becomes inaccurate.

Docusign Envelope ID: 2735BD2A-8247-47C5-854D-5406774ACB92

| AGENT | INSURED |
|---|---|
| (Name & Place of business)<br>WILLIAM R SEIDE LLC<br><br>73 NEWARK POMPTON TPKE<br><br>RIVERDALE,NJ 07457<br>(973)616-5300 FAX: | (Name & Residence or business)<br>KNY 26671 LLC<br>COOPERATIVE LAUNDRY TRI-STATE LLC<br>1 Eastern Rd Unit 2<br><br>Kearny, NJ 07032-6524<br><br>m.yousef@cooperativelaundry.com |

Account #: ____________________

**SCHEDULE OF POLICIES**
**(continued)**

Quote Number: 28192429

| POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY | INSURANCE COMPANY AND GENERAL AGENT | COVERAGE | MINIMUM EARNED PERCENT | POL TERM | PREMIUM |
|---|---|---|---|---|---|---|
| PENDING | 10/26/2024 | KINSALE INSURANCE COMPANY<br>AMWINS BROKERAGE/NEW YORK | PROPERTY | 25.00% | 12 | 60,000.00<br>Fee: 350.00<br>Tax: 3,000.00 |
| PENDING | 10/26/2024 | GOTHAM INSURANCE CO<br>AMWINS BROKERAGE/NEW YORK | PROPERTY | 25.00% | 12 | 27,500.00<br>Fee: 500.00<br>Tax: 1,375.00 |
| PENDING | 10/26/2024 | NATIONAL FIRE INSURANCE CO OF HARTF<br>AMWINS BROKERAGE/NEW YORK | BOILER | 0.000% | 12 | 1,811.01 |
| PENDING | 10/26/2024 | ARCH SPECIALTY INSURANCE CO<br>AMWINS BROKERAGE/NEW YORK | PROPERTY | 25.00% | 12 | 27,500.00<br>Tax: 1,375.00 |
| PENDING | 10/26/2024 | STARR INDEMNITY & LIABILITY CO<br>AMWINS BROKERAGE/NEW YORK | PROPERTY | 25.00% | 12 | 162,500.00 |
| | | | | Broker Fee: | | $0.00 |
| | | | | TOTAL: | | $456,536.01 |