**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>DEQSER LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-10687 (CTG)<br>(Jointly Administered)<br><br>RE: D.I. 15, 50, 76, 131 and 181 |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) GRANTING SECURITY INTERESTS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (III) GRANTING ADEQUATE PROTECTION TO CERTAIN PREPETITION SECURED CREDIT PARTIES, (IV) MODIFYING THE AUTOMATIC STAY, (V) AUTHORIZING THE DEBTORS TO ENTER INTO AGREEMENTS WITH CSV CAPITAL PARTNERS LLC; (VI) AUTHORIZING NON-CONSENSUAL USE OF CASH COLLATERAL, AND (VII) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above captioned debtors (collectively, the "Debtors" or the "Borrowers") in the above-captioned chapter 11 cases (collectively, the "Chapter 11 Cases"), pursuant to sections 105, 361, 362, 363, 364, 503, and 507 of title 11 of the United States Code, (11 U.S.C. §§ 101 et seq., as amended, the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004, and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1 and 4001-2 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking entry of interim and final orders (collectively, upon entry, the "Financing Orders"), granting *inter alia*:

i. authority, pursuant to sections 105, 363, 364(c), and 364(d) of the Bankruptcy Code, for each of the Debtors, jointly and severally, to obtain a non-amortizing senior secured

---

[1] The Debtors in these Chapter 11 cases, along with the last four (4) digits of their federal tax identification numbers, are: (i) Deqser LLC (8269) and (ii) KNY 26671 LLC (9132) (collectively, the "Debtors"). The Debtors' mailing address is: c/o Cooperative Laundry, 1 Eastern Road, Kearny, NJ 07032.

[2] Unless stated otherwise, capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the DIP Term Sheet (as defined below), as applicable.

postpetition financing ("DIP Facility") in an aggregate principal amount of up to $2,500,000.00 (the "DIP Commitment") of which, upon entry of this Final Order ("Final Order") and satisfaction or waiver of the borrowing conditions set forth in the DIP Term Sheet (as defined below), up to $392,037.40 (in addition to the $2,107,962.60 previously authorized) (together, the "Advance") shall be immediately available, subject to the DIP Budget (defined below), and be available through additional draws, in each case subject to the terms and conditions set forth in the DIP Term Sheet and/or a Debtor-in-Possession Loan and Security Agreement (as amended, restated, supplemented or otherwise modified from time to time in accordance with the terms thereof, the "DIP Credit Agreement" and, together with any ancillary, collateral or related documents and agreements, the "DIP Loan Documents"), among the Debtors, as Borrowers, and CSV Capital Partners LLC ("CSV") and/or its designees or its assigns, as Lender (the "DIP Lender"), which DIP Facility Agreement shall be consistent with the terms set forth in the attached Debtor-in-Possession Term Loan Facility Summary of Terms and Conditions attached hereto as Exhibit 1 (the "DIP Term Sheet");

ii. authority for the Debtors to execute, deliver, and perform under the DIP Term Sheet, and all other credit documentation relating to the DIP Facility, including, without limitation, as applicable, security agreements, pledge agreements, debentures, mortgages, control agreements, deeds, charges, guarantees, promissory notes, intercompany notes, certificates, instruments, intellectual property security agreements, notes, fee letters, and such other documents that are ancillary or incidental thereto or that may be reasonably requested by the DIP Lender in connection with the DIP Facility, in each case, as amended, restated, supplemented, waived or otherwise modified from time to time in accordance with the terms thereof and hereof;

iii. authority for the Debtors to issue, incur and guarantee all loans, notes, advances, extensions of credit, financial accommodations, reimbursement obligations, fees and premiums (including, without limitation, a commitment fee in an amount equal to 2% of each amount advanced by the DIP Lender (the "Commitment Fee"), upfront fees, or premiums, and any other fees payable pursuant to the DIP Term Sheet), costs, expenses and other liabilities and all other obligations (including indemnities and similar obligations, whether contingent or absolute) due or payable to or for the benefit of the DIP Lender under the DIP Term Sheet (collectively, the "DIP Obligations"), and to perform such other and further acts as may be required, necessary, desirable, or appropriate in connection therewith;

iv. authority for the Debtors to use the DIP Facility and the proceeds thereof in accordance with the DIP Term Sheet and the DIP Budget to (a) fund the postpetition working capital needs of the Debtors, (b) pay fees, costs and expenses of the DIP Facility on the terms and conditions described in the DIP Term Sheet, and (c) pay the allowed administrative costs and expenses of the Chapter 11 Cases, in each case, solely in accordance with the DIP Term Sheet, the DIP Budget, and this Final Order;

v. authority for the Debtors to grant to the DIP Lender valid, enforceable, non-avoidable, automatically and fully perfected security interests, liens, and claims, including allowed superpriority administrative expense claims pursuant to sections 364(c)(1) and 507(b) of the Bankruptcy Code, subject only to the Carve-Outs and the Permitted Prior Senior Liens (as each capitalized term is defined herein), and liens pursuant to sections 364(c)(2), 364(c)(3), and where specifically noted, 364(d)(1) of the Bankruptcy Code in the DIP Collateral (as defined below) (and all proceeds thereof), including, without limitation, all property constituting "Cash Collateral," as

defined in section 363(a) of the Bankruptcy Code, ("Cash Collateral"), to secure all DIP Obligations, subject only to the Carve-Outs and the Permitted Prior Senior Liens;

vi. authority for the DIP Lender to take all commercially reasonable actions to implement and effectuate the terms of this Final Order and the DIP Term Sheet;

vii. waiver by the Debtors of all rights to surcharge against the collateral of the DIP Lender pursuant to section 506(c) of the Bankruptcy Code;

viii. determination that the equitable doctrine of marshaling or any other similar doctrine shall not apply with respect to any collateral of the DIP Lender for the benefit of any party other than the DIP Lender;

ix. modification of the automatic stay provided by section 362(a) of the Bankruptcy Code to the extent set forth herein and as necessary to permit the Debtors and the DIP Lender to implement and effectuate the terms and provisions of the DIP Term Sheet and/or the DIP Loan Documents, including, each Financing Order, and, subject to the terms of the DIP Term Sheet and DIP Loan Documents (including each Financing Order), to deliver any Maturity Date Notice (as defined in the DIP Term Sheet) or other notices in relation thereto and the exercise of certain rights and remedies, as contemplated hereby and by the DIP Term Sheet;

x. subject to 363(k) of the Bankruptcy Code and subject to the Challenge Period as set forth in paragraph 18 below, the DIP Lender shall be authorized to credit bid any amounts outstanding under the DIP Facility in any sale of the DIP Collateral, including under sections 363 and 1123 of the Bankruptcy Code. Any such credit bid may provide for the assignment of the right to purchase the acquired assets to a subagent or a newly formed acquisition vehicle; and

xi. waiver of any applicable stay (including under Bankruptcy Rule 6004) and providing for immediate effectiveness of this Final Order.

NOW THEREFORE, this United States Bankruptcy Court for the District of Delaware (the "Court") having considered the final relief requested in the Motion (including the DIP Term Sheet and the other exhibits attached thereto), the evidence submitted or adduced, pursuant to the Declaration of Sang Cho in Support of Chapter 11 Petitions and First Day Motions (the "First Day Declaration"), the arguments of counsel made at the hearing held on April 21, 2025 (the "First Interim Hearing"), the arguments of counsel made at the hearing held on May 7, 2025 (the "Second Interim Hearing"), and the evidence submitted or adduced and the arguments of counsel made at the hearing held on May 16 and 20, 2025 (the "Third Interim Hearing"), and having found that due and proper notice of the Motion and the hearings thereon having been given in accordance with Bankruptcy Rule 2002 and 4001(b), (c), and (d) and all applicable Local Rules; and all objections, if any, to the final relief requested in the Motion having been withdrawn, resolved or overruled; and it appearing to this Court that granting the final relief requested in the Motion is fair and reasonable and in the best interests of the Debtors, their estates, creditors, and other parties in interest, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets and represents a sound exercise of the Debtors' business judgment; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**THIS COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW BASED UPON THE MOTION, THE REPRESENTATIONS OF COUNSEL AND EVIDENCE SUBMITTED DURING THE HEARINGS ON THE MOTION**:[3]

[3] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014, and shall take effect and be fully enforceable effective as of the Petition Date immediately upon entry hereof. To the extent that any of the

A. *Petition Date*. On April 10, 2025 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Court commencing these Chapter 11 Cases.

B. *Debtors in Possession*. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. To date, no request has been made for the appointment of a trustee or an examiner.

C. *Appointment of Committee*. On April 30, 2025, the Office of the United States Trustee appointed three members to serve on the Official Committee of Unsecured Creditors (the "Committee") in these Chapter 11 Cases.

D. *Jurisdiction and Venue*. This Court has core jurisdiction over the persons and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Chapter 11 Cases and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

E. *Notice*. Under the circumstances, the notice given by the Debtors of, and as described in, the Motion, the relief requested therein, and the hearings on the Motion constitute proper notice thereof and complies with Bankruptcy Rules 2002, 4001(b), (c) and (d), and 9014 and the Local Rules, and no further notice of the relief sought in the Motion and the relief granted herein is necessary or required.

F. *Bridge Loan*. Prior to the First Interim Hearing and entry of the *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Security Interests and Superpriority Administrative Expense Status, (III) Granting Adequate Protection to Certain Prepetition Secured Credit Parties, (IV) Modifying the Automatic Stay, (V) Authorizing the*

---

following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

*Debtors to Enter Into Agreements with CSV Capital Partners LLC, (VI) Authorizing Non-Consensual Use of Cash Collateral, (VII) Scheduling a Final Hearing, and (VIII) Granting Related Relief*, Dkt. 50 (the "First Interim Order"), the DIP Lender on behalf of the Debtors, advanced $537,659.84 to cover reasonable and necessary expenses of the Debtors and to avoid immediate and irreparable harm.

G. *No Credit Available on More Favorable Terms*. The Debtors are unable to procure financing in the form of unsecured credit allowable as an administrative expense under sections 364(a), 364(b), or 503(b)(1) of the Bankruptcy Code. The Debtors are also unable to obtain secured credit without (i) granting to the DIP Lender the DIP Liens and the DIP Superpriority Claims (each as defined herein) and (ii) incurring the Adequate Protection Obligations (as defined herein), to the extent set forth herein and under the terms and conditions set forth in the DIP Term Sheet, in each case of (i) and (ii) subject and subordinate to the Carve-Outs and Permitted Prior Senior Liens, and have been unable to procure the necessary financing on terms more favorable, taken as a whole, than the financing offered by DIP Lender pursuant to the DIP Term Sheet.

H. *Best Interests of Estates*. It is in the best interests of the Debtors' estates and creditors that the Debtors be allowed to obtain postpetition secured financing from the DIP Lender under the terms and conditions set forth herein and in the DIP Term Sheet, as such financing is necessary to avoid immediate and irreparable harm to the Debtors' estates and for the continued operation of the Debtors' businesses.

I. *Consent of Secured Lenders*. CSV purchased the pre-petition loans made by Irazuk LLC and Feenix Venture Partners (the "CSV Purchased Loans"). CSV, with respect to the CSV Purchased Loans, Eastern Funding ("Eastern"), and Merchant Financial Corporation ("Merchant") have consented to the final relief requested in the Motion as reflected in this Final Order. CSV

with respect to the CSV Purchased Loans, Eastern, and Merchant, are together referred to herein as the "Consenting Prepetition Secured Parties".

J. *Merchant Stipulations*. The Debtors hereby stipulate and agree: (i) to the validity, extent and amount of Merchant's lien as a first priority perfected lien on all assets other than certain equipment (the "Merchant Lien"), all as reflected in the Merchant loan documents admitted into evidence at the Third Interim Hearing (the "Merchant Loan Documents"); (ii) the balance owed by the Debtors under the Merchant Loan Documents as of May 20, 2025 is $3,346,169.89; and (iii) the funds in the JPM accounts to be released as under paragraph 40 of the Third Interim Order (defined below) are proceeds of Debtors' prepetition accounts receivable and subject to Merchant's lien pursuant to the First Interim Order (collectively, the "Merchant Stipulation"). Merchant hereby stipulates and agrees to: (a) the DIP Liens in Avoidance Action Proceeds (subject to the Carve-Outs) and the relief granted to the DIP Lender in paragraphs 20 and 21 of this Final Order; and (b) not to object to the relief described in the foregoing part (a) at any time. Notwithstanding the foregoing, regardless of whether the DIP Lender obtains a waiver of any "equities of the case" exception under section 552(b) of the Bankruptcy Code, the DIP Lender and Merchant stipulate and agree that neither will attempt to invalidate the DIP AR Lien (defined herein) or Merchant AR Lien (defined herein) for any reason.

K. *Good Faith*. The extension of credit and financial accommodations under the DIP Term Sheet and/or the DIP Loan Documents are fair, reasonable, in good faith, negotiated at arm's length, reflect the Debtors' exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration. The liens, claims and other covenants and payments as set forth in this Final Order and the DIP Term Sheet, as well as the protections afforded parties acting in "good faith" under section 364(e) of the Bankruptcy Code are integral, critical and

essential components of the DIP Facility provided by the DIP Lender to the Debtors. Accordingly, the DIP Lender is entitled to the protections of Bankruptcy Code section 364(e).

L. *Good Cause*. The final relief requested in the Motion is necessary, essential and appropriate, and is in the best interest of and will benefit the Debtors, their creditors and their estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to (1) minimize disruption to the Debtors' businesses and ongoing operations, (2) preserve and maximize the value of the Debtors' estates for the benefit of all the Debtors' creditors, and (3) avoid potential immediate and irreparable harm to the Debtors, their creditors, their businesses, their employees, and their assets.

M. *Necessity of DIP Facility Terms*. The terms of the this Final Order, the DIP Term Sheet, and/or the DIP Loan Documents assuring that the liens and the various claims, superpriority claims, and other protections granted in this Final Order will not be affected by any subsequent reversal or modification, as provided in section 364(e) of the Bankruptcy Code, which is applicable to the postpetition financing arrangement contemplated in the DIP Term Sheet, are necessary in order to induce the DIP Lender to provide postpetition financing to the Debtors.

N. *Need for Postpetition Financing*. The Debtors do not have sufficient and reliable sources of working capital to continue to operate their businesses in the ordinary course without the financing requested in the Motion. The Debtors' ability to maintain business relationships with their vendors, suppliers and customers, to pay their employees, and to otherwise fund their operations is essential to the Debtors' continued viability as the Debtors seek to maximize the value of the assets of their estates for the benefit of all creditors of the Debtors. The ability of the Debtors to obtain sufficient and stable working capital and liquidity through the proposed postpetition financing arrangements with the DIP Lender as set forth in this Final Order and the

DIP Term Sheet (and/or the DIP Loan Documents) is vital to the preservation and maintenance of the going concern value of each Debtor. Accordingly, the Debtors have an immediate need to obtain the postpetition financing in order to, among other things, permit the orderly continuation of the operation of their businesses, minimize the disruption of their business operations, and preserve and maximize the value of the assets of the Debtors' bankruptcy estates in order to maximize the recovery to all creditors of the estates.

O. *Need to Use Cash Collateral*. The Debtors need to use Cash Collateral to, among other things, preserve, maintain and maximize the value of their assets and businesses. The ability of the Debtors to maintain liquidity through the use of Cash Collateral is vital to the Debtors and their efforts to maximize the value of their assets. Accordingly, the Debtors have demonstrated good and sufficient cause for the relief granted herein.

P. *Sections 506(c) and 552(b)*. As material inducement to the DIP Lender to agree to provide the DIP Facility and in exchange for agreement by the DIP Lender and the Consenting Prepetition Secured Parties to subordinate their superpriority claims to the Carve-Outs, the DIP Lender is entitled to a waiver of any "equities of the case" exception under section 552(b) of the Bankruptcy Code, and (b) the DIP Lender is entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code.

Q. *Pari Passu Treatment of Merchant's and DIP Lender's First-Position Liens in Debtors' AR*. From and after entry of the *Third Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Security Interests and Superpriority Administrative Expense Status, (III) Granting Adequate Protection to Certain Prepetition Secured Credit Parties, (IV) Modifying the Automatic Stay, (V) Authorizing the Debtors to Enter Into Agreements with CSV Capital Partners LLC, (VI) Authorizing Non-Consensual Use of Cash Collateral, (VII) Scheduling*

*a Final Hearing, and (VIII) Granting Related Relief*, Dkt. 131 (the "Third Interim Order"), the Debtors are seeking to grant Merchant and the DIP Lender each a perfected, first-position lien on and security interest in the Debtors' accounts receivables and proceeds thereof regardless of whether such accounts receivables are considered prepetition or postpetition accounts receivables (collectively "Debtors' AR"), ranking *pari passu* proportionally with each other, as further described in paragraph 11(a) below. To the extent that Debtors' AR constitutes Merchant's prepetition collateral, the lien granted to the DIP Lender in such Debtors' AR is an equal priming lien to that of the Merchants Lien pursuant to 364(d)(1) of the Bankruptcy Code. This equal lien is necessary and appropriate because Merchant has consented, the Debtors were unable to obtain credit otherwise, and Merchant is provided with adequate protection of its interest in the form of the Merchant Replacement Lien and Adequate Protection Payments, as further described below, and subject to the Carve-Outs. The term "Merchant AR Lien" means, together, the Merchant Lien in Debtors' AR and the Merchant Replacement Lien.

R. *Additional DIP Liens*. In addition to and exclusive of the *pari passu* lien in Debtors' AR described above, the Debtors are seeking to grant the DIP Lender: (i) a perfected, first priority, priming lien and security interest that is senior to any liens of the Consenting Prepetition Secured Parties (other than Permitted Prior Senior Liens and the Merchant AR Lien) on and in the DIP Collateral pursuant to 364(d)(1) of the Bankruptcy Code, subject to the Permitted Prior Senior Liens; (ii) a perfected first priority lien, and security interest, senior to all other liens (including Adequate Protection Liens), on and in the unencumbered assets of the Debtors and their estates, subject to the Merchant Replacement Lien, and (iii) a perfected junior priority lien on, and security interest in, all DIP Collateral that on or as of the Petition Date (including pursuant to Section 546(b) of the Bankruptcy Code) is subject to a Permitted Prior Senior Lien. The term "Permitted Prior

Senior Lien" means any first lien on the Debtors' equipment that was valid, binding, enforceable, and fully perfected on the Petition Date with respect to the equipment collateralizing such lien as of the Petition Date.

S. *Kannegiesser.* Nothing in this Final Order changes or affects: (a) the rights of the Debtors, Herbert Kannegiesser GmbH, or Kannegiesser ETECH Inc. under the *Order Approving Settlement* entered on June 18, 2025, Dkt. 154; or (b) the priority of the lien of Herbert Kannegiesser GmbH in the Debtor's equipment as of the Petition Date, which for the avoidance of doubt is not primed by the DIP Liens or any other lien granted by this Final Order.

T. *DIP Budget*. The Debtors have prepared and delivered to the DIP Lender and its advisors, and the Committee and its professionals, a budget attached hereto as Schedule 1 (together with any additional line-item or other detail and supplements as may be provided pursuant to the terms of the DIP Term Sheet, the "DIP Budget"). The DIP Budget reflects, among other things, the Debtors' projected operating receipts, operating disbursements, non-operating disbursements, net operating cash flow and liquidity for each one-week period covered thereby. The DIP Budget may be modified, amended, extended, and updated from time to time in accordance with the DIP Term Sheet and/or DIP Loan Documents, and such modified, amended, extended and/or updated budget, once approved (or deemed approved) by the Debtors and the DIP Lender, shall modify, replace, supplement or supersede, as applicable, the DIP Budget for the periods covered thereby (the DIP Budget and each subsequent approved budget (including any additional line-item or other detail and supplements as may be provided pursuant to the terms of the DIP Term Sheet and/or DIP Loan Documents) shall constitute, without duplication, an "Approved Budget"). Each subsequent Approved Budget (as approved in accordance with the DIP Term Sheet and a Financing Order) shall be provided to the Office of the United States Trustee for the District of

Delaware (the "U.S. Trustee"), counsel to the Committee, and counsel to the Consenting Prepetition Secured Parties, in summary form. The DIP Budget has been reviewed by the Debtors, their management and their advisors, and the Debtors believe that the DIP Budget is reasonable under the circumstances. The DIP Lender is relying, in part, upon the Debtors' agreement to comply with the Approved Budget (subject only to permitted variances) and the terms of the Term Sheet in determining to enter into the DIP Facility and to consent to the use of Cash Collateral provided for in this Final Order.

U. *No Control*. The Debtors admit, stipulate, acknowledge and agree that, notwithstanding the fact that Benjamin Gerut is both a founder of the Debtors and a member of the DIP Lender group as disclosed by the Debtors in the Motion and First Day Declaration, the Debtors stipulate and this Court finds that in making decisions to advance loans to the Debtors, in administering any loans, in accepting the DIP Budget or any Approved Budget or in taking any other actions permitted by any Financing Order, or the DIP Loan Documents in their capacity as DIP Lender, the DIP Lender shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors ("No Control Stipulation"). The Debtors further admit, stipulate, acknowledge and agree that, neither of the Debtors is an obligor or guarantor on any loan from Benjamin Gerut to Cooperative Laundry SMS, LLC (an affiliate of the Debtors), including, but not limited to the loan secured by UCC financing statement document number 1166484330002 filed with the Texas Secretary of State on August 2, 2022 ("Gerut Texas Loan"). Subsequently, the Gerut Texas Loan was assigned from Mr. Gerut to his affiliate Irazuk LLC.

V. *Adequate Protection*. The Debtors are seeking adequate protection for the Consenting Prepetition Secured Parties who are (a) consenting to the priming liens and security

interests in favor of the DIP Lender (and, in the case of Merchant, consenting to the *pari passsu* treatment of the Merchant AR Lien and DIP AR Lien) and (b) otherwise entitled to receive adequate protection on account of its interests in certain prepetition collateral pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code solely to the extent of any diminution in the value of their interests in their prepetition collateral (other than prepetition collateral secured by a Permitted Prior Senior Lien). As part of the adequate protection provided by this Final Order, the Consenting Prepetition Secured Parties shall receive, among other things, the Adequate Protection Obligations (as defined in paragraph 13 below) and reporting information described herein. The terms of the Adequate Protection Obligations are fair and reasonable and reflect the Debtors' prudent exercise of business judgment and are sufficient to allow the Debtors' use of the prepetition collateral and to permit the relief granted in this Final Order.

W. *Requisite Authority*. Each Debtor has all requisite corporate or entity power and authority to execute and deliver the DIP Loan Documents to which it is a party and to perform its obligations thereunder.

X. *Best Interests*. Consummation of the DIP Facility and the permitted use of Cash Collateral and prepetition collateral in accordance with this Final Order and the DIP Term Sheet, are in the best interests of the Debtors' estates and consistent with the Debtors' exercise of their fiduciary duties.

Based upon the foregoing findings and conclusions, the Motion and the record before this Court with respect to the Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED** that:

1. *DIP Facility Approval*. The final relief sought in the Motion is granted, the financing described herein is authorized and approved on a final basis, and the Debtors' use of Cash Collateral on a final basis is authorized, in each case subject to the terms and conditions set forth herein and in the DIP Term Sheet and/or the DIP Loan Documents. All objections to the Motion to the extent not withdrawn, waived, settled, or resolved are hereby denied and overruled on the merits. The Debtors are authorized, pursuant to section 364 of the Bankruptcy Code, to execute, deliver, enter into and, as applicable, comply with and perform all of their obligations under the DIP Term Sheet and/or the DIP Loan Documents and such other and additional documents necessary or desired to implement the DIP Facility, and to obtain postpetition secured financing from the DIP Lender, to avoid immediate and irreparable harm to the Debtors' estates. All provisions of the DIP Term Sheet are incorporated herein and approved in their entirety, whether explicitly referenced or not.

2. *DIP Obligations*. The DIP Term Sheet (and/or the DIP Loan Documents) shall constitute and evidence the valid and binding effect of the Debtors' obligations under the DIP Facility, which DIP Obligations shall be legal, valid, and binding obligations of the Debtors and enforceable against the Debtors, their estates, any successors thereto, including, without limitation, any trustee appointed in any of the Debtors' cases, or in any case under chapter 7 of the Bankruptcy Code upon the conversion of any such cases, or in any other proceedings superseding or related to any of the foregoing, any successors thereto, and any party determined to be the beneficial owner of the DIP Collateral by this Court. The Debtors and their successors shall be jointly and severally liable for repayment of any funds advanced pursuant to the DIP Term Sheet (and/or the DIP Loan Documents) and the DIP Obligations. No obligation, payment, transfer or grant of security under the DIP Term Sheet (and/or the DIP Loan Documents) or this Final Order, with respect to the DIP

Facility shall be stayed, restrained, voided, voidable or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim.

3. *Authorization to Borrow*. The Debtors are hereby authorized to execute, deliver, enter into and, as applicable, comply with and perform all of their obligations, and to pay all fees, costs, expenses, indemnities, and other amounts contemplated, under the DIP Term Sheet (and/or the DIP Loan Documents) and to take such other and further acts as may be necessary, appropriate or desirable in connection therewith. Upon entry of this Final Order, the Debtors are authorized to borrow up to the aggregate amount of the Advance, and the Debtors are hereby authorized to provide a guaranty of payment and performance in respect of the DIP Obligations, in each case, in accordance with the DIP Term Sheet, and the DIP Obligations are hereby approved (as and when such amounts become earned, due, and payable in accordance with the DIP Term Sheet) without the need to seek further Court approval.

4. *Roll-up of Prepetition Bridge Loan*. The bridge loan in the amount of $537,659.84 is hereby rolled into the DIP Facility, such that, such amount will be deemed principal owed by the Debtors pursuant to the DIP Facility, and such amount shall be provided all of the benefits and protections of the DIP Facility the same as if the amount were first loaned post-petition pursuant to the DIP Term Sheet, DIP Loan Documents and Financing Orders. For purposes of the payment of the Commitment Fee, the amount of $537,659.84 will be deemed drawn down on the date of entry of the First Interim Order, but no Commitment Fee is payable until after entry of this Final Order.

5. *Use of DIP Facility Proceeds*. The Debtors shall use advances of credit under the DIP Facility (the "DIP Loans") only for the express purposes specifically set forth in the DIP Term

Sheet (and/or the DIP Loan Documents), the Approved Budget, subject to permitted variances, and this Final Order. The Debtors are authorized to use the proceeds of the DIP Loans to (a) fund the postpetition working capital needs of the Debtors during the pendency of the Chapter 11 Cases, (b) pay fees, costs, and expenses of the DIP Facility on the terms and conditions described in the DIP Term Sheet (and/or the DIP Loan Documents), (c) pay the allowed administrative costs and expenses of the Chapter 11 Cases, and (d) pay the pre-petition expenses authorized in the Orders approving the various First Day Motions, in each case, solely in accordance with the DIP Term Sheet (and/or the DIP Loan Documents) (including, but not limited to, the Approved Budget) and this Final Order.

6. *DIP Budget and DIP Facility Reporting*. Except as otherwise provided herein or approved by the DIP Lender, the proceeds from the DIP Facility shall be used only in compliance with the terms of the DIP Term Sheet (and/or the DIP Loan Documents). The Debtors shall comply with the reporting requirements and obligations set forth in the DIP Term Sheet (and/or the DIP Loan Documents); provided that the Debtors shall provide the Variance Report (as defined in the DIP Term Sheet) every four weeks to the DIP Lender. The Debtors shall additionally provide counsel for DIP Lender with reporting every other week on (a) the status of the repairs to the Debtors' equipment, including the entities performing the repairs and approximate costs; (b) actual or expected major variances to the Approved Budget; and (c) actual or expected draws on the DIP Facility, which reporting may be made orally or via email (collectively, the "Status Report"). Counsel for the DIP Lender shall provide via email to counsel for the Committee and counsel for Merchant the following reports: (i) the Variance Report and a written summary of the Status Report, which for the avoidance of doubt, shall include the approximate costs of the anticipated equipment repairs, categories of parts to be ordered, and the status of the repairs, promptly after

receiving the same from the Debtors, and, in any event, no later than two business (2) days upon receipt of the Variance Report and/or Status Report; and (ii) advance notice of each draw request, including the approved amount and an indication of whether the draw varies from the Status Report by more than ten percent (10%) or is intended to be used on any expenses not listed in the Status Report where the intended amount is in excess of $20,000.[4]

7. *Payment of DIP Facility Fees and Expenses*.

(a) The Debtors are also hereby authorized and directed to pay upon demand, all fees costs, expenses and other amounts payable under the terms of the DIP Term Sheet (and/or the DIP Loan Documents) and this Final Order and all other fees and out-of-pocket costs and expenses of the DIP Lender in accordance with the terms of the DIP Term Sheet (and/or the DIP Loan Documents) and this Final Order, including, without limitation, all reasonable documented fees and out-of-pocket costs and expenses of Reitler Kailas & Rosenblatt LLP and Morris James LLP as counsel to the DIP Lender (the "DIP Professional Fees and Expenses"), subject to receiving a written invoice therefor. None of such fees, costs, expenses or other amounts shall be subject to further application to or approval of this Court, and shall not be subject to allowance or review by this Court or subject to the U.S. Trustee's fee guidelines, and no attorney or advisor to the DIP Lender shall be required to file an application seeking compensation for services or reimbursement of expenses with this Court; provided, however, that copies of any such invoices shall be provided contemporaneously to the U.S. Trustee, counsel to the Consenting Prepetition Secured Parties and counsel to the Committee (together with the Debtors, the "Review Parties" and each a "Review Party"), provided further, however, that such invoices may be redacted or modified to the extent

[4] The Committee reserves its right to object to any use of proceeds of the DIP Facility that is not in compliance with this Final Order or that exceeds permitted variances of the DIP Budget.

necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute a waiver of the attorney-client privilege or any benefits of the attorney work product doctrine. Any objections raised by any Review Party with respect to such invoices must be in writing and state with particularity the grounds therefor and must be submitted to the affected professional within ten (10) calendar days after delivery of such invoices to the Review Parties (such ten (10) day calendar period, the "Review Period"). If no written objection is received prior to the expiration of the Review Period from the Review Parties, the Debtors shall pay such invoices within five (5) business days following the expiration of the Review Period. If an objection is received within the Review Period, the Debtors shall promptly pay the undisputed amount of the invoice within five (5) business days, and the disputed portion of such invoice shall not be paid until such dispute is resolved by agreement between the affected professional and the objecting party or by order of this Court. Any hearing to consider such an objection to the payment of any fees, costs or expenses set forth in a professional fee invoice hereunder shall be limited to the reasonableness of the fees, costs and expenses that are the subject of such objection. All such unpaid fees, costs, expenses, and other amounts owed or payable to the DIP Lender shall be secured by the DIP Collateral and afforded all the priorities and protections afforded to the DIP Obligations under the DIP Term Sheet (and/or the DIP Loan Documents) and this Final Order.

(b) Notwithstanding anything contained in this Final Order to the contrary, any and all payments, premiums, fees, costs, expenses, and other amounts paid at any time by any of the Debtors to the DIP Lender pursuant to the requirements of this Final Order or the DIP Term Sheet (and/or the DIP Loan Documents) shall be non-refundable and irrevocable, are hereby approved, and shall not be subject to any challenge, objection, defense, claim or cause of action of

any kind or nature whatsoever, including, without limitation, avoidance (whether under chapter 5 of the Bankruptcy Code or under applicable law (including any applicable state law Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law)), reduction, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), reclassification, disgorgement, disallowance, impairment, marshaling, surcharge, or recovery or any other cause of action, whether arising under the Bankruptcy Code, applicable non- bankruptcy law or otherwise, by any person or entity (subject, solely in the case of the DIP Professional Fees and Expenses, to paragraph 7(a) of this Final Order).

8. *Indemnification*. The Debtors are hereby authorized to and hereby agree to indemnify and hold harmless the DIP Lender and its affiliates, directors, officers, employees, agents, attorneys, or any other Person affiliated with or representing the DIP Lender (collectively, an "Indemnified Party") from and against: (a) all obligations, demands, claims, damages, losses and liabilities (including, without limitation, reasonable fees and disbursements of counsel) (collectively, "Indemnity Claims") as set forth in the DIP Term Sheet (and/or the DIP Loan Documents) including those asserted by any other party in connection with the transactions contemplated by the DIP Term Sheet (and/or the DIP Loan Documents); and (b) all losses or expenses incurred, or paid by the DIP Lender from, following, or arising from the transactions contemplated by the DIP Term Sheet (and/or the DIP Loan Documents), including reasonable and documented attorneys' fees and expenses, except for Indemnity Claims and/or losses directly caused by the DIP Lender's fraud, gross negligence or willful misconduct. In the case of an investigation, litigation or other proceeding to which the indemnity in this paragraph applies, such indemnity shall be effective whether or not such investigation, litigation or proceeding is brought by any of the Debtors or any of their respective directors, security holders or creditors, an

Indemnified Party, or if any other Person or Indemnified Party is otherwise a party thereto, and whether or not the transactions contemplated hereby are consummated. No Indemnified Party shall have any liability (whether direct or indirect, in contract, tort or otherwise) to any Debtor or any of its subsidiaries or any shareholders or creditors of the foregoing for or in connection with the transactions contemplated hereby, except to the extent such liability is determined by a court of competent jurisdiction in a final non-appealable judgment or order to have resulted solely from such Indemnified Party's gross negligence, willful misconduct or material breach of the DIP Term Sheet. All indemnities of the Indemnified Parties shall constitute DIP Obligations secured by the DIP Collateral and afforded all of the priorities and protections afforded to the DIP Obligations under the DIP Term Sheet and this Final Order. For the avoidance of doubt, the indemnification obligations set forth in this paragraph 8 shall not apply to the CSV Purchased Loans.

9. *DIP Superpriority Claims*. In accordance with section 364(c)(1) of the Bankruptcy Code, the DIP Obligations shall constitute allowed senior administrative expense claims against each Debtor and their estates (the "DIP Superpriority Claims") with priority in payment over any and all administrative expenses at any time existing or arising, of any kind or nature whatsoever, subject to the Carve-Outs, including, without limitation, the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113, and 1114 of the Bankruptcy Code or otherwise, including those resulting from the conversion of any of the Chapter 11 Cases pursuant to section 1112 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; provided, further that the DIP Superpriority Claims shall have recourse to and be payable from all prepetition and postpetition property and assets of the Debtors and the estates and all DIP Collateral and all proceeds thereof,

including, (a) any and all avoidance action claims or causes of action under sections 544, 545, 547, 548 through 551, and 553(b) of the Bankruptcy Code, except with respect to the Merchant Preference Lien (defined below) (the "Avoidance Actions"), (b) the proceeds thereof, except with respect to the Merchant Preference Lien (the "Avoidance Action Proceeds"), and (c) prepetition tort claims, including any Kannegiesser Claims (defined below) and claims against the Debtors' current and former directors and officers (if any) and the proceeds thereof. The DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise.

10. *DIP Liens*.

(a) The liens on and security interests in the DIP Collateral as granted to the DIP Lender in the First Interim Order ("Interim DIP Liens") are hereby granted on a final basis effective as of the Petition Date, subject to the Carve-Outs and the Permitted Prior Senior Liens. With respect to the DIP Lender's liens on and security interests in the Debtors' AR, the provisions of the First Interim Order shall apply as of the Petition Date through the entry of the Third Interim Order and the provisions of this Final Order shall apply as of the entry of the Third Interim Order.

(b) Effective automatically as of the entry of the Third Interim Order, as security for the DIP Obligations, pursuant to 364(d)(1) of the Bankruptcy Code, the DIP Lender is granted and shall have a valid, binding, continuing, enforceable, non-avoidable, priming, and automatically and properly fully perfected first priority lien on, and security interest in, any and all of Debtors' AR, which shall be equal to the Merchant AR Lien and senior to all other liens and security interests (including Adequate Protection Liens) (the "DIP AR Lien"), subject to the Carve-Outs.

(c) Effective automatically as of the entry of the Third Interim Order, as security for the DIP Obligations, subject to the Carve-Outs: (i) pursuant to 364(c)(2) of the Bankruptcy Code, the DIP Lender is granted and shall have a valid, binding, continuing, enforceable, non-avoidable, and automatically and properly fully perfected first priority lien on, and security interest in any and all DIP Collateral that is not subject to a lien as of the Petition Date or by operation of section 552(b) of the Bankruptcy Code, equal to the Merchant Replacement Lien with respect to Debtors' AR, junior to the Merchant Preference Lien, and senior to all other liens (including Adequate Protection Liens); (ii) pursuant to 364(c)(3) of the Bankruptcy Code, the DIP Lender is granted and has a valid, binding, continuing, enforceable, non-avoidable, and automatically and properly fully perfected lien on, and security interest in the DIP Collateral, equal to the Merchant Replacement Lien with respect to Debtors' AR, and junior only to any Permitted Prior Senior Lien and the Merchant Preference Lien, and (iii) pursuant to 364(d)(1) of the Bankruptcy Code, the DIP Lender is granted and shall have a valid, binding, continuing, enforceable, non-avoidable, priming, and automatically and properly fully perfected first priority lien on, and security interest in, any and all DIP Collateral, equal to the Merchant AR Lien with respect to Debtors' AR, and senior to all other liens and security interests (including Adequate Protection Liens) other than Permitted Prior Senior Liens and the Merchant Preference Lien (collectively, and together with the Interim DIP Lien and the DIP AR Lien, the "DIP Liens") as collateral security for the prompt and complete performance and payment when due (whether at the Maturity Date (as defined in the DIP Term Sheet), by acceleration, or otherwise) of the DIP Obligations under the terms of the DIP Term Sheet (and/or the DIP Loan Documents).

(d) The term "DIP Collateral" means collectively all of the Debtors' right, title and interest in, to and under all of the Debtors' assets, including, but not limited to the following,

in each case, whether now owned or existing or hereafter acquired, created or arising and wherever located: all assets and property of such Debtor and its estate, real or personal, tangible or intangible, now owned or hereafter acquired, whether arising before or after the Petition Date, including, without limitation, contracts, contract rights, licenses, general intangibles, instruments, equipment, accounts, documents, goods, inventory, fixtures, documents, cash, cash equivalents, accounts receivables, chattel paper, letters of credit and letter of credit rights, investment property (including, without limitation, all equity interests owned by any Debtor in its current and future subsidiaries), commercial tort claims (including any Kannegiesser Claims), arbitration awards, money, insurance, receivables, receivables records, deposit accounts, collateral support, supporting obligations and instruments, fixtures, all interests in leaseholds and real properties, all patents, copyrights, trademarks, all trade names and other intellectual property (whether such intellectual property is registered in the United States or in any foreign jurisdiction), together with all books and records relating to the foregoing, all proceeds, products, accessions, rents and profits of or in respect of any of the foregoing (as such terms are defined in the Uniform Commercial Code as in effect from time to time in the State of New Jersey) and (i) proceeds of actions brought under section 549 of the Bankruptcy Code to recover any postpetition transfer of DIP Collateral, (ii) Avoidance Actions and Avoidance Action Proceeds, subject to the Merchant Preference Lien and Carve-Outs, and (iii) prepetition tort claims, including any Kannegiesser Claims and claims against the Debtors' current and former directors and officers (if any) and the proceeds thereof. The "Kannegiesser Claims" means any and all claims against Herbert Kannegiesser GmbH, Kannegiesser ETECH Inc., or any of their affiliates (individually and collectively, "Kannegiesser"), whether arising prepetition or postpetition, including but not limited to claims arising out of or relating to any act or omission of Kannegiesser (x) relating to any industrial

laundry equipment or materials, parts, or services for industrial laundry equipment (individually and collectively, "Laundry Equipment"), including any of Kannegiesser's acts or omissions in connection with the sale, installation, maintenance, or supply of any Laundry Equipment, or (y) that interferes, interrupts, or otherwise harms the business of Debtors.

(e) To the fullest extent permitted by the Bankruptcy Code or applicable law, and except as otherwise set forth herein, any provision of any lease other than a real property lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the consent or the payment of any fees or obligations to any entity in order for any of the Debtors to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other DIP Collateral, shall have no force or effect with respect to the DIP Liens on such leasehold interests or other applicable DIP Collateral or the proceeds of any assignment and/or sale thereof by any Debtor, in favor of the DIP Lender in accordance with the terms of the DIP Term Sheet (and/or the DIP Loan Documents) or this Final Order.

11. *Priority of DIP Liens*.

(a) The DIP AR Lien and Merchant AR Lien shall be ranked equally on a proportional *pari passu* basis (as described below) in the Debtors' AR received by Debtors upon and after entry of the Third Interim Order. In any liquidation or other distribution to lienholders of Debtors' AR received by Debtors upon and after entry of the Third Interim Order, after reserve for the Professional Carve-Out, one hundred percent of such Debtors' AR shall be paid to the DIP Lender and Merchant until the DIP Obligations and Merchant Obligations (defined below) are paid in full as follows (x) to the DIP Lender, such percentage equal to the total outstanding DIP Obligations divided by the sum of the total outstanding DIP Obligations plus the total outstanding

Merchant Obligations and (y) to Merchant, such percentage equal to the total outstanding Merchant Obligations divided by the sum of the total outstanding DIP Obligations plus the total outstanding Merchant Obligations. The Merchant Preference Lien shall be senior to the DIP Liens with respect to any and all Avoidance Actions Proceeds from Avoidance Actions against Debtors' secured creditors (or purported secured creditors) who received payments from Debtors ninety days prior to the Petition Date, to the extent of such payments.

(b) Except as expressly set forth herein (including but not limited to the Merchant AR Lien and Merchant Preference Lien), the DIP Liens and the DIP Superpriority Claims shall not be made junior to or *pari passu* with (1) any lien, security interest or claim heretofore or hereinafter granted in any of the Chapter 11 Cases or any successor cases (collectively, the "Successor Cases") (and DIP Liens and the DIP Superpriority Claims shall be valid and enforceable against the Debtors, their estates, any trustee or any other estate representative appointed or elected in the Chapter 11 Cases or any Successor Cases and/or upon the dismissal or conversion of any of the Chapter 11 Cases or any Successor Cases), (2) any lien that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or otherwise, (3) any intercompany or affiliate lien or claim, and (4) any liens arising after the Petition Date excluding any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, or board for any liability of the Debtors.

12. *Use of Cash Collateral*. The Debtors are authorized to use Cash Collateral to fund the postpetition working capital needs of the Debtors during the pendency of the Chapter 11 Cases that are not funded with the DIP Loans and to pay the allowed administrative costs and expenses of the Chapter 11 Cases not funded by the DIP Loans, each solely in accordance with the DIP

Term Sheet, the Approved Budget and the Financing Orders, provided that the Debtors' performance against the Approved Budget shall be subject to variance permitted in the DIP Term Sheet. The DIP Budget is attached to this Final Order. Each proposed DIP Budget shall only become an Approved Budget for the use of Cash Collateral and DIP Obligations as set forth in the Financing Orders and the DIP Term Sheet when it is agreed upon by the Debtors and DIP Lender. The Debtors' use of Cash Collateral shall automatically terminate upon the occurrence of an Event of Default (as defined below).

13. *Adequate Protection of Consenting Prepetition Secured Parties*. In consideration of their consent to (i) subordinate the position of their security interest, and/or (ii) the use of cash collateral pursuant to the terms of this Final Order, the Consenting Prepetition Secured Parties are each entitled, pursuant to sections 361, 362, 363(c)(2), 363(e), and 507 of the Bankruptcy Code, to adequate protection of its interests in any of its prepetition collateral, in an amount equal to the aggregate diminution in value of its interests in its respective prepetition collateral from and after the Petition Date, if any, for any reasons provided under the Bankruptcy Code, subject to the Carve-Outs. The Adequate Protection Liens, the Merchant Replacement Lien, the Merchant Preference Lien, the Adequate Protection Payments, the Adequate Protection Claims, and the 507(b) Claims granted herein are collectively referred to as the "Adequate Protection Obligations".

(a) *Merchant Replacement Lien*. Effective automatically as of the entry of the Third Interim Order, as security for the obligations owed by Debtors to Merchant under the Merchant Loan Documents (collectively, the "Merchant Obligations"), Merchant is granted and shall have a valid, binding, continuing, enforceable, non-avoidable, and automatically and properly fully perfected first priority lien on, and security interest in, any and all of Debtors' AR (the "Merchant Replacement Lien"), which shall be equal to the DIP AR Lien and senior to all other

liens and security interests in such collateral (including Adequate Protection Liens), subject to the Carve-Outs.

(b) *Merchant Preference Lien*. Effective automatically as of the entry of the Third Interim Order, as security for the obligations owed by Debtors to Merchant under the Merchant Loan Documents, Merchant is granted and shall have a valid, binding, continuing, enforceable, non-avoidable, and automatically and properly fully perfected first priority lien on, and security interest in, any and all Avoidance Actions Proceeds from Avoidance Actions solely against Debtors' secured creditors (or purported secured creditors) who received payments from Debtors ninety days prior to the Petition Date, to the extent of such payments (the "Merchant Preference Lien"), which shall be senior to all other liens and security interests in such collateral (including DIP Liens).

(c) *Adequate Protection Liens for Consenting Prepetition Secured Parties*. The liens on and security interests in the DIP Collateral as granted to the Consenting Prepetition Secured Parties in the First Interim Order ("Interim Adequate Protection Liens") are hereby granted on a final basis effective as of the Petition Date, subject to the Carve-Outs, the DIP Liens, the Merchant AR Lien, and the Permitted Prior Senior Liens. If there is any inconsistency between the Interim Adequate Protection Liens and the Adequate Protection Liens (defined below), the provisions of the First Interim Order shall apply as of the Petition Date through the entry of the Third Interim Order and the provisions of this Final Order shall apply as of the entry of the Third Interim Order. Each Consenting Prepetition Secured Party is hereby granted (effective and perfected as of the date of the Third Interim Order and without the necessity of any mortgages, security agreements, pledge agreements, financing statement or other agreements), a replacement lien (each, an "Adequate Protection Lien") (i) in and to Debtors' postpetition collateral of the same

type as the Consenting Prepetition Secured Party's prepetition collateral (excluding equipment) (the "Adequate Protection Collateral"); (ii) of the same validity, extent, and priority as the lien held by such Consenting Prepetition Secured Party prior to the Petition Date, but junior to the DIP Liens and Merchant AR Lien, and (iii) to the extent of any diminution in value of such Consenting Prepetition Secured Party's Adequate Protection Collateral on account of the granting of the DIP Liens, the subordination of the Consenting Prepetition Secured Party's prepetition liens, the imposition of the automatic stay, or the Debtors' use, sale, depreciation, or disposition of the Consenting Prepetition Secured Party's Adequate Protection Collateral and Cash Collateral during the pendency of the Chapter 11 Cases, subordinate to the DIP Liens, the Merchant AR Lien, and Permitted Prior Senior Liens and subject to the Carve-Outs. For the avoidance of doubt, no Interim Adequate Protection Lien, Adequate Protection Lien or Merchant AR Lien shall extend to Avoidance Actions, Avoidance Action Proceeds, or any commercial tort claims (including any Kannegiesser Claims).

(d) *Adequate Protection Payments for Merchant*. Merchant shall be paid an adequate protection payment on the fifteenth day of each month commencing on August 15, 2025 in an amount equivalent to 8% interest on the amount of the outstanding Merchant Obligations for the first four months after entry of this Final Order and, thereafter, in the amount of $25,000 per month (each, an "Adequate Protection Payment"). The Debtors' obligation to make such Adequate Protection Payments shall terminate upon the earlier of confirmation of a plan in these Chapter 11 Cases, conversion or dismissal of these Chapter 11 Cases, and termination of the use of Merchant's cash collateral under the provisions of this Final Order. Each Adequate Protection Payment shall be applied by Merchant in the same manner as regular loan payments as set forth in the Merchant Loan Documents.

(e) *Adequate Protection Claims for Consenting Prepetition Secured Parties*. The Consenting Prepetition Secured Parties shall each have an adequate protection claim (each an "Adequate Protection Claim"), in an amount equal to extent of any diminution in value of Consenting Prepetition Secured Party's Adequate Protection Collateral on account of the granting of the DIP Liens, the subordination of the Consenting Prepetition Secured Party's prepetition liens, the imposition of the automatic stay, or the Debtors' use, sale, depreciation, or disposition of the Consenting Prepetition Secured Party's Adequate Protection Collateral and Cash Collateral during the pendency of the Chapter 11 Cases. Each Consenting Prepetition Secured Party is hereby granted, an allowed superpriority administrative expense claim as provided in section 507(b) of the Bankruptcy Code in the amount of each party's Adequate Protection Claim with, except as set forth in this Final Order, priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code (the "507(b) Claims"); which 507(b) Claims shall have recourse to and be payable to each Consenting Prepetition Secured Party from its Adequate Protection Collateral (after payment of any claims or liens with priority as to such Adequate Protection Collateral). The 507(b) Claims shall, in all instances, be subject and subordinate only to (i) the Carve-Outs, and (ii) the DIP Superpriority Claims. The Consenting Prepetition Secured Parties shall not receive or retain any payments, property or other amounts in respect of the 507(b) Claims unless and until the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) have indefeasibly been paid in cash in full and all DIP Commitments have been terminated.

14. *DIP Termination Event; Exercise of Remedies*.

a) *DIP Termination Events*. An "Event of Default" shall exist upon the occurrence of any of the events listed in the DIP Term Sheet that triggers the DIP Termination

Date (as defined in the DIP Term Sheet). As set forth in the Term Sheet, the DIP Lender agrees that prior to the Entry of Default, the DIP Lender agrees to provide the Debtors with 10 days' written notice to cure any default.

b) *Exercise of Remedies*. Upon the occurrence of a DIP Termination Event, without further notice to, hearing of, application to, or order from this Court, the automatic stay provisions of section 362 of the Bankruptcy Code shall be vacated and modified to the extent necessary to permit the DIP Lender to take any of the following actions, at the same or different time: (i) declare the commitment of the DIP Lender to make DIP Loans and consent to use of Cash Collateral to be terminated, whereupon such commitment and consent shall be terminated; (ii) declare the unpaid amount of the DIP Obligations, all interest accrued and unpaid thereon, and all other amounts owing or payable; or (iii) take any other action or exercise any other right or remedy (including, without limitation, with respect to credit bidding and the liens in favor of the DIP Lender) permitted under this Term Sheet or the Financing Orders, or by applicable law (including, without limitation, the rights of a secured creditor under the Uniform Commercial Code); provided, however, that if, in the exercise of its rights or remedies upon the occurrence of a DIP Termination Event, the DIP Lender collects or otherwise obtains any of the Debtors' AR, then Merchant's percentage (as calculated pursuant to paragraph 11(a)) of gross proceeds of such Debtors' AR shall be paid to Merchant up to the outstanding balance owed to Merchant pursuant to the Merchant Loan Documents as of the date of payment to Merchant, subject to the Carve-Outs.

15. *No Waiver by Failure to Seek Relief.* The rights and remedies of the DIP Lender specified herein are cumulative and not exclusive of any rights or remedies that the DIP Lender may have under any Financing Order, the DIP Term Sheet (and/or the DIP Loan Documents),

applicable law, or otherwise. The failure or delay on the part of the DIP Lender to seek relief or otherwise exercise its rights and remedies under any Financing Order, the DIP Term Sheet (and/or the DIP Loan Documents), or applicable law, as the case may be, shall not constitute a waiver of any of its respective rights hereunder, thereunder, or otherwise. Except as expressly set forth herein, none of the rights or remedies of the DIP Lender under any Financing Order, or the DIP Term Sheet (and/or the DIP Loan Documents) shall be deemed to have been amended, modified, suspended, or waived unless such amendment, modification, suspension, or waiver is express, in writing and signed by the DIP Lender. No consents required hereunder by the DIP Lender shall be implied by any inaction or acquiescence by the DIP Lender.

16. *Carve- Outs*.

(a) *Priority of Carve-Outs*. The DIP Liens, the DIP Superpriority Claims, and the Adequate Protection Obligations shall be subject and subordinate to payment of the Carve-Outs. The Carve-Outs shall be senior to all claims and liens over all assets of the Debtors, including any DIP Collateral, as set forth in this Final Order.

(b) *Carve-Outs*. The term "Carve-Outs" refers to the Professional Carve-Out and the Claim Carve-Out.

(c) *Professional Carve-Out*. The term "Professional Carve-Out" shall mean the sum of allowed statutory expenses payable pursuant to 28 U.S.C. § 1930(a)(6) (and interest thereon) ("Statutory Fees") and Priority Professional Expenses (defined below) up to the amount of $250,000 (in the aggregate) with $100,000 earmarked for the Committee's Priority Professional Expenses ("Committee Earmark"), paid as follows: (i) first, the Statutory Fees shall be paid in full from the Professional Carve-Out (other than the Committee Earmark); (ii) second, the Committee's Priority Professional Expenses shall be paid from the Committee Earmark; (iii) third,

the Debtors' retained professionals shall draw from their retainers prior to seeking payment from the Professional Carve-Out; (iv) fourth, the DIP Lender's retained professionals shall draw from their retainers prior to seeking payment from the Professional Carve-Out; and (v) fifth, the unpaid Priority Professional Expenses (after accounting for payments made pursuant to (ii), (iii), and (iv) above) shall be paid from the Professional Carve-Out on a *pro rata* basis. The term "Priority Professional Expenses" as used herein means allowed fees, costs and reasonable expenses allowed or permitted pursuant to sections 330 and 331 of the Bankruptcy Code or this Final Order of (i) lawyers and financial advisors retained by the Debtors, (ii) lawyers and financial advisors retained by the Committee, and (ii) lawyers and financial advisors retained by the DIP Lender.

(d) *Claim Carve-Out*. The term "Claim Carve-Out" shall mean 40% of the proceeds collected by each Debtor's estate from Avoidance Actions and prepetition tort claims (including, for the avoidance of doubt, the Kannegiesser Claims) for the purpose of making distributions to the Debtors' creditors. For the avoidance of doubt, (i) the Debtor may designate in writing to be provided to the Committee non-insider vendors and suppliers that may not be pursued as targets of Avoidance Action litigation; and (ii) any recoveries under the Claim Carve-Out shall be paid by the applicable Debtor's estate (including any trustee, if appointed, or any plan administrator or trustee appointed under a plan) to satisfy any allowed claims, other than repayment of the DIP Facility. For the avoidance of doubt, once the DIP Facility has been repaid in full, any DIP Liens on Avoidance Actions shall be extinguished and any future Avoidance Action Proceeds shall revert to the Debtors' estate (or any successor under a plan).

17. *Limitations on Use of DIP Proceeds, Cash Collateral and Carve-Outs*. The DIP Facility, DIP Collateral, Adequate Protection Collateral, Cash Collateral, and Carve-Outs may not be used in connection with: (a) preventing, hindering, or delaying any of the DIP Lender's

enforcement or realization upon any of the DIP Collateral or Adequate Protection Collateral; (b) using or seeking to use Cash Collateral without the permission of the DIP Lender or selling or otherwise disposing of DIP Collateral without the consent of the DIP Lender or as permitted by the DIP Term Sheet; (c) after payment in full of the DIP Obligations, selling or otherwise disposing of Adequate Protection Collateral without the consent of the Consenting Prepetition Secured Parties; (d) using or seeking to use any insurance proceeds constituting DIP Collateral without the consent of the DIP Lender; (e) seeking to amend or modify any of the rights granted to the DIP Lender or the Consenting Prepetition Secured Parties under this Final Order, the DIP Term Sheet, or the, including seeking to use Cash Collateral, Adequate Protection Collateral and/or DIP Collateral on a contested basis; (f) litigating, objecting to, challenging or contesting in any manner in any way the DIP Liens, DIP Obligations, DIP Superpriority Claims, DIP Collateral (including Cash Collateral), the Adequate Protection Obligations, or any other claims, held by or on behalf of the DIP Lender or the Consenting Prepetition Secured Parties, respectively; (g) asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without limitation, Avoidance Actions or applicable state law equivalents or actions to recover or disgorge payments, against the DIP Lender or any of its respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees; (h) litigating, objecting to, challenging, or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations, the DIP Liens, the Adequate Protection Liens or any other liens or interests of any of the DIP Lender or the Consenting Prepetition Secured Parties; or (i) seeking to subordinate, recharacterize, disallow or avoid the DIP Obligations or the Adequate Protection Obligations; provided, however, that the Carve-Outs and such collateral proceeds and loans under the DIP Loan Documents may be used for allowed fees and expenses, in

an amount not to exceed $50,000 (in the aggregate) (the "Investigation Budget Amount"), incurred solely by the Committee, in investigating (but not prosecuting or challenging): (i) any claims against, or transactions with, insiders of either Debtor as described in this paragraph 17 or that are DIP Financing Lien and Claim Matters (defined below) up to $25,000 of the Investigation Budget Amount; and (ii) any claims against, or transactions with, non-insiders as described in this paragraph 17 or that are DIP Financing Lien and Claim Matters up to $25,000 of the Investigation Budget Amount. Notwithstanding anything to the contrary, any fees, expenses or costs incurred by the Committee or its professionals in excess of the Investigation Budget Amount or in excess of the amount budgeted for the Committee's professionals set forth in the DIP Budget shall not constitute an allowable administrative expense claim, including for purposes of section 1129(a)(9)(A) of the Bankruptcy Code.

18. *Effect of Stipulation on Third Parties*.

(a) *Generally*. Subject to a Challenge, the following admissions, stipulations, agreements, releases, and waivers (collectively, the "DIP Financing Lien and Claim Matters") are and shall be binding on the Debtors, any subsequent trustee, responsible person, examiner with expanded powers, any other estate representative, and all creditors and parties-in-interest and all of their successors in interest and assigns, including, without limitation, the Committee:

(i) The DIP Lender Release;

(ii) The No Control Stipulation;

(iii) The Merchant Stipulation;

(iv) Debtors, the DIP Lender, and each of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees, have acted in good faith, and without negligence or violation of public policy or

law, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining requisite approvals of the DIP Facility, the use of Cash Collateral, and the Financing Orders; and

(v) No portion of the DIP Liens, DIP Obligations, DIP Superpriority Claims, DIP Collateral (including Cash Collateral), DIP Term Sheet, or the DIP Loan Documents is subject to any challenge, claim, or objection, including impairment, set-off, avoidance, disallowance, disgorgement, reduction, recharacterization, recovery, subordination (equitable or otherwise), attack, offset, counterclaims, or crossclaims pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(b) *Challenge*. The DIP Financing Lien and Claim Matters are not binding to the extent that a party- in-interest: (i) has sought and obtained standing and the requisite authority to commence a Challenge (as defined below) (other than the Debtors, as to which any Challenge is irrevocably waived and relinquished); (ii) has timely filed the appropriate pleadings, and timely commenced the appropriate proceeding required under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in this Final Order) challenging the DIP Financing Lien and Claim Matters, as set forth in this Final Order (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "Challenge"), by no later than seventy-five (75) days following the entry of the First Interim Order for any party-in-interest with requisite standing (each the "Challenge Deadline"), as such applicable date may be extended in writing from time to time in the sole discretion of the DIP Lender, not to be unreasonably withheld,

or by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline, and (iii) this Court enters judgment in favor of the plaintiff or movant in any such timely and properly commenced Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal. If the Committee files a motion seeking authority, derivatively or otherwise, to commence a Challenge specifically identified in such motion on or prior to the Challenge Deadline, the Challenge Deadline for the Committee to commence such identified Challenge shall be tolled through the earlier of (x) the date of the withdrawal of such motion, or (y) the date that is fourteen (14) days after the entry of a dispositive ruling on such motion. If these Chapter 11 Cases convert to cases under chapter 7, or if a chapter 11 trustee is appointed prior to the Challenge Deadline, the Challenge Deadline shall be extended for any such chapter 7 or chapter 11 trustee to 14 days after their appointment. For the avoidance of doubt, the DIP Financing Lien and Claim Matters exclude the CSV Purchased Loans and any Challenge related to the CSV Purchased Loans may be brought outside of the Challenge Period.

(c) *Binding Effect*. Upon entry of this Final Order, to the extent no Challenge is timely and properly commenced by the Challenge Deadline, or to the extent such proceeding does not result in a final and non-appealable judgment, then, without further notice, motion, or application to, order of, or hearing before, this Court and without the need or requirement to file any proof of claim, the DIP Financing Lien and Claim Matters shall, pursuant to this Final Order, become binding, conclusive, and final on any person, entity, or party-in-interest in the Chapter 11 Cases, and their successors and assigns, and in any Successor Case for all purposes and shall not be subject to challenge or objection by any party-in-interest, including, without limitation, a trustee, responsible individual, examiner with expanded powers, or other representative of the

Debtors' estates. Notwithstanding anything to the contrary herein, if any such proceeding is properly and timely commenced, the DIP Financing Lien and Claim Matters shall nonetheless remain binding on all other parties-in-interest and preclusive as provided in subparagraph (a) above except to the extent that any of such DIP Financing Lien and Claim Matters is expressly the subject of a timely and properly filed Challenge, which Challenge is successful as set forth in a final judgment as provided in subparagraph (b) above, and only as to plaintiffs or movants that have complied with the terms hereof.

19. *Release*. Upon entry of this Final Order, each of the Debtors, on its own behalf, on behalf of its respective bankruptcy estate, hereby forever and irrevocably releases, waives, discharges and acquits the DIP Lender and its members, and each of their officers, directors, managers, employees, agents, and professionals, in each case acting in their capacity as such, ("DIP Lender Released Parties") from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every type, including, without limitation, any so-called "lender liability" or equitable subordination claims or defenses (collectively, "Claims"), related to any of their acts and omissions in connection with the DIP Facility, DIP Collateral, or DIP Liens (excluding any Claims based upon or related to the CSV Purchased Loans) (the "DIP Lender Release").

20. *Bankruptcy Code Sections 506(c) and 552(b) Waivers*. Upon entry of this Final Order, without limiting the Carve-Outs, the Debtors irrevocably waive and shall be prohibited from asserting (i) any surcharge claim, under section 506(c) of the Bankruptcy Code or otherwise, for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the DIP Lender upon the DIP Collateral and no costs or expenses of administration that have been or may be incurred in any of the Chapter 11 Cases at any time shall

be charged against the DIP Lender or its respective claims or liens (including any claims or liens granted pursuant to any Financing Order), and (ii) the "equities of the case" exception under section 552(b) of the Bankruptcy Code in connection with the DIP Facility and the use of Cash Collateral.

21. *Application of Proceeds*. Upon entry of this Final Order, in no event shall the DIP Lender, with respect to the DIP Collateral, be subject to the equitable doctrine of "marshaling" or any other similar doctrine, and all proceeds of such DIP Collateral shall be received and used in accordance with the Financing Orders.

22. *Disposition of Collateral*. The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral, other than in the ordinary course of business or in connection with the payments contemplated under this Final Order, without the prior written consent of the DIP Lender (and no such consent shall be implied from any other action, inaction or acquiescence by the DIP Lender or from any order of this Court). Notwithstanding anything otherwise provided herein, 100% of any net cash proceeds of any sale of DIP Collateral outside of the ordinary course of business shall, subject to the satisfaction of the Carve-Outs and the lien priorities outlined in paragraph 11 herein, be used to immediately satisfy the DIP Obligations.

23. *Restrictions on Granting Postpetition Liens*. Other than the Carve-Outs or as otherwise provided in this Final Order, the DIP Term Sheet, or the DIP Loan Documents, no claim or lien having a priority superior or *pari passu* with those granted by any Financing Order to the DIP Lender shall be granted or permitted by any order of this Court in the Chapter 11 Cases heretofore or hereafter, and the Debtors will not grant any such mortgages, security interests or liens in the DIP Collateral (or any portion thereof) or the Adequate Protection Collateral (or any portion thereof) or to any other parties pursuant to section 364(d) of the Bankruptcy Code or

otherwise, while (i) any portion of the DIP Facility, any DIP Loans or any other DIP Obligations, are outstanding, or (ii) the DIP Lender has any Commitment under the DIP Loan Documents. For avoidance of doubt, there shall be no restriction and this paragraph shall not apply to and excludes any liens or security interests granted in favor of any federal, state, municipal, or other governmental unit, commission, board, or court for any liability of the Debtors.

24. *Automatic Effectiveness of Liens*. The DIP Liens and the Adequate Protection Liens shall not be subject to a Challenge and shall attach and become valid, perfected, binding, enforceable, non-avoidable and effective by operation of law as of the date of the entry of the First Interim Order, automatically, without any further action by the Debtors, or the DIP Lender or the Consenting Prepetition Secured Parties, respectively, and without the necessity of execution by the Debtors or the filing or recordation, of any financing statements, security agreements, deposit control agreements, vehicle lien applications, mortgages, filings with a governmental unit, or other documents or the taking of any other actions. All DIP Collateral shall be free and clear of other liens, claims and encumbrances, except as provided in the Term Sheet, and this Final Order. All Adequate Protection Collateral shall be free and clear of other liens, claims and encumbrances, except as provided in this Final Order. If the DIP Lender hereafter requests that the Debtors execute and deliver to such party financing statements, security agreements, pledge agreements, control agreements, collateral assignments, mortgages, or other instruments and documents considered by the DIP Lender to be reasonably necessary or desirable to further evidence the perfection of the DIP Liens or the Adequate Protection Liens, as applicable, the Debtors are hereby authorized and directed to execute and deliver such financing statements, security agreements, pledge agreements, control agreements, mortgages, collateral assignments, instruments, and documents, and the DIP Lender is hereby authorized to file or record such documents in its

discretion without seeking modification of the automatic stay under section 362 of the Bankruptcy Code, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of the entry of the First Interim Order; provided, however, no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens or the Adequate Protection Liens. The DIP Lender, in its sole discretion, may file a photocopy of this Final Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to, or in lieu of, such financing statements, notices of liens or similar statements.[5]

25. *Protection Under Section 364(e) of the Bankruptcy Code*. The DIP Lender has acted in good faith in connection with this Final Order and its reliance on this Final Order is in good faith. For the avoidance of doubt, the DIP Lender is entitled to all the protections of section 364(e) of the Bankruptcy Code.

26. *Reservation of Rights of the DIP Lender and the Consenting Prepetition Secured Parties*. Notwithstanding any other provision of this Final Order to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair: (i) any of the rights of the DIP Lender or the Consenting Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of any of such parties to (a) request modification of the automatic stay of section 362 of the Bankruptcy Code, (b) request dismissal of any of these Chapter 11 Cases, conversion of any of these Chapter 11 Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers in any of these Chapter 11 Cases, (c) seek to propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (ii) any other

[5] The provisions of section 1146(a) of the Bankruptcy Code do not apply herein.

rights, claims, or privileges (whether legal or equitable or otherwise) of the DIP Lender or the Consenting Prepetition Secured Parties. The delay in or failure of the DIP Lender or the Consenting Prepetition Secured Parties to seek relief or otherwise exercise their respective rights and remedies shall not constitute a waiver of any of the DIP Lender's or the Consenting Prepetition Secured Parties' rights and remedies.

27. *Modification of Stay*. Subject to the terms set forth herein, the automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms, rights, benefits, privileges, remedies and provisions of any Financing Order and the DIP Term Sheet (and/or the DIP Loan Documents), including without limitation, to permit the DIP Lender to exercise all rights and remedies provided for in the DIP Term Sheet (and/or the DIP Loan Documents) and this Final Order and to take any and all actions provided therein, in each case, without further notice, application to, order of or hearing before this Court, including those set forth in paragraph 14 of this Final Order.

28. *Survival of DIP Liens, DIP Superpriority Claims, Adequate Protection Liens, Adequate Protection Obligations and Other Rights*. If, in accordance with section 364(e) of the Bankruptcy Code, this Final Order does not become a final non-appealable order, or if any of the provisions of this Final Order are hereafter modified, amended, vacated or stayed by subsequent order of this Court or any other court, such termination or subsequent order shall not affect the priority, validity, enforceability or effectiveness of (or subordination to the Carve- Outs of) any lien, security interests or any other benefit or claim authorized hereby with respect to any DIP Obligations or Adequate Protection Obligations incurred prior to the effective date of such termination or subsequent order. All such liens, security interests, claims and other benefits shall be governed in all respects by the original provisions of this Final Order, and the DIP Lender and

Consenting Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges and benefits granted herein, including the liens and priorities granted herein, with respect to any DIP Loan and Adequate Protection Obligations, subject to the Carve-Outs and Permitted Prior Senior Liens.

29. *Proof of Claim*. The DIP Lender shall not be required to file proofs of claim with respect to any DIP Obligations or other obligations existing under DIP Term Sheet (and/or the DIP Loan Documents) or any Financing Order, and the evidence presented with the Motion and the record established at the Third Interim Hearing are deemed sufficient to, and do, constitute proofs of claim with respect to their obligations, secured status, and priority.

30. *Survival of this Final Order*.

a) The provisions of this Final Order and any actions taken pursuant hereto shall survive the entry of any order: (i) confirming any plan of reorganization in any of the Chapter 11 Cases; (ii) converting any of the Chapter 11 Cases to chapter 7 cases; or (iii) dismissing any of the Chapter 11 Cases, and the terms and provisions of this Final Order as well as the DIP Superpriority Claims, the DIP Liens in DIP Collateral granted pursuant to this Final Order, the DIP Term Sheet, and/or the DIP Loan Documents, the Adequate Protection Liens, the 507(a) Claims, and the Adequate Protection Obligations shall continue in full force and effect notwithstanding the entry of any such order.

b) The DIP Liens and the DIP Superpriority Claims shall maintain their priority as provided by this Final Order, the DIP Term Sheet, and/or the DIP Loan Documents, and to the maximum extent permitted by law, until all of the DIP Obligations are indefeasibly paid in full in cash and discharged or otherwise treated under a plan of reorganization, which is reasonably acceptable to the DIP Lender. In no event shall any plan of reorganization be allowed

to alter the terms of repayment of any of the DIP Obligations from those set forth in the DIP Term Sheet, and/or the DIP Loan Documents unless agreed to by and among the Debtors and the DIP Lender.

31. *Modifications of DIP Term Sheet*. The Debtors and the DIP Lender are hereby authorized to implement, in accordance with the terms of the DIP Term Sheet any non-material modifications of the DIP Term Sheet without further notice, motion or application to, order of or hearing before, this Court; provided, however, that counsel to the DIP Lender shall within twenty-four hours notify counsel to the Consenting Prepetition Secured Parties and the Committee. Any material modification or amendment to the DIP Term Sheet shall only be permitted pursuant to an order of this Court, after being submitted to this Court upon five (5) days' notice to the U.S. Trustee, the Consenting Prepetition Secured Parties, and counsel to the Committee; provided, that any forbearance from, or waiver of, (i) a breach by the Debtors of a covenant representation or any other agreement or (ii) a default or an Event of Default, in each case under the DIP Term Sheet shall not require an order of this Court. In the event of any inconsistency between this Final Order and the DIP Term Sheet, and/or the DIP Loan Documents, this Final Order shall control.

32. *Insurance Policies*. On each insurance policy maintained by the Debtors which in any way relates to the DIP Collateral: (i) the DIP Lender shall be, and shall be deemed to be, without any further action by or notice to any person, named as additional insureds; and (ii) the DIP Lender shall be and shall be deemed to be, without any further action by or notice to any person, named as loss payee for DIP Collateral on which the DIP Lien holds a first priority lien. The Debtors are hereby authorized on an interim basis, to and shall take any actions necessary to have the DIP Lender be added as an additional insured and loss payee on each insurance policy maintained by the Debtors consistent with this Final Order and the DIP Term Sheet (and/or the

DIP Loan Documents), which in any way relates to the DIP Collateral. In addition, the Office of the United States Trustee for the District of Delaware, attention Jonathan Lipshie, shall receive notice of any change to the Insurance Policies, including, but not limited to Changes to the named insured on the Insurance Policies, within five (5) days of any such changes.

33. *Financial Information*. The Debtors shall deliver to the DIP Lender and the Consenting Prepetition Secured Parties such financial and other information concerning the business and affairs of the Debtors and any of the DIP Collateral and the Adequate Protection Collateral as may be required pursuant to the DIP Term Sheet (and/or the DIP Loan Documents), the Prepetition Loan Documents and/or as the DIP Lender or the Consenting Prepetition Secured Parties shall reasonably request from time to time. The Debtors shall allow the DIP Lender and the Consenting Prepetition Secured Parties access to the premises in accordance with the terms of the DIP Term Sheet (and/or the DIP Loan Documents) or Prepetition Loan Documents for the purpose of enabling such parties to inspect and audit the DIP Collateral, the Adequate Protection Collateral and the Debtors' books and records.

34. *Immediate Effect of Order*. The terms and conditions of this Final Order shall be effective and immediately enforceable upon its entry by the Clerk of the Court notwithstanding any potential application of Bankruptcy Rule 6004(h) or otherwise. Furthermore, to the extent applicable, the notice requirements and/or stays imposed by Bankruptcy Rules 4001(a)(3), 6003(b), and 6004(a) are hereby waived for good and sufficient cause. The requirements of Bankruptcy Rules 4001 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

35. *Retention of Jurisdiction*. This Court shall retain jurisdiction to enforce the provisions of this Final Order, and this retention of jurisdiction shall survive the confirmation and

consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

36. Nothing in this Final Order is intended to create an injunction, but injunctive relief may be sought.

37. JPM Accounts. The relief granted in Paragraph 40 of the Third Interim Order (regarding Debtors' accounts at JPMorgan Chase Bank, N.A. ("JPM") is granted on a final basis.

38. Nothing herein shall limit the Committee's (or other party in interest's) ability to (x) file a motion in respect of any timely Challenge for which it may not be able to obtain standing as a matter of law because the applicable Debtor is a limited liability company (an "LLC Challenge Motion"), and (y) seek pursuant to such LLC Challenge Motion a mechanism by which to prosecute such Challenge. In the event the Committee or other party in interest files an LLC Challenge Motion for which it may not be able to obtain standing, the expiration of the Challenge Period solely for the specific Challenge set forth in the LLC Challenge Motion shall be tolled pending further order of the Court, and applicable parties shall meet and confer with respect to an appropriate process for the prosecution of any such Challenge. If timely notified of a Challenge for which the Committee or other party in interest may not be able to gain standing because the applicable Debtor is a limited liability company, the Debtors (or a designated representative) shall retain the authority to prosecute such Challenge in the exercise of their business judgment and subject to any applicable further order of the Court.

**Dated: August 6th, 2025**
**Wilmington, Delaware**

**CRAIG T. GOLDBLATT**
**UNITED STATES BANKRUPTCY JUDGE**