# EXHIBIT 1

**DIP FACILITY TERM SHEET**
**In re Deqser LLC**
**May 23, 2025**

This term sheet (this "***Term Sheet***") sets forth the terms and conditions with respect to the DIP Loans (as defined below) and the DIP Facility (as defined below). This Term Sheet shall be a binding agreement with respect to the DIP Loans and, together with the Financing Orders (as defined below) and any other related agreements, documents, security agreements or pledge agreements entered into in connection herewith and therewith, sets forth all of the terms, conditions, representations and other provisions with respect to the DIP Facility. Upon entry of the final DIP Order, the Term Sheet and each DIP documents constitutes the legal, valid, and binding obligations. In the event of any conflict between this Term Sheet and the terms of the Financing Orders, the terms of the Financing Orders shall govern.

| | |
|---|---|
| **Borrowers**: | The Borrowers shall be Deqser LLC and KNY 26671 LLC , those debtors and debtors-in- possession (each, a "***Debtor***" and, collectively, the "***Debtors***") in the jointly administered cases (the "***Chapter 11 Cases***") filed under Chapter 11 of Title 11 of the United States Code (as amended, the "***Bankruptcy Code***") and filed with the United States Bankruptcy Court for the District of Delaware (the "***Bankruptcy Court***"). As used herein, the term "***Petition Date***" shall refer to the date of commencement of the applicable Debtors' Chapter 11 Cases. |
| **DIP Lender**: | CSV Capital Partners LLC and/or its designees or its assigns (the "***DIP Lender***"). |
| **Type and Amount of DIP Facility**: | A non-amortizing, priming, super-priority, senior secured, multiple-draw term debtor-in-possession facility in the aggregate principal amount not to exceed $2,500,000.00 (the "***DIP Facility***" and the loans made thereunder, the "***DIP Loans***").<br><br>The borrowing of DIP Loans shall permanently decrease the DIP Facility and the DIP Loans repaid may not be reborrowed. When the Debtors make a request to draw down on the DIP Facility, the DIP Lender shall issue the payment but reserves the right to request additional collateral to secure the obligation.<br><br>The initial net proceeds of the DIP Loan shall be funded in accordance with the Budget (as defined below).<br><br>As provided herein, the DIP Facility will be secured by a lien on all tangible and intangible prepetition and postpetition property in which any of the Debtors or their respective estates |

| | |
|---|---|
| | ("***Estates***") have an interest of any kind or nature, whether existing on or as of the Petition Date or thereafter acquired or created, wherever located, including (effective upon the entry of the Final Order) all proceeds of avoidance actions (collectively, the "***DIP Collateral***"), subject to the Carve-Outs described herein. Subject, in each case, to the conditions precedent set forth herein and in the Financing Orders, up to $2,000,000.00 of the DIP Facility (the "***Interim DIP Loans***") will be funded consistent with the Budget (as defined below) after entry of an interim order approving the DIP Facility (the "***First Interim Order***") and subsequent interim orders approving further DIP Loans under DIP Facility ("***Subsequent Interim Orders***"), with the remainder (the "***Remaining DIP Loans***") to be funded consistent with the Budget after entry of the final order (the "***Final Order***, and together with the First Interim Order, and the Subsequent Interim Orders, the "***Financing Orders***"). Without limiting the foregoing, the DIP Facility shall be subject to the entry in the Bankruptcy Court of the First Interim Order (as to the interim DIP Facility), the Subsequent Interim Orders (as to interim DIP Loans) and the Final Order (as to the final DIP Facility), in form and substance acceptable to the DIP Lender in its sole and absolute discretion. |
| **Joint and Several Liability**: | The Debtors shall have joint and several liability for the DIP Obligations. |
| **Interest Rate**: | The DIP Loans shall bear interest at a rate per annum equal to 8%, payable in cash or at 11% payment in kind, at the election of the Borrower, on the first day of each month in arears (the "***Interest Rate***").<br><br>*All DIP Loans*<br><br>Accrued, unpaid interest shall be paid by the Debtors on the Maturity Date (as defined below).<br><br>It is the intention of the parties hereto to conform strictly to all applicable usury laws now or hereafter in force, and any interest payable under this Term Sheet and related documentation shall be subject to reduction to the amount not in excess of the maximum legal amount allowed under the applicable usury laws as now or hereafter construed by the courts having jurisdiction over such matters. |
| **Commitment Fee:** | The Borrower shall pay to the DIP Lender a commitment fee equal to 2.0% of the total amount of the DIP commitments under |

| | |
|---|---|
| | the DIP Facility (the "***Commitment Fee***"). The Commitment Fee shall be fully earned, non-refundable upon entry of the First Interim Order, and shall be payable out of the proceeds of each draw under the DIP Facility in the amount of 2.0% of each draw permitted to be drawn under the Financing Orders. For avoidance of doubt, each disbursement under a draw shall be subject to an applicable 2.0% Commitment Fee. |
| **Default Rate**: | At all times while an Event of Default (as defined below) exists, at the election of the DIP Lender, the DIP Loans shall bear interest at a rate per annum equal to 14% payable in cash. |
| **Maturity Date**: | The earliest of (a) April 10, 2026 (or such later date as the DIP Lender in its sole discretion may agree in writing with the Debtors); (b) acceleration of the DIP Loans pursuant to this Term Sheet or the Financing Orders; (c) 45 days after entry of the First Interim Order (or such later date as the DIP Lender in its sole discretion may agree in writing with the Debtors) if the Final Order has not been entered and become a final, non-appealable order on or prior to the expiration of such 45-day period; (d) the consummation of a sale of all or substantially all of the assets of the Debtors; (e) the effective date of a plan of reorganization filed in the Chapter 11 Cases (the "***Plan***") that is confirmed pursuant to an order entered by the Bankruptcy Court and to which the DIP Lender consents in its sole and absolute discretion; and (f) entry of an Order converting the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code or dismissal of either or both of the Chapter 11 Cases. |
| **Budget**: | All advances, and the use of funds provided, under the DIP Facility and any Cash Collateral (as defined below) shall be subject to and consistent with the budget to be agreed by DIP Lender and the Debtors (the "***Budget***"), which Budget may be modified by the Debtors with the written consent of the DIP Lender in its sole and absolute discretion and without further order of the Bankruptcy Court. The funding of all DIP Loans following the Interim DIP Loans shall be subject to prior use of cash in accordance with the Budget and cash need under the Budget. Funds may be carried over from prior periods.<br><br>Commencing April 10, 2025, and continuing on the same day every four weeks thereafter (and if such date is not a business day, the following business day), the Debtors shall furnish a supplement to the initial Budget (or the previously supplemented Budget), updating and/or extending the period covered by the initial Budget (or the previously supplemented Budget) so that it covers at least the period ending 13 weeks |

| | |
|---|---|
| | from the week in which the supplement is delivered. Such supplemental Budgets shall be subject to the DIP Lender's approval in its sole and absolute discretion and without further order of the Bankruptcy Court. The initial Budget (or the previously supplemented and approved Budget) shall remain the Budget in effect with respect to the period covered by such Budget until such time as the DIP Lender approves such supplemental Budget.<br><br>Compliance with the Budget will be measured every other week, starting with the third (3rd) week following the Petition Date, for the period beginning as of the first day of the first full week following the week of the Petition Date and ending the last day of the week prior to the week in which compliance is measured. For purposes of illustration, on the third week following the Petition Date, the Debtors' compliance with the Budget for the first two weeks following the Petition Date shall be measured. Each date on which compliance with the Budget is measured is referred to herein as a "***Testing Date***". As of any applicable Testing Date, subject to any overage as set forth above:<br><br>1. the cumulative cash receipts of the Debtors may vary from the Budget by no more than the following: (a) 20.00% for each Testing Date during the first six- week period, beginning as of the first day of the first full week following the week of the Petition Date; and (b) 15.00% for each Testing Date thereafter (the "***Cash Receipt Variance***"); and<br><br>2. the cumulative cash operating disbursements of the Debtors may vary from the Budget by no more than the following: (a) 20.00% for each Testing Date during the first six-week period, beginning as of the first day of the first full week following the week of the Petition Date; and (b) 15.00% for each Testing Date thereafter (the "***Cash Operating Variance***" and together with the Cash Receipt Variance, the "***Permitted Variances***").<br><br>As further set forth below, after the first three weeks following the Petition Date, the Debtors shall provide the DIP Lender with weekly and cumulative variance reporting on a line item basis for cash receipts, cash operating disbursements and non-operating, bankruptcy-related cash disbursements, which reporting shall (a) detail the variance, if any, of actual cash disbursements and actual cash receipts from the Budget and (b) |

| | |
|---|---|
| | provide an explanation of any per line item variance greater than 5.00% (each, a "***Variance Report***").<br><br>The Debtors shall provide to the DIP Lender such other financial and operational reporting as reasonably requested by the DIP Lender from time to time which may be waived by the DIP Lender in its sole discretion. |
| **DIP Obligations:** | As used herein, the term "***DIP Obligations***" means (a) the due and punctual payment by the Debtors of (i) the unpaid principal amount of and interest on (including interest accruing after the maturity of the DIP Loans) the DIP Loans, as and when due, whether at maturity, by acceleration or otherwise, and (ii) all other monetary obligations, including advances, debts, liabilities, obligations, fees, costs, expenses and indemnities, whether primary, secondary, direct, indirect, absolute or contingent, due or to become due, now existing or hereafter arising, fixed or otherwise, of the Debtors to the DIP Lender under this Term Sheet, the Financing Orders, and related documentation, and (b) the due and punctual payment and performance of all covenants, duties, agreements, obligations and liabilities of the Debtors to the DIP Lender under or pursuant to this Term Sheet, the Financing Orders and related documentation.<br><br>No later than the effective date of the Plan, the DIP Obligations shall be indefeasibly paid in full in cash; provided that the DIP Lender shall have the option to agree to such other treatment of the DIP Obligations as the DIP Lender may elect in its sole discretion. |
| **Cash Collateral:** | Subject to the entry in the Bankruptcy Court of the First Interim Order, the DIP Lender hereby consents to the use of its "cash collateral" as defined in section 363(a) of the Bankruptcy Code (the "***Cash Collateral***"), all in accordance with the terms and conditions set forth in this Term Sheet, the Financing Orders, any related documentation and the Budget.<br><br>In the event that the Final Order is not entered by the Bankruptcy Court and becomes a final, non-appealable order on or prior to the date that is 45 days after entry of the First Interim Order (or such later date as the DIP Lender in its sole discretion may agree in writing with the Debtors), the consent of the DIP Lender to the use of Cash Collateral shall automatically terminate. |

| | |
|---|---|
| **Use of DIP Loan Proceeds and Cash Collateral**: | The proceeds of the DIP Loans and the Cash Collateral shall be used, consistent with the Budget, for working capital and general corporate purposes, including the payment of payroll and payroll- related expenses, ordinary course professional fees, rent and other lease expenses, utilities, insurance, taxes, and other operating cash disbursements to the extent reasonably necessary to preserve or enhance the value of the DIP Collateral. |
| **Initial Funding**: | Subject to the terms and conditions set forth in this Term Sheet (including the Conditions Precedent (as defined below)) and the Financing Orders:<br><br>1. Upon entry in the Bankruptcy Court of the First Interim Order and Subsequent Interim Orders, in form and substance acceptable to the DIP Lender in its sole and absolute discretion, approving the DIP Loans and this Term Sheet and any other applicable documentation, the Interim DIP Loans will be available for the liquidity needs of the Debtors pursuant to the Budget (subject to Permitted Variances) and the applicable First Interim Order or Subsequent Interim Order.<br><br>2. Upon the entry in the Bankruptcy Court of the Final Order, in form and substance acceptable to the DIP Lender in its sole and absolute discretion, approving (among other things) the DIP Facility and the DIP Loans, the Remaining DIP Loans will be available for the liquidity needs of the Debtors pursuant to the Budget (subject to Permitted Variances). |
| **Security**: | As security for the prompt and complete payment and performance when due (whether at stated maturity, by acceleration or otherwise) of the DIP Obligations, each Debtor hereby grants to the DIP Lender a security interest in and continuing lien on all of such Debtor's right, title and interest in, to and under all of the DIP Collateral, including, but not limited to the following, in each case, whether now owned or existing or hereafter acquired, created or arising and wherever located: (a) all assets and property of each Debtor and its Estate, real or personal, tangible or intangible, now owned or hereafter acquired, whether arising before or after the Petition Date, including, without limitation, all contracts, contract rights, licenses, general intangibles, instruments, equipment, accounts, documents, goods, inventory, fixtures, documents, cash, cash equivalents, chattel paper, letters of credit and letter of credit rights, investment property, commercial tort claims, money, |

| | |
|---|---|
| | insurance, receivables, receivables records, deposit accounts, collateral support, supporting obligations and instruments, all interests in leaseholds and real properties, all patents, copyrights, trademarks, trade names and other intellectual property (whether such intellectual property is registered in the United States or in any foreign jurisdiction), all books and records relating to the foregoing, all other personal and real property of the Debtors, and all proceeds, products, accessions, rents, income and profits of or in respect of any of the foregoing (in each case as the foregoing are defined in the Uniform Commercial Code as in effect from time to time in the State of Delaware (the "***UCC***") (and, if defined in more than one Article of such Uniform Commercial Code, as defined in Article 9 thereof)); and (b) subject to the Final Order, proceeds of any actions under sections 544, 545, 547, 548 and 550 of the Bankruptcy Code.<br><br>Each Debtor hereby authorizes the DIP Lender to, at any time and from time to time, file any documents evidencing or perfecting the security interests granted herein, including without limitation financing statements, continuation statements, mortgages and amendments thereto that describe the DIP Collateral (including describing the DIP Collateral as "all assets" or "all personal property" of each Debtor, or words of similar effect), and which contain any other information required pursuant to the UCC or applicable law for the sufficiency of filing office acceptance of any such document, and each Debtor agrees to furnish any such information to the DIP Lender upon request.<br><br>If an Event of Default shall occur and be continuing, the DIP Lender may exercise, in addition to all other rights and remedies granted to it in this Term Sheet, the Financing Orders and in any other instrument or agreement securing, evidencing or relating to the DIP Obligations, all rights and remedies of a secured party under the UCC or any other applicable law. Without limiting the generality of the foregoing, if an Event of Default shall occur and be continuing, the DIP Lender, may in such circumstances forthwith collect, receive, appropriate and realize upon the DIP Collateral, or any part thereof, and/or may forthwith sell, lease, assign, give options to purchase, or otherwise dispose of and deliver the DIP Collateral or any part thereof (or contract to do any of the foregoing), in one or more parcels at public or private sale or sales, upon such terms and conditions as they may deem advisable and at such prices as they may deem best, for cash or on credit or for future delivery with assumption of any credit |

| | |
|---|---|
| | risk. The DIP Lender may disclaim any warranties that might arise in connection with any such lease, assignment, grant of option or other disposition of DIP Collateral and have no obligation to provide any warranties at such time. The DIP Lender shall have the right upon any such public sale or sales, and upon any such private sale or sales, to purchase the whole or any part of the DIP Collateral so sold, free of any right or equity of redemption in any Debtor, which right or equity is hereby waived and released. Such sales may be adjourned and continued from time to time with or without notice. The DIP Lender shall have the right to conduct such sales on any Debtor's premises or elsewhere and shall have the right to use any Debtor's premises without charge for such time or times as the DIP Lender deems necessary or advisable. The DIP Lender shall apply the net proceeds of any action taken by them pursuant to this provision, after deducting all reasonable costs and expenses of every kind incurred in connection therewith or incidental to the care or safekeeping of any of the DIP Collateral or in any way relating to the DIP Collateral or the rights of the DIP Lender hereunder, including attorneys' fees and disbursements, to the payment of the DIP Obligations in accordance with this Term Sheet, the Financing Orders and related documentation. Each Debtor waives all claims, damages and demands it may acquire against the DIP Lender arising out of the exercise by it of any rights hereunder. If any notice of a proposed sale or other disposition of DIP Collateral shall be required by law, such notice shall be deemed reasonable and proper if given at least 10 business days before such sale or other disposition.<br><br>Each Debtor recognizes that the DIP Lender may be unable to effect a public sale of any or all equity interests pledged hereunder, by reason of certain prohibitions contained in the Securities Act of 1933, as amended (the "***Securities Act***") and applicable state securities laws or otherwise, and may be compelled to resort to one or more private sales thereof to a restricted group of purchasers which will be obliged to agree, among other things, to acquire such securities for their own account for investment and not with a view to the distribution or resale thereof. Each Debtor acknowledges and agrees that any such private sale may result in prices and other terms less favorable than if such sale were a public sale and, notwithstanding such circumstances, agrees that any such private sale shall be deemed to have been made in a commercially reasonable manner. The DIP Lender shall be under no obligation to delay a sale of any equity interests |

| | |
|---|---|
| | pledged hereunder for the period of time necessary to permit the issuer thereof to register such securities or other interests for public sale under the Securities Act, or under applicable state securities laws, even if such issuer would agree to do so.<br><br>Each Debtor agrees to use its commercially reasonable efforts to do or cause to be done all such other acts as may be necessary to make such sale or sales of all or any portion of the equity interests pledged hereunder pursuant to this provision valid and binding and in compliance with applicable law. Each Debtor further agrees that a breach of any of the covenants contained in this provision will cause irreparable injury to the DIP Lender, that the DIP Lender has no adequate remedy at law in respect of such breach and, as a consequence, that each and every covenant contained in this provision shall be specifically enforceable against such Debtor, and to the extent permitted by applicable law such Debtor hereby waives and agrees not to assert any defenses against an action for specific performance of such covenants except for a defense that no Event of Default has occurred.<br><br>Each Debtor waives and agrees not to assert any rights or privileges which it may acquire under Section 9-626 of the UCC. Each Debtor shall remain liable for any deficiency if the proceeds of any sale or other disposition of the DIP Collateral are insufficient for the DIP Obligations to be indefeasibly paid in full and the fees and disbursements of any attorneys employed by the DIP Lender to collect such deficiency.<br><br>Each Debtor hereby irrevocably constitutes and appoints the DIP Lender and any officer or agent thereof, with full power of substitution, as its true and lawful attorney-in-fact with full irrevocable power and authority in the place and stead of such Debtor and in the name of such Debtor or in its own name, for the purpose of carrying out the terms of this Term Sheet and related documentation, to take any and all appropriate and reasonable action and to execute any and all documents and instruments which may be necessary or desirable to accomplish the purposes of this Term Sheet and related documentation. Each Debtor hereby ratifies all that such attorneys shall lawfully do or cause to be done by virtue hereof. All powers, authorizations and agencies contained in this provision are coupled with an interest and are irrevocable until this Term Sheet is terminated, and the security interests created hereby are released. The DIP Lender's sole duty with respect to the custody, safekeeping and physical preservation of the DIP |

| | |
|---|---|
| | Collateral in its possession shall be (a) to deal with it in the same manner as the DIP Lender deals with similar property for its own account, and (b) to account for monies actually received.<br><br>Subject to the reinstatement provision set forth herein and any surviving obligations, at such time as the DIP Obligations have been indefeasibly paid in full, the DIP Collateral shall be released from the liens created hereby. At the request of any Debtor following any such termination, the DIP Lender shall deliver to the Debtors any DIP Collateral held by the DIP Lender hereunder and execute and deliver to the Debtors such documents as the Debtors shall reasonably request to evidence such termination.<br><br>Each Debtor understands and agrees that the obligations of each Debtor under this provision shall be construed as continuing, absolute and unconditional without regard to any other circumstance whatsoever (with or without notice to or knowledge of any Debtor) which constitutes, or might be construed to constitute, an equitable or legal discharge of any Debtor for the DIP Obligations, in bankruptcy or in any other instance. When making any demand hereunder or otherwise pursuing its rights and remedies hereunder against any Debtor, DIP Lender may, but shall be under no obligation to, make a similar demand on or otherwise pursue such rights and remedies as it may have against any other Debtor or any other person or entity or against any other collateral security or guaranty for the DIP Obligations or any right of offset with respect thereto, and any failure by DIP Lender to make any such demand, to pursue such other rights or remedies or to collect any payments from any other Debtor or any other person or entity or to realize upon any such collateral security or guaranty or to exercise any such right of offset, or any release of any other Debtor or any other person or entity or any such collateral security, guaranty or right of offset, shall not relieve any Debtor of any obligation or liability hereunder, and shall not impair or affect the rights and remedies, whether express, implied or available as a matter of law, of the DIP Lender against any Debtor. For the purposes hereof "demand" shall include the commencement and continuance of any legal proceedings. |
| **Priority and Liens:** | Subject to the Carve-Outs, (a) all claims of the DIP Lender including the roll up of the Bridge Loan (defined below) under the DIP Facility with respect to the DIP Loans and the DIP Obligations shall at all times be entitled to superpriority claims status in the Chapter 11 Cases pursuant to section 364(c)(1) of |

| | |
|---|---|
| | the Bankruptcy Code senior to all other superpriority and administrative claims ("***DIP Superpriority Claims***").<br><br>As security for the DIP Obligations, pursuant to 364(d)(1) of the Bankruptcy Code, the DIP Lender is granted and shall have a valid, binding, continuing, enforceable, non-avoidable, priming, and automatically and properly fully perfected first priority lien on, and security interest in, any and all of Debtors' AR, which shall be equal to the Merchant AR Lien and senior to all other liens and security interests (including Adequate Protection Liens) (the "***DIP AR Lien***").<br><br>As security for the DIP Obligations: (i) pursuant to 364(c)(2) of the Bankruptcy Code, the DIP Lender is granted and shall have a valid, binding, continuing, enforceable, non-avoidable, and automatically and properly fully perfected first priority lien on, and security interest in any and all DIP Collateral that is not subject to a lien as of the Petition Date or by operation of section 552(b) of the Bankruptcy Code, equal to the Merchant Replacement Lien with respect to Debtors' AR, junior to the Merchant Preference Lien, and senior to all other liens (including Adequate Protection Liens); (ii) pursuant to 364(c)(3) of the Bankruptcy Code, the DIP Lender is granted and have a valid, binding, continuing, enforceable, non-avoidable, and automatically and properly fully perfected lien on, and security interest in the DIP Collateral, junior only to any Permitted Prior Senior Lien, and (iii) pursuant to 364(d)(1) of the Bankruptcy Code, the DIP Lender is granted and shall have a valid, binding, continuing, enforceable, non-avoidable, priming, and automatically and properly fully perfected first priority lien on, and security interest in, any and all DIP Collateral, which shall be senior to all other liens and security interests (including Adequate Protection Liens) other than Permitted Prior Senior Liens, the Merchant AR Lien, and the Merchant Preference Lien (collectively, and together with the DIP AR Lien, the "***DIP Liens***") as collateral security for the prompt and complete performance and payment when due (whether at the Maturity Date (as defined in the DIP Term Sheet), by acceleration, or otherwise) of the DIP Obligations under the terms of the DIP Term Sheet (and/or the DIP Loan Documents).<br><br>"***Permitted Prior Senior Liens***" means first liens on equipment that were valid, binding, enforceable, and fully perfected on the Petition Date. The DIP Lender agrees to a junior lien to Permitted Prior Senior Liens on existing equipment (provided |

| | |
|---|---|
| | that the DIP Lender shall have superpriority, priming liens on any equipment acquired after the Petition Date). |
| **Prepetition Bridge Loan and Roll Up:** | As of the Petition Date, the Debtors have incurred an outstanding secured bridge loan to the DIP Lender in the amount of $390,000 (the "***Bridge Loan***") for amounts paid by the DIP Lender for the benefit of the Debtors in the days leading up to the Chapter 11 Cases which shall be rolled up and included in the DIP Loan as part of the First Interim Order. |
| **Carve-Outs:** | The Financing Orders shall provide for a customary carve-out from the superpriority claims and liens of the DIP Lender for the retained professionals of the Debtors and any committee appointed in the Chapter 11 Cases and the United States Trustee fees in an amount of $150,000 (the "***Professional Carve-Out***"). The Final Order shall provide a carve out for each of the Debtors' Estates of 25% of the proceeds collected by each Estate from avoidance actions and commercial tort claims brought by the applicable Debtor-in-Possession in its sole discretion (the "***Claim Carve-Out***"), capped as follows: (a) in the event of a confirmed Plan, the Claim Carve-Out shall be capped at the amount of unsecured claims paid under the Plan (although the Claim Carve-Out may be paid to satisfy any allowed claims under the Plan, other than repayment of the DIP Facility); and (b) in any other event, the Claim Carve-Out shall be capped at $250,000. Together, the Professional Carve-Out and the Claim Carve-Out are referred to as the "***Carve-Outs***". |
| **Restrictions on Creditor Committee Use of Proceeds of DIP Financing** | No more than $25,000 from the proceeds of the DIP Financing may be used by professionals of any Creditors Committee to investigate the DIP Lender or the prepetition conduct of the Debtors. The professionals of any Creditors Committee may not use any proceeds of the DIP Financing to challenge the DIP Financing after the entry of the Final Order or to bring any cause of action against the DIP Lender. |
| **Adequate Protection Liens:** | As may be agreed to by the DIP Lender with prior written consent, any prepetition secured party ("***Prepetition Secured Party***") who (a) consents to the use of Cash Collateral; and (b) to be subordinated by the DIP Superpriority Claims pursuant to section 364(c)(1) of the Bankruptcy Code and a priming DIP Lien pursuant to section 364(d)(1) of the Bankruptcy Code will receive an Adequate Protection Lien ("***<u>Consenting Prepetition Secured Parties</u>***").<br><br>"***Adequate Protection Lien***" means a replacement lien (i) in |

| | |
|---|---|
| | and to Debtors' post-petition collateral of the same type as the Prepetition Secured Party's pre-petition collateral; (ii) of the same validity, extent, and priority as held by such Prepetition Secured Party prior to the Petition Date, and (iii) to the extent of any diminution in value of Prepetition Secured Party's pre-petition collateral on account of the granting of the DIP Liens, the subordination of the Prepetition Secured Party's pre-petition liens, the imposition of the automatic stay, or the Debtors' use, sale, depreciation, or disposition of the Prepetition Secured Party's pre-petition collateral and cash collateral during the pendency of the Chapter 11 Cases. For the avoidance of doubt, no Adequate Protection Lien shall extend to avoidance actions or commercial tort claims.<br><br>The Adequate Protection Liens, to the extent provided: (1) are and shall be in addition to the Prepetition Bridge Loan; (2) are and shall be properly perfected, valid, and enforceable liens without any further action by the Debtors or Prepetition Secured Party and without the execution, filing, or recordation of any financing statement, security agreement, control agreement, mortgage, deed of trust, title, notation, or other document or instrument; and (3) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Chapter 11 Cases. Notwithstanding the foregoing, the Debtors are authorized to and shall execute and deliver to the Prepetition Secured Party such financing statements, security agreements, control agreements, mortgages, deeds of trust, title notations, and other documents and instruments as the Prepetition Secured Party may request from time to time in respect of the Adequate Protection Liens.<br><br>For the avoidance of doubt, and as further detailed herein, the DIP Superpriority Claims pursuant to section 364(c)(1) of the Bankruptcy Code and priming DIP Liens pursuant to section 364(d)(1) of the Bankruptcy Code remain senior to all other superpriority and administrative claims and liens (including the Adequate Protection Liens), other than the Permitted Prior Senior Liens and subject to the *pari passu* treatment of the DIP AR Lien and Merchant AR Lien.<br><br>Any Prepetition Secured Party who does not consent to the use of cash collateral and subordination to the DIP Financing will not receive an Adequate Protection Lien. |
| **Credit Bidding**: | The Financing Orders shall authorize the DIP Lender to credit bid any amounts outstanding under the DIP Facility in any sale of the DIP Collateral, including under sections 363 and 1123 of |

| | |
|---|---|
| | the Bankruptcy Code. Any such credit bid may provide for the assignment of the right to purchase the acquired assets to a sub-agent or a newly-formed acquisition vehicle. |
| **Marshaling and Waiver of 506(c) Claims**: | Each of the Financing Orders shall provide, effective upon the entry of the Final Order, that in no event shall the DIP Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral, and for waivers of all 506(c) surcharge rights of the estates. |
| **Automatic Stay**: | Notwithstanding the provisions of section 362 of the Bankruptcy Code, and subject to the applicable provisions of the Financing Orders, as the case may be, upon the Maturity Date (whether by acceleration or otherwise), the DIP Lender shall be entitled to immediate indefeasible payment of all obligations under the DIP Facility and to enforce the remedies provided for under this Term Sheet, the Financing Orders and under applicable law (the "***Waiting Period Procedures***"):<br><br>1. The DIP Lender shall notify the Debtors in writing that the Maturity Date has occurred (such notice, a "***Maturity Date Notice***" and the date of any such notice, the "***Maturity Date Notice Date***"). A copy of any Maturity Date Notice shall be provided by email to the Debtors' counsel.<br><br>2. A waiting period shall commence upon delivery of the Maturity Date Notice and shall expire ten (10) business days after the Maturity Date Notice Date (the "***Waiting Period***"). During the Waiting Period, the Debtors shall be entitled to seek an emergency hearing before the Bankruptcy Court for the sole purpose of contesting the occurrence of the Maturity Date (including, for the avoidance of doubt, contesting the occurrence of any breach, default, or Event of Default alleged to underlie the occurrence of the Maturity Date).<br><br>3. During the Waiting Period, the Debtors may continue to use the DIP Collateral, including the Cash Collateral, so long as such DIP Collateral (including the Cash Collateral) is used solely to pay any expenses which are (a) necessary to preserve the Debtors' going concern value or (b) necessary to contest in good faith the occurrence of the Maturity Date or underlying Event of Default. |

| | |
|---|---|
| **Conditions Precedent:** | The obligations of the DIP Lender to make any DIP Loans shall be conditioned on the satisfaction or waiver of the following:<br><br>1. With respect to the availability of the Interim DIP Loans, the entry by the Bankruptcy Court of the First Interim Order and Subsequent Interim Orders in form and substance acceptable to the DIP Lender in its sole and absolute discretion.<br><br>2. With respect to the availability of the Remaining DIP Loans, the entry of the Final Order in form and substance acceptable to the DIP Lender in its sole and absolute discretion.<br><br>3. No trustee or examiner having expanded powers shall have been appointed with respect to the Debtors or their properties.<br><br>4. Other than a freeze of funds which the Debtors must get released within 14 days hereof , there shall exist no unstayed action, suit, investigation, litigation or proceeding pending or (to the knowledge of the Debtors) threatened in writing in any court or before any arbitrator or governmental instrumentality (other than the Chapter 11 Cases or the consequences that would normally result from the commencement and continuation of the Chapter 11 Cases) restraining, prohibiting or imposing material and adverse conditions upon this Term Sheet or the Financing Orders.<br><br>5. The representations and warranties of the Debtors under this Term Sheet shall be true and correct in all material respects (or in the case of representations and warranties with a "materiality" qualifier, true and correct in all respects).<br><br>6. To the extent applicable, all necessary governmental, Bankruptcy Court and third-party orders, approvals and consents in connection with the Interim DIP Loans shall have been obtained and remain in effect. and all applicable waiting periods shall have expired without any action being taken by any competent authority, which in the judgement of the DIP Lender restrains, prevents or imposes material and adverse conditions upon the Interim DIP Loans. |

| | |
|---|---|
| | 7. No default or Event of Default shall have occurred or be continuing under this Term Sheet.<br><br>8. The Debtor shall have delivered to the DIP Lender a draw request in the form agreed by the parties.<br><br>9. Any draw request shall not exceed the total amount of expenditures as set forth in the then-current Budget for the next four (4) weeks by more than ten percent (10%).<br><br>10. This Term Sheet and any related documentation required hereunder shall have been executed and delivered in form, scope and substance satisfactory to the DIP Lender, and the DIP Lender shall have a perfected security interest in the DIP Collateral.<br><br>11. There shall not exist any development occurring with respect to the Debtors or the DIP Collateral which could, in the opinion of the DIP Lender, materially and adversely affect the net operating income or value of the Debtors.<br><br>12. As required by their operating agreements, the Debtors shall authorize the transactions contemplated hereby and under the Financing Orders and (b) a good standing certificate of each Debtor, in each case, showing that such Debtor is in good standing. |
| **Prepayments / Commitment Reductions**: | All payments and prepayments of principal and interest hereunder shall be applied first to the accrued and unpaid interest and fees due hereunder and second to the unpaid principal balance of the DIP Loans then outstanding. |
| **Representations and Warranties**: | The Debtors hereby represent and warrant to the DIP Lender, and subject to such other representations and warranties as the DIP Lender may reasonability require, as follows:<br><br>1. Each of the Debtors is duly organized, validly existing, in good standing and qualified to do business in the jurisdiction of its organization.<br><br>2. The stipulations of the Debtors in each of the Financing Orders are true, accurate and correct in all material respects.<br><br>3. Subject to the Financing Orders, each of the Debtors has |

| | |
|---|---|
| | full power and authority to operate and conduct its business, to execute, deliver and perform this Term Sheet and associated documents and to incur obligations under this Term Sheet and the Financing Orders.<br><br>4. None of the DIP Obligations shall be subject to setoff or recoupment or any such rights under section 553 of the Bankruptcy Code or otherwise with respect to any claim the Debtors may have against the DIP Lender arising on or before the Petition Date.<br><br>5. Each of this Term Sheet and any related documentation required to be executed and delivered in connection herewith and the Financing Orders has been duly and validly executed and delivered by the applicable Debtors and constitutes legal, valid and binding obligations of the applicable Debtors enforceable in accordance with the terms thereof, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally and by general principles of equity.<br><br>6. This Term Sheet and the other documents executed in connection herewith do not, nor does the performance and observance by the Debtors of any of the matters herein or therein provided for, (a) contravene or constitute a default under any provision of law or judgment, injunction, order or decree binding upon the Debtors or any provision of the organizational documents of the Debtors,.<br><br>7. The Debtors own each item of the DIP Collateral. The Debtors have disclosed all liens of any nature whatsoever on any property of the Debtors other than liens permitted hereunder or under the Financing Orders. The Debtors are not party to any contract, agreement, lease or instrument the performance of which, either unconditionally or upon the happening of an event, will result in or require the creation of a lien on any property of the Debtors (other than liens permitted hereunder or under the Financing Orders) or otherwise result in a violation of this Term Sheet or the Financing Orders. As used in this Term Sheet, the phrase "***Disclosed Liens***" means those liens and encumbrances identified on Schedule I hereto. |

| | |
|---|---|
| | 8. There are no conditions precedent to the effectiveness of this Term Sheet that have not been satisfied or waived.<br><br>9. No Debtor is an "investment company" or an "affiliated person" of, or "promoter" or "principal underwriter" for, an "investment company", as such terms are defined in the Investment Company Act of 1940, as amended.<br><br>10. No Debtor is engaged in the business of extending credit for the purpose of purchasing or carrying margin stock and no proceeds of the DIP Loans will be used to purchase or carry any margin stock or to extend credit to others for the purpose of purchasing or carrying any margin stock. No Debtor will take any action which might cause this Term Sheet, the Financing Orders or any document or instrument delivered pursuant hereto or thereto to violate any regulation of the Board of Governors of the Federal Reserve System of the United States.<br><br>11. As of the date hereof, no Debtor has any material liabilities with respect to any (a) Title IV plans, or (b) multiemployer plans. On the date hereof, no ERISA Event has occurred in connection with which material obligations or liabilities of the Debtors are outstanding.<br><br>12. None of the representations or warranties made by any Debtor or any of its subsidiaries in this Term Sheet or any documentation delivered in connection herewith as of the date such representations and warranties are made or deemed made, and none of the statements contained in each exhibit, report, statement or certificate furnished by or on behalf of any Debtor or any of its subsidiaries in connection with this Term Sheet or any such documentation (other than any statement which constitutes projections, forward looking statements, budgets, estimates or general market data), contains any untrue statement of a material fact or omits any material fact required to be stated therein or necessary to make the statements made therein, in light of the circumstances under which they are made, not misleading as of the time when made or delivered (it being recognized by the DIP Lender that any projections and forecasts provided by the Debtors are based on good |

| | |
|---|---|
| | faith estimates and assumptions believed by the Debtors to be reasonable as of the date of the applicable projections or assumptions and that actual results during the period or periods covered by any such projections and forecasts may differ from projected or forecasted results).<br><br>13. Set forth on Schedule II hereto are (a) the jurisdiction of organization, (b) the chief executive office location and (c) the exact legal name of each Debtor. |
| **Affirmative Covenants**: | So long as any DIP Obligations remain outstanding, and subject to other such covenants as the DIP Lender may reasonability require, the Debtors will:<br><br>1. use the advances made under the DIP Facility and the Cash Collateral consistent with the Budget and this Term Sheet, and not use such funds to commence any action against the DIP Lender or its affiliates, employees, directors, officers or principals;<br><br>2. permit the DIP Lender and its representatives and designees to visit and inspect the properties, books and records of the Debtors upon reasonable notice; provided that no disclosure of information by the Debtors to the DIP Lender in connection with any such inspection shall be required to the extent that such disclosure would result in the breach of any confidentiality obligations to which the Debtors are subject or if such disclosure would compromise attorney-client privilege or require the disclosure of attorney work product;<br><br>3. subject to the Budget, pay all material taxes, assessments, contributions, other governmental charges and other material obligations imposed upon any Debtor or any of its properties or assets as they become due and payable, to the extent payment and/or enforcement thereof is not stayed as a result of the Chapter 11 Cases;<br><br>4. good working order that presently exists on all material properties used in the business of the Debtors (other than ordinary wear and tear, casualty and condemnation and to the extent not causing a material adverse effect), as and to the extent in good working order as of the Petition Date; |

| | |
|---|---|
| | 5. maintain insurance with respect to the business and property of the Debtors adequate to cover risks of such types and in such amounts as are customary for companies of similar size engaged in similar lines of business;<br><br>6. comply with the requirements of all applicable laws;<br><br>7. promptly upon request execute and deliver such documents and do such other acts as the DIP Lender may reasonably request in connection with the DIP Facility, and in accordance with this Term Sheet and the Financing Orders (including but not limited to execution of any additional security documents that may be reasonably requested);<br><br>8. maintain, preserve and renew its corporate existence and all material licenses, authorizations and permits necessary to conduct its business;<br><br>9. maintain proper books of record and account which present fairly in all material respects its financial condition and results of operations;<br><br>10. deliver, or cause to be delivered, such agreements, documents and instruments in furtherance of this Term Sheet and the Financing Orders as the DIP Lender may from time to time reasonably request, without cost or expense to the DIP Lender (a) to carry out more effectively the purposes of this Term Sheet and the Financing Orders, (b) to subject to the liens created hereby any of the DIP Collateral, (c) to perfect and maintain the validity, effectiveness and priority of the liens created hereby and (d) to better assure, convey, grant, assign, transfer, preserve, protect and confirm to the DIP Lender the rights granted or now or hereafter intended to be granted to the DIP Lender under this Term Sheet and the Financing Orders; and<br><br>11. maintain the security interest created by this Term Sheet as a perfected security interest having at least the priority required hereby and defend such security interest against all other claims and demands.<br><br>12. consult with the DIP Lender on any filings with the bankruptcy court in connection with the Chapter 11 |

| | |
|---|---|
| | Cases. |
| **Reporting Covenants:** | In addition to the cash flow forecasts to be provided as described under the "Budget" section of this Term Sheet:<br><br>1. within 45 days after the end of each quarterly accounting period of the Debtors, unaudited consolidated profit and loss statements of the Debtors and their consolidated subsidiaries for such quarterly period (as well as unaudited consolidated profit and loss statements of the Debtors and their consolidated subsidiaries for the period from the beginning of the fiscal year to the end of such quarter);<br><br>2. within 30 days after the end of each month, either (a) the Monthly Operating Reports required by the US Trustee, or (b) unaudited consolidated profit and loss statements of the Debtors and their consolidated subsidiaries for such monthly period (as well as unaudited consolidated profit and loss statements of the Debtors and their subsidiaries for the period from the beginning of the fiscal year to the end of such month);<br><br>3. promptly upon receipt, provide the DIP Lender with copies of any detailed audit reports, management letters or recommendations submitted to the Debtors or any subsidiary thereof by auditors in connection with the accounts or books of the Debtors or any subsidiary thereof or any audit of the Debtors or any subsidiary thereof; and<br><br>4. promptly notify the DIP Lender of each of the following (and in no event later than five (5) business days after an officer of the Debtors becoming aware thereof):<br>(a) the commencement of, or any material development in, any litigation or proceeding affecting the Debtors;<br>(b) receipt of written notice of any governmental investigation or any litigation or proceeding commenced or threatened in writing against the Debtors or any of their subsidiaries that (i) seeks damages in excess of $15,000, (ii) seeks injunctive relief, (iii) alleges criminal conduct by the Debtors or any of their subsidiaries,<br>(v) alleges the violation, in any material respect, of any law regarding, or seeks remedies in connection with any environmental laws, or (vi) contests any tax, fee, |

| | |
|---|---|
| | assessment or other governmental charge in excess of $30,000; or<br>(d) the occurrence of any Event of Default or event which with the giving of notice or lapse of time or both would be an Event of Default.<br><br>5. The Debtors' senior management shall conduct a telephonic conference call at least once a week, or as reasonably requested by the DIP Lender, to discuss the Budget, any variance or related reports delivered in connection with the Budget, and the financial condition, performance, and business affairs of the Debtors. |
| **Negative Covenants**: | So long as any amount remains due and outstanding under this Term Sheet or the Financing Orders, and subject to such other covenants as the DIP Lender shall reasonably require, the Debtors will not, nor shall they permit any of their Subsidiaries or affiliates to, do any of the following:<br><br>1. incur any indebtedness (other than the borrowings under the DIP Facility and obligations permitted to be incurred consistent with the Budget or relevant Court orders, any other indebtedness permitted (with prior written consent) to be incurred by the DIP Lender and the Bankruptcy Court, and any unsecured obligations incurred in the ordinary course of business by the Debtors);<br><br>2. incur any liens (other than Replacement Liens securing indebtedness required or permitted by this Term Sheet and the Financing Orders to existing lenders to be secured, other liens permitted (with prior written consent) by the DIP Lender, and customary nonconsensual liens);<br><br>4. engage in any business other than the business engaged in by the Debtors on the Petition Date and other business activities which are reasonably related or ancillary to the foregoing or otherwise permitted (with prior written consent) by the DIP Lender;<br><br>5. sell or transfer any assets outside the ordinary course of business, unless such sale or transfer results in the indefeasible payment in full in cash of the DIP Obligations (other than dispositions permitted (with prior written consent) by the DIP Lender); |

| | |
|---|---|
| | 6. directly or indirectly, by operation of law or otherwise, acquire any material assets or equity interests of another person, merge, consolidate or dissolve (other than acquisitions of assets contemplated by and consistent with the Budget or permitted (with prior written consent) by the DIP Lender);<br><br>7. terminate or make any modification to the capital structure or any organizational documents of any Debtor that would be adverse to the DIP Lender in any respect except as provided by a Plan approved by the DIP Lender;<br><br>8. use proceeds of the Carve Out and the DIP Collateral (including the Cash Collateral) except as set forth in this Term Sheet and the Financing Orders;<br><br>9. amend any of the Financing Orders or any Bankruptcy Court order relating to cash management or the Budget without the prior written consent of the DIP Lender in its sole and absolute discretion absent Court Order ;<br><br>10. agree to entry of any order precluding or modifying the DIP Lender's rights to credit bid up to the full amount of the outstanding DIP Obligations for the Debtors' assets;<br><br>11. other than the Carve Out and as contemplated herein or by the Financing Orders, consent to the granting of adequate protection payments or liens, superpriority administrative expense claims or liens having priority senior to or pari passu with those granted to the DIP Lender, except as otherwise expressly permitted by this Term Sheet or the Financing Orders without the written approval of the DIP lender;<br><br>12. make any dividends or other distributions on account of the capital stock of the Debtors or their subsidiaries (other than ordinary course tax distributions and corporate overhead expenses in accordance with the Budget and other dividends or distributions permitted (with prior written consent) by the DIP Lender); and<br><br>13. except upon 30 days' prior written notice to the DIP |

| | |
|---|---|
| | Lender and delivery to the DIP Lender of all additional financing statements and other documents reasonably requested by the DIP Lender as to the validity, perfection and priority of the security interests provided for herein, with respect to any Debtor: (a) change the location of its chief executive office from that specified on the signature pages hereto or in any subsequent notice delivered pursuant to this provision; or (b) change its name, jurisdiction of incorporation or organization, identity, federal employer identification number, organizational identification number or corporate structure. |
| **Events of Default:** | The term "Event of Default" as used herein means the occurrence or happening, at any time and from time to time, of any of the following and its continuation for 10 business days or more after the DIP Lender has given the Debtors written notice of such event with an opportunity to cure:<br><br>1. The failure by the Debtors to perform or comply with any term, condition, covenant or obligation (including a payment obligation) contained in this Term Sheet or any of the Financing Orders.<br><br>2. Any representation or warranty made in this Term Sheet or in any written document, statement, report, financial statement or certificate made or delivered to the DIP Lender by any of the Debtors is untrue or incorrect in any material respect as of the date when made or deemed made only if material to the DIP Lender in its sole discretion.<br><br>3. The cessation of the DIP Facility or any provision of this Term Sheet being in full force and effect or the DIP Facility or any provision of this Term Sheet being declared by the Bankruptcy Court to be null and void or the validity or enforceability of any provision of the DIP Facility or this Term Sheet being contested by any Debtor or any Debtor denying in writing that it has any further liability or obligation under any provision of the DIP Facility or the DIP Term Sheet or the DIP Lender ceasing to have the benefit of the liens granted by this Term Sheet.<br><br>4. Except as permitted by this Term Sheet or the Financing Orders, the entry of any order of the Bankruptcy Court |

| | |
|---|---|
| | granting to any third party a claim or lien pari passu with or senior to that granted to the DIP Lender hereunder.<br><br>5. Except as permitted by this Term Sheet or the Financing Order, until the DIP Obligations are indefeasibly repaid in full (other than contingent obligations for which no claim has been made) and all commitments under the DIP Facility are terminated, the Debtors shall make any payment of prepetition principal or interest or otherwise on account of any prepetition indebtedness for borrowed money or payables other than the DIP Obligations under the DIP Facility or other than as is consistent with the Budget or the Financing Orders.<br><br>6. The entry of an order converting the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code, or the Debtors filing a motion or not opposing a motion seeking such relief.<br><br>7. The entry of an order dismissing the Debtors' Chapter 11 Cases, or the Debtors filing a motion or not opposing a motion seeking such relief without the prior written consent of the DIP Lender.<br><br>8. The entry of an order in the Chapter 11 Cases appointing an examiner having expanded powers or a trustee to operate all or any material part of the Debtors' business.<br><br>9. The entry of an order in the Chapter 11 Cases granting relief from the automatic stay so as to allow a third party or third parties to proceed against any of the DIP Collateral only if material to the DIP Lender in its sole discretion.<br><br>10. The entry of an order in the Chapter 11 Cases charging any of the DIP Collateral under section 506(c) of the Bankruptcy Code against the DIP Lender or the commencement of other actions by any Debtor or affiliate thereof that challenges the rights and remedies of the DIP Lender under the DIP Facility in any of the Chapter 11 Cases or in a manner inconsistent with this Term Sheet or the Financing Orders.<br><br>11. Except as permitted by this Term Sheet or the Financing Order, without the prior written consent of the DIP Lender and other than in respect of the DIP Facility and |

| | |
|---|---|
| | the Carve Out or as expressly permitted in this Term Sheet or the Financing Orders, the bringing of any motion or taking of any action, seeking entry of an order, or the entry of an order by the Bankruptcy Court, in any of the Chapter 11 Cases (a) granting superpriority administrative expense status to any claim pari passu with or senior to the claims of the DIP Lender, (b) permitting the Debtors to obtain financing under section 364 of the Bankruptcy Code other than the continuation of existing agreements, (c) permitting the Debtors to grant security interests or liens under section 364 of the Bankruptcy Code, or (d) authorizing the Debtors to take other actions adverse to DIP Lender (in its role as a DIP Lender) or its rights and remedies under this Term Sheet or the Financing Orders or its interests in the DIP Collateral under section 364 of the Bankruptcy Code.<br><br>12. There shall arise any superpriority claim in the Chapter 11 Cases which is pari passu with or senior to the priority of the claims of the DIP Lender, except with respect to the Carve Out and as set forth in this Term Sheet or the Financing Orders.<br><br>13. The Debtors or any person claiming by or through any of the Debtors shall obtain court authorization to commence, or shall commence, join in, assist, fail to object to after the DIP Lender so request, or otherwise participate as an adverse party in any suit or other proceeding against the DIP Lender (in its role as a DIP Lender) regarding the DIP Facility.<br><br>14. The entry of any order terminating any Debtor's exclusive right to file a plan of reorganization or the expiration of any Debtor's exclusive right to file a Chapter 11 plan of reorganization.<br><br>15. Any Plan shall be filed by the Debtors or be confirmed in any of the Chapter 11 Cases which has not been approved in advance by the DIP Lender in its reasonable discretion .<br><br>16. The Bankruptcy Court shall enter an order authorizing the sale of all or substantially all of the assets of the Debtors unless such order contemplates indefeasible repayment in full in cash of the DIP Facility upon consummation of the sale process unless the DIP Lender |

| | |
|---|---|
| | consents in writing in its sole and absolute discretion.<br><br>17. The entry of an order in the Chapter 11 Cases avoiding or permitting avoidance of any portion of the payments made on account of the obligations under the DIP Facility, this Term Sheet, the Financing Orders or any related documents or any other indebtedness provided to the Debtors by the DIP Lender, or the taking of any action by any Debtor to challenge or support a challenge of any such payments.<br><br>18. This Term Sheet or the Financing Orders and the terms thereof shall cease to create a valid and perfected security interest and lien on the DIP Collateral (other than an immaterial portion thereof) to the extent required hereby.<br><br>19. The Final Order does not include a waiver, in form and substance satisfactory to the DIP Lender in its sole and absolute discretion, of (a) the right to surcharge the DIP Collateral under section 506(c) of the Bankruptcy Code; and (b) the doctrine of marshaling.<br><br>20. The filing or support of any pleading by any Debtor seeking, or otherwise consenting to, any relief the granting or prosecution of which could reasonably be expected to result in the occurrence of an Event of Default, including the support or acceptance of any bid in a 363 sale that does not provide for the indefeasible repayment in full in cash of the DIP Facility upon consummation of the sale unless the DIP Lender consents in advance in writing.<br><br>21. Change of ownership or control of the Debtors other than through a Plan approved by the DIP Lender.<br><br>22. Other events of default that are usual or customary for loan facilities of this nature contained in the Loan Agreement. |
| **Remedies**: | Notwithstanding the provisions of section 362 of the Bankruptcy Code, but subject to any applicable provisions of the Financing Orders, if any Event of Default occurs and is continuing, the DIP Lender, in its sole discretion, may immediately take any or all of the following actions, subject to the Debtors' right to cure, with the DIP Lender providing 10 |

| | |
|---|---|
| | business days written notice, during which time any party can seek expedited judicial review on no less than three days' notice:<br><br>1. declare the commitment of the DIP Lender to make DIP Loans and consent to use of Cash Collateral to be terminated, whereupon such commitment and consent shall be terminated;<br><br>2. declare the unpaid amount of the DIP Obligations, all interest accrued and unpaid thereon, and all other amounts owing or payable; or<br><br>3. take any other action or exercise any other right or remedy (including, without limitation, with respect to credit bidding and the liens in favor of the DIP Lender) permitted under this Term Sheet or the Financing Orders, or by applicable law (including, without limitation, the rights of a secured creditor under the Uniform Commercial Code). |
| **Professional Fees and Expenses:** | All reasonable and documented professional fees and out-of-pocket expenses incurred by the DIP Lender in connection with the establishment of the DIP Facility, including, without limitation, the negotiation, preparation, execution, delivery, performance and administration of this Term Sheet and the related documentation (including, but not limited to, the reasonable fees and expenses of the DIP Lender's counsel), and including expenses incurred in connection with defending the validity and enforceability of the DIP Obligations or any of the liens or adequate protection securing the same, shall be DIP Obligations. |
| **Amendments and Waivers; Assignments:** | Except as otherwise provided herein or therein, the provisions of this Term Sheet and the Financing Orders may not be amended or waived without the written consent of the DIP Lender obtained on reasonable notice to the DIP Lender. This Term Sheet shall be binding upon each party hereto and its respective successors and permitted assigns and shall inure to the benefit of the Debtors and DIP Lender and their successors and permitted assigns. No other person or entity shall be a direct or indirect legal beneficiary of or have any direct or indirect cause of action or claim in connection with, this Term Sheet or any related documentation. The rights and obligations of the Debtors hereunder may not be assigned by the Debtors without the prior written consent of the DIP Lender, which consent may |

| | |
|---|---|
| | be granted or withheld in the DIP Lender's sole discretion.<br><br>The rights and remedies of the DIP Lender expressly set forth herein and in the related documentation are cumulative and in addition to, and not exclusive of, all other rights and remedies available at law, in equity or otherwise. No failure or delay on the part of the DIP Lender in exercising any right, power or privilege shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, power or privilege preclude any other or further exercise thereof or the exercise of any other right, power or privilege or be construed to be a waiver of any default or Event of Default. |
| **Indemnification:** | The Debtors agree to indemnify the DIP Lender for all reasonable and documented professional fees and out-of- pocket expenses incurred to counsel, financial advisors and other professionals retained by the DIP Lender in connection with the establishment of the DIP Facility, including, without limitation, the negotiation, preparation, execution, delivery, performance and administration of this Term Sheet and the related documentation (including, but not limited to, the fees and expenses of the DIP Lender's counsel), and including expenses incurred in connection with or relating to any investigation, litigation or proceeding or the preparation of any defense in connection therewith, including defending the validity and enforceability of the DIP Obligations or any of the liens or adequate protection securing the same, shall be promptly paid by the Debtors on no less than a monthly basis.<br><br>The DIP Lender (and its affiliates and respective officers, directors, employees, advisors and agents) (each such person, an "Indemnitee") will have no liability for, and will be indemnified and held harmless against, any losses, claims, damages, liabilities or expenses incurred in respect of the financing contemplated hereby or the use or the proposed use of proceeds thereof, except to the extent they are found by a final, non-appealable judgment of a court of competent jurisdiction to arise from the gross negligence or willful misconduct of the relevant indemnified person.<br><br>This provision shall survive repayment of the DIP Obligations (and the termination of all commitments hereunder), any foreclosure under, or any modification, release or discharge of, or termination of, this Term Sheet. |
| **Release:** | The Final Order shall provide for a release by the Debtors of the |

| | |
|---|---|
| | DIP Lender and each such entities' current and former affiliates, and such entities' and their current and former affiliates' current and former directors, managers, officers, principals, members, employees, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, assigns, subsidiaries, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives and other professionals with respect to any and all claims or causes of action the Debtors may have against such parties related to these Chapter 11 Cases, excluding any claims based upon or related to the CSV Purchased Loans.<br><br>"***CSV Purchased Loans***" means the pre-petition loans made by Irazuk LLC and Feenix Venture Partners purchased by CSV Capital Partners LLC. |
| **Governing Law**: | Delaware, without regard to conflicts of laws principles. |
| **Miscellaneous**: | All payments to be made to the DIP Lender hereunder shall be made in the lawful money of the United States of America in immediately available funds.<br><br>Each party hereto hereby consents and agrees that the state and federal courts located in the State of Delaware shall have jurisdiction to hear and determine any claims or disputes between the parties hereto pertaining to this Term Sheet or any related documentation or to any matter arising out of or relating to this Term Sheet or any related documentation; provided that, during the Chapter 11 Cases the Bankruptcy Court shall have exclusive jurisdiction to hear and determine any claims or disputes between the parties hereto pertaining to this Term Sheet or any related documentation or to any matter arising out of or relating to this Term Sheet or any related documentation; provided, further that nothing in this Term Sheet shall be deemed to operate to preclude the DIP Lender from bringing suit or taking other legal action in any other jurisdiction to realize on any security for the DIP Obligations, or to enforce a judgment or other court order in favor of the DIP Lender. The Debtors hereby expressly submit and consent in advance to such jurisdiction in any action or suit commenced in any such court, and the Debtors hereby waive any objection that the Debtors may have based upon lack of personal jurisdiction, improper venue or *forum non conveniens* and hereby consent to the granting of such legal or equitable relief as is deemed appropriate by such court. |

| | |
|---|---|
| | Each party hereto hereby waives, to the fullest extent permitted by applicable law, any right to jury trial with respect to any claim, demand, action or cause of action arising under this Term Sheet and the related documentation or in any way connected with or related to the dealings in respect hereof or thereof, in each case whether now existing or hereafter arising, and whether in contract, tort, equity or otherwise.<br><br>In case any provision in or obligation hereunder or in any related document shall be invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions or obligations, or of such provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby, the remaining language shall be construed so as to honor the original intent as much as possible.<br><br>The words "include," "includes" and "including" shall be deemed to be followed by the phrase "without limitation," whether or not so expressly stated in each such instance and the term "or" has, except where otherwise indicated, the inclusive meaning represented by the phrase "and/or." The word "will" shall be construed to have the same meaning and effect as the word "shall." Unless the context requires otherwise, (a) any definition of or reference to any agreement, instrument or other document herein shall be construed as referring to such agreement, instrument or other document as from time to time amended, supplemented or otherwise modified (subject to any restrictions on such amendments, supplements or modifications set forth herein), and any reference to any statute or regulation shall be construed as including all statutory and regulatory provisions amending, replacing, supplementing or interpreting such statute or regulation, (b) any reference herein to any person or entity shall be construed to include such person's or such entity's successors and permitted assigns, and (c) the words "herein," "hereof" and "hereunder," and words of similar import, shall be construed to refer to this Term Sheet in its entirety and not to any particular provision hereof.<br><br>This Term Sheet and related documentation are the result of negotiations among and have been reviewed by counsel to each party hereto and thereto and are the products of all parties and has entered into good faith, arms' length negotiations. Accordingly, such documentation shall not be construed against the DIP Lender merely because of the DIP Lender's involvement in their preparation. |

| | |
|---|---|
| | This Term Sheet may be executed in any number of counterparts and by the different parties hereto on separate counterparts and each such counterpart shall be deemed to be an original, but all such counterparts shall together constitute but one and the same agreement. Receipt by telecopy or electronic transmission of any executed signature page to this Term Sheet or any related documentation shall constitute effective delivery of such signature page. This Term Sheet, together with the Financing Orders and related documentation, embodies the entire agreement and understanding among the parties hereto and supersedes all prior or contemporaneous agreements and understandings of such parties, verbal or written, relating to the subject matter hereof and thereof. |