**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>DEQSER LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-10687 (CTG)<br>(Jointly Administered)<br><br>**Hearing Date: October 1, 2026 at 3:00 pm (ET)**<br>**Objection Deadline: September 16, 2026 at 4:00 pm (ET)** |

**DEBTORS' APPLICATION PURSUANT TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 2014(a), AND LOCAL RULES 2014-1 AND 2016-2(h) TO (I) EMPLOY AND RETAIN SC&H GROUP, INC. AS INVESTMENT BANKER FOR THE DEBTORS *NUNC PRO TUNC* TO AUGUST 25, 2026 AND (II) WAIVE CERTAIN INFORMATIONAL REQUIREMENTS UNDER LOCAL RULES**

The above-captioned debtors and debtors-in-possession (the "Debtors" or the "Company") hereby submit this application (the "Application") for the entry of an order substantially in the form submitted herewith pursuant to Sections 327 and 328 of title 11 of the United States Code, (the "Bankruptcy Code"), Bankruptcy Rule 2014(a) and Rules 2014-1 and 2016-2 (h) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and in accordance with the terms and conditions of that certain engagement letter dated as of August 27, 2026 (the "Engagement Letter"), attached hereto as Exhibit A, appointing SC&H Group, Inc. ("SC&H") in the Debtors' chapter 11 cases, *nunc pro tunc* to August 25, 2026. In support of this Application, the Debtors rely upon the *Declaration of Kenneth W. Mann* (the "Investment Banker Declaration"), which is attached hereto as Exhibit B and incorporated by reference herein, and the *Declaration of Sang Cho in Support of Chapter 11*

[1] The Debtors in these Chapter 11 cases, along with the last four (4) digits of their federal tax identification numbers, are: (i) Deqser LLC (8269) and (ii) KNY 26671 LLC (9132) (collectively, the "Debtors"). The Debtors' mailing address is: c/o Cooperative Laundry, 1 Eastern Road, Kearny, NJ 0703

*Petitions and First Day Motions,* filed on April 17, 2025, (the "First Day Declaration"). In further support of this Application, the Debtors respectfully submit as follows:

**Jurisdiction**

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue of the case and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2. The predicates for the relief requested herein are 11 U.S.C. §§ 327(a) and 328(a), section 105(a) of the Bankruptcy Code, Bankruptcy Rule 2014(a) and Local Rules 2014-1 and 2016-2(h).

**Background**

3. On April 10, 2025 (the "Petition Date"), the Debtors commenced their Chapter 11 Cases by filing two voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On April 30, 2025, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee in the Chapter 11 Cases and filed the *Notice of Appointment of Committee of Unsecured Creditors* [D.I. 55].[2]

4. The Debtors continues to manage and operate their business as a debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been requested in the Chapter 11 Cases.

**Relief Requested**

5. By this Application, the Debtors request entry of the Proposed Order, substantially in the form attached hereto as Exhibit C (i) authorizing the Debtors to retain and employ SC&H as investment banker for the Debtors in accordance with the terms and conditions of the

[2] Capitalized terms not otherwise defined herein have the meanings given to them in the First Day Declaration.

Engagement Letter, including the proposed compensation arrangements and the indemnification provisions set forth in the Engagement Letter, as modified pursuant to the Proposed Order, under section 328(a) of the Bankruptcy Code, effective *nunc pro tunc* to August 25, 2026, and (ii) granting related relief.

**SC&H's Qualifications**

6. SC&H is an investment banking firm with principal offices located at 226 Schilling Circle, Suite 300, Hunt Valley Maryland 21301 and 11000 Broken Land Pkwy, Suite 500, Columbia, MD 21044.

*7.* SC&H provides a broad range of financial advisory and investment banking services to its clients including: (a) general corporate finance; (b) mergers, acquisitions, and divestitures; (c) corporate restructuring; (d) special committee assignments; and (e) capital raising. SC&H and its senior professionals have extensive experience in the reorganization and restructuring of distressed companies, both out of court and in chapter 11 cases. SC&H's business reorganization professionals have served as financial advisors and/or investment bankers in hundreds of cases, including: *See*, *e.g.*, *In re SBG Burger Opco, LLC*, Case No. 6:23-bk-04797-TPG (Bankr. M.D. Fla. Feb. 26, 2024); *In re C&D Fruit and Vegetable Co., Inc.*, Case No. 8:18-bk-997-CED (Bankr. M.D. Fla. Mar. 21, 2018); *In re Sunland Medical Foundation*, Case No. 23-80000 (MVL) (Bankr. N.D. Tex. Oct. 18, 2023); *In re Golden Key Group, LLC*, Case No. 23-10414 (Bankr. D. Md. May 5, 2023); *In re Diamond Scaffold Services, LLC*, Case No. 22-11208 (Bankr. S.D. Ala. Oct. 28, 2022); *In re E-Box, LLC*, Case No. 22-23526 (Bankr. W.D. Tenn. Aug. 23, 2022); *In re Astech Engineered Products, Inc.*, Case No. 22-10635 (Bankr. D. Del. Jul. 15, 2022); *In re CCX, Inc.*, Case No. 22-10252 (Bankr. D. Del. Mar. 27, 2022); and *In re Glen Hope Harbor, Inc.*, Case No. 22-10146 (Bankr. W.D. Tex. Mar. 7, 2022).

8. The Debtors have selected SC&H as its investment banker based upon, among other things: (a) the Debtors' need to retain a skilled investment banking firm to provide advice with respect to the Debtors' complex restructuring activities; and (b) SC&H's extensive experience and excellent reputation in providing investment banking services in complex chapter 11 cases such as these. In light of the size and complexity of these Chapter 11 Cases, SC&H's resources, capabilities, and experience are crucial to the Debtors' successful restructuring. An experienced investment banker, such as SC&H fulfills a critical need that complements the services provided by the Debtors' other restructuring professionals.

9. Accordingly, the Debtors believe SC&H is well qualified to represent them in a cost-effective, efficient, and timely manner, and the Debtors submit that the employment and retention of SC&H is in the best interest of the Debtors, their creditors, and all parties in interest.

**Services To Be Provided**

10. The terms and conditions of the Engagement Letter were the result of significant discussions and negotiations between SC&H and the Debtors, and they reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement. The employment of SC&H is also necessary to enable the Debtors to execute its duties as debtor in possession and to effect its reorganization efforts.

11. Subject to further order of the Court, and consistent with the Engagement Letter, the Debtors propose to retain SC&H to provide the following services, among others, in connection with the Debtor's restructuring efforts:

(i) Familiarize itself with the business, operations, assets, financial condition and prospects of the Company.

(ii) Advise the Company in analyzing its strategic alternatives and structuring and effecting the financial aspects of any Transaction.

(iii) Design the appropriate process to effect and initiate any Transaction, including any analysis of the various alternatives and, if appropriate, the potential Counterparties to be contacted for the Transaction.

(iv) Prepare an information memorandum or other materials about the Company and its Business for consideration by potential Counterparties.

(v) Contact potential Counterparties in connection with a Transaction and require potential Counterparties to execute Confidentiality Agreements in favor of the Company, unless the Company instructs SC&H otherwise.

(vi) Facilitate the development of a Virtual Data Room ("VDR") with appropriate diligence materials for review by potential Counterparties.

(vii) Circulate any information memorandum and marketing materials, provide access to the VDR or send materials to potential Counterparties, after completing confidentiality documents.

(viii) Coordinate diligence with potential Counterparties and negotiate with and solicit offers from potential Counterparties. Advise the Company in structuring a Transaction and make recommendations as to whether a particular Transaction offer should be accepted.

(ix) In connection with a bankruptcy proceeding governing a potential Transaction, provide any relevant testimony and if necessary, provide assistance with the submission of bid procedures to the Court and conduct any auction that may result therefrom.

(x) Conduct a sale process under section 363, or any other applicable section of the Bankruptcy Code, including, if requested by the Company, negotiate a "stalking horse" bid.

(xi) If requested by the Company, negotiate with various stakeholders of the Company, including but not limited to, secured and unsecured creditors and equity shareholders, in regard to a Transaction.

(xii) Coordinate with the Company's legal counsel regarding matters related to the Transaction and the closing thereof ("Closing").

(xiii) Provide such other advisory services as are customarily provided by investment bankers in connection with the analysis, negotiation, and closing of a potential Transaction pursuant to Section 363 of the Bankruptcy Code, including, without limitation, conducting an auction to determine the "highest and best" proposal.

12. If the Debtors request that SC&H perform services not specifically contemplated by the Engagement Letter, SC&H and the Debtors will agree, in writing, on the terms for such services and request the Court's approval thereof.

**Professional's Compensation**

13. SC&H's decision to advise and assist the Debtors in connection with these Chapter 11 Cases is subject to its ability to be retained in accordance with the terms of the Engagement Letter pursuant to section 328(a), and not section 330, of the Bankruptcy Code.

14. As set forth more fully in the Engagement Letter, and subject thereto, SC&H will be compensated as follows (the "Fee Structure"):

I. Monthly Fee – beginning on the first day of the term and continuing on the same day of each successive month thereafter during the term of this Agreement, the Company shall be obligated to pay SC&H, without notice or invoice, a nonrefundable cash fee of $25,000, payable in advance, on the same day of such 30-day period (each, a "Monthly Fee").

II. Transaction Fee –

i. In the event the Company completes a Sale, a fee (the "Sale Fee") to be paid upon the Closing of any Sale once approved by the Bankruptcy Court equal to the sum of:

For that portion of Total Consideration

a. Up to and including $18.0 million - 3.0%, plus
b. Greater than $18.0 million - 4.0%
c. Provided, however, the Sale Fee shall never be less than $500,000 (the "Minimum Transaction Fee") other than as set forth in Paragraph 14(II)(d) below.
d. In the event the DIP lender's initial bid designated as a stalking horse is selected as the highest and best offer and subsequently closes (and is not the result of overbidding a third-party bid), the Sale Fee will be reduced to $325,000.

ii. In the event the Company completes a Financing, (other than (x) any Financing included in the calculation of Total Consideration for a Sale above; or (y) the debtor-in-possession financing facility, up to the amounts available under such facility on the date of this Agreement, a fee (the "Financing Fee"), to be paid upon the Closing of any Financing once such fee is approved by the Bankruptcy Court, equal to the greater of the Minimum Transaction Fee or the

sum of:

a. 2.0% of the gross amount of funded or committed indebtedness that is secured by a first lien, plus
b. 2.5% of the gross amount of funded or committed indebtedness that (1) is secured by a second or more junior lien, (2) is unsecured and/or (3) is subordinated; plus
c. 3.5% of the gross amount of any funded or committed preferred or common equity, convertible or otherwise equity-linked securities or obligations.

15. In addition to any fees payable to SC&H, the Debtors will reimburse SC&H for all of its actual, reasonable and documented out-of-pocket expenses as they are incurred in entering into and performing services under the Engagement Letter, which shall not exceed twenty thousand dollars ($20,000).

16. SC&H intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 Cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, and any other applicable procedures and orders of the Court, including any order approving this Application (to the extent compliance is not waived) and consistent with the proposed compensation set forth in the Engagement Letter. The Debtors request that it be authorized and empowered to take all actions necessary to effectuate the relief granted pursuant to this Order, including the filing of fee application(s) on behalf of SC&H.

17. SC&H will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of its services in these Chapter 11 Cases. However, because: (a) it is not the general practice of investment banking firms such as SC&H to keep detailed time records similar to those customarily kept by attorneys; (b) SC&H does not ordinarily keep time records on a "project category" basis; and (c) SC&H's compensation is based on a fixed

Monthly Fee and fixed transaction fees, the Debtors respectfully request that SC&H restructuring professionals only be required to maintain records (in summary format) of the services rendered for the Debtors, including summary descriptions of those services, the approximate time expended in providing those services (in hourly increments), and the identity of the restructuring professionals who provided those services. SC&H will present such records to the Court in its fee application(s).

18. Moreover, the Debtors respectfully request that SC&H's restructuring professionals not be required to keep time records on a "project category" basis, that its non-restructuring professionals and personnel in administrative departments not be required to maintain any time records, and that it not be required to provide or conform to any schedule of hourly rates. To the extent that SC&H would otherwise be required to submit more detailed time records for its professionals by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, or other applicable procedures and orders of the Court, the Debtors respectfully request that this Court waive such requirements.

19. Notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any order of this Court, or any other guideline regarding the submission and approval of fee applications, the Debtors request that SC&H's professionals be excused from the interim fee application requirements of Bankruptcy Code sections 330 and 331.

20. The Debtors believe the Fee Structure is consistent with, and typical of, compensation arrangements entered into by SC&H and other comparable firms in connection with the rendering of similar services under similar circumstances, both in and out of bankruptcy proceedings. The Debtors also believe that the Fee Structure reflects a balance between a fixed initial fee and a contingency amount, which is tied to the consummation and closing of the

transactions and services contemplated by the Debtors and SC&H in the Engagement Letter. In determining the Fee Structure and the reasonableness of such compensation, the Debtors compared SC&H's fee proposal to comparable precedents. After such comparison, followed by discussions and arm's-length negotiations, the Debtors believe that the Fee Structure is in fact reasonable, market-based, and designed to compensate SC&H fairly for its work.

21. SC&H's strategic and financial expertise, as well as its capital markets knowledge, financing skills, and restructuring capabilities, some or all of which has and will be required by the Debtors during the term of SC&H's engagement, were important factors to the Debtors in determining the Fee Structure. The Debtors believe that the ultimate benefits of SC&H's services hereunder cannot be measured by reference to the number of hours to be expended by SC&H's professionals in the performance of such services. The Debtors and SC&H agreed upon the Fee Structure in anticipation that a substantial commitment of professional time and effort would be required of SC&H and in light of the fact that (a) such commitment could have and may still foreclose other opportunities for SC&H and (b) the actual time and commitment required of SC&H and its professionals to perform the Restructuring Services may vary substantially from week to week and month to month, creating "peak load" issues for SC&H.

**Indemnification**

22. As part of the overall compensation payable to SC&H under the terms of the Engagement Letter, the Debtors have agreed to certain indemnification, contribution and reimbursement obligations, set forth in Attachment A of the Engagement Letter (the "Indemnification Agreement"). The Indemnification Agreement provides that the Debtors will indemnify and hold harmless SC&H, its affiliates, and their respective current and former directors, officers, partners, managers, agents, representatives, or employees (each, an

"Indemnified Person" and collectively, the "Indemnified Persons") from and against any losses, claims, damages, or liabilities (collectively, "Losses") incurred by an Indemnified Person (a) in connection with, arising out of or related to SC&H's engagement under the Engagement Letter, including but not limited to any pending or threatened claim, litigation or other Action by or against the Company; provided, however, (b) there will be excluded from such indemnification any such Losses that are found in a final court order to constitute willful misconduct or gross negligence on the part of SC&H.

23. The Engagement Letter's indemnification and contribution provisions were fully negotiated by the Debtors and SC&H at arm's-length and in good faith and the Debtors respectfully submit that these indemnification and contribution provisions of the Engagement Letter are reasonable, subject to the modifications set forth in the proposed Order. The Debtors believe that the indemnification provisions in the Engagement Letter are appropriate and reasonable for investment banking engagements both out of court and in chapter 11 cases, and reflect the qualifications and limitations on indemnification provisions that are customary in this district and other jurisdictions.

**No Duplication of Services**

24. The Debtors believe that the services provided by SC&H will not duplicate the services that other professionals will be providing to the Debtors in these Chapter 11 Cases.

25. Specifically, SC&H will carry out unique functions and will use reasonable efforts to coordinate with the Debtors and their professionals retained in these Chapter 11 Cases to avoid the unnecessary duplication of services.

**Professional's Disinterestedness**

26. SC&H has reviewed the list of parties in interest provided by the Debtors. To the best of the Debtors' knowledge, information, and belief, and except to the extent disclosed herein

and in the Mann Declaration, SC&H: (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; (b) does not hold or represent an interest materially adverse to the Debtor's estate; and (c) has no connection to the Debtors, their creditors, or related parties herein.

27. Given the large number of parties in interest in these Chapter 11 Cases, despite the efforts to identify and disclose SC&H's relationships with parties in interest in these Chapter 11 Cases, SC&H is unable to state with certainty that every client relationship or other connection has been disclosed in the Mann Declaration. SC&H shall make continued inquiries following the filing of the Application, on a periodic basis, with additional disclosures to this Court if necessary or otherwise appropriate.

28. The Debtors are informed that SC&H will not share any compensation to be paid by the Debtors, in connection with services to be performed after the Petition Date, with any other person, other than principals and employees of SC&H, to the extent required by section 504 of the Bankruptcy Code.

## Basis for Relief

### I. The Debtors Should be Permitted to Retain SC&H Pursuant to the Terms in the Engagement Letter Pursuant to Sections 327 and 328 of the Bankruptcy Code

29. The Debtors request authority to retain and employ SC&H pursuant to sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code. Section 328(a) provides, in relevant part, that a debtor in possession, "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Section 327(a) of the Bankruptcy Code, in turn, authorizes a debtor in possession to employ professionals that "do not hold or represent an interest

adverse to the estate, and that are disinterested persons." 11 U.S.C. § 327(a). Section 1107(b) of the Bankruptcy Code provides that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).

30. Section 328 of the Bankruptcy Code permits the compensation of professionals, including investment bankers and financial advisors, on more flexible terms that reflect the nature of their services and market conditions. As the U.S. Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Secs. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

123 F. 3d at 862 (footnote omitted).

31. Additionally, Bankruptcy Rule 2016 and Local Rule 2016-2 require retained professionals to submit applications for payment of compensation in chapter 11 cases. Local Rule 2016-2(d) also requires retained professionals to submit detailed time entries that set forth, among other things, a detailed description of each activity performed, the amount of time spent on the activity (in tenth of an hour increments), the subject matter of the activity and the parties involved with the activity at issue. Local Rule 2016-2(h), however, allows a retained professional to request a waiver of these requirements for cause.

32. The Court's approval of the Debtors' retention of SC&H in accordance with the terms and conditions of the Engagement Letter is warranted. First, as discussed above and in the

Mann Declaration, SC&H satisfies the disinterestedness standard in section 327(a) of the Bankruptcy Code. SC&H is well equipped to handle this engagement and will spend a considerable period of time familiarizing itself with the company and the transactions contemplated by the company. SC&H is needed postpetition (i) to assist, as necessary, (a) in contacting potential acquirers or purchasers in connection with possible Sale Transactions and assist in any related negotiations, and (b) with negotiations among creditors and equity holders, and (ii) to provide expert advice and testimony regarding financial matters related to the proposed transactions and to enable the Debtors to discharge their duties as debtors and debtors in possession. SC&H has extensive experience and an excellent reputation in providing high quality investment banking services to debtors and creditors in bankruptcy reorganizations, mergers and acquisitions, and other restructurings. SC&H has become familiar with the Debtors' business operations, capital structure, financing documents, and other material information and is able to assist the Debtors in their restructuring efforts. The Debtors believe that SC&H is well qualified to provide its services to the Debtors in a cost-effective, efficient, and timely manner. Furthermore, as detailed above, SC&H does not hold or represent an interest adverse to the estate and is disinterested.

33. In addition, the Debtors believe that the Fee Structure is market-based, fair, and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code. The Fee Structure reflects SC&H's commitment to the variable level of time and effort necessary to perform the restructuring and investment banking services, SC&H's particular expertise, and the market prices for SC&H's services for engagements of this nature both out of court and in a chapter 11 context. Indeed, the Debtors believe that the Fee Structure appropriately reflects: (a) the nature and scope of services to be provided by SC&H; (b) SC&H's substantial experience with respect

to investment banking services; and (c) the fee structures typically utilized by SC&H and other leading investment banks who do not bill their clients on an hourly basis.

34. Also, notwithstanding the foregoing, under the Proposed Order, the U.S. Trustee, and the Committee retain all rights to object to SC&H's fee application (including expense reimbursement) pursuant to section 330 of the Bankruptcy Code.

35. As set forth above, and notwithstanding approval of the Engagement Letter under section 328 of the Bankruptcy Code, SC&H intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 Cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, and any other applicable procedures and orders of the Court, with certain limited modifications.

36. The Debtors request that the requirements of Local Rule 2016-2(d) and the U.S. Trustee Guidelines be tailored to appropriately reflect SC&H's engagement and its compensation structure. SC&H has requested, pursuant to section 328(a) of the Bankruptcy Code, payment of its fees on a fixed-rate and/or fixed-percentage basis. Additionally, it is not the general practice of investment banking firms to keep detailed time records similar to those customarily kept by attorneys. As discussed above, however, SC&H's restructuring personnel will keep summary time records in hourly increments describing their daily activities and the identity of persons who performed such tasks. Apart from the time recording practices described above, however, SC&H's restructuring personnel do not maintain records consistent with the requirements pursuant to Local Rule 2016-2(h).

## II. The Indemnification and Contribution Terms of the Engagement Letter are Appropriate

37. The indemnification and contribution provisions in the Engagement Letter, as modified by the Proposed Order attached hereto, were fully negotiated between the Debtors and SC&H. The Debtors and SC&H believe that the indemnification provisions in the Engagement Letter are customary and reasonable for investment banking engagements both out of court and in chapter 11 cases.

## III. The Debtors Should be Permitted to Retain and Employ SC&H *Nunc Pro Tunc* to the August 25, 2026

38. The Debtors also believe that employment of SC&H effective *nunc pro tunc* to the August 25, 2026, is warranted under the circumstances of these Chapter 11 Cases. SC&H will provide valuable services to the Debtors regarding the contemplated restructuring transactions. See, e.g., In re Arkansas Co., 798 F.2d 645, 648 (3d Cir. 1986) ("[T]he bankruptcy courts have the power to authorize retroactive employment of counsel and other professionals under their broad equity power." (collecting cases)); see also Local Rule 2014-1(b) ("If the retention motion is granted, the retention shall be effective as of the date the motion was filed, unless the Court orders otherwise."). Courts routinely grant nunc pro tunc relief in this jurisdiction. See, e.g., In re Samson Res. Corp., Case No. 15-11934 (CSS) (Bankr. D. Del. Dec. 9, 2015) (granting nunc pro tunc relief); In re Allied Nevada Gold Corp., Case No. 15-10503 (MFW) (Bankr. D. Del. Apr. 15, 2015) (same); In re GSE Envtl., Inc., Case No. 14-11126 (MFW) (Bankr. D. Del. May 30, 2014) (same); In re MACH Gen, LLC, Case No. 14-10461 (MFW) (Bankr. D. Del. Apr. 11, 2014) (same); In re Sorenson Commc'ns, Inc., Case No. 14-10454 (BLS) (Bankr. D. Del. Mar. 26, 2014) (same); In re Vertis Holdings, Inc., Case No. 12-12821 (CSS) (Bankr. D. Del. Nov. 20, 2012) (same); In re WP Steel Venture LLC, Case No. 12-11661 (KJC) (Bankr. D. Del. Sept. 18,2012) (same).

39. The Debtors need SC&H to begin working immediately as any delay could be detrimental to the Debtors' restructuring efforts and is likely to lead to a less successful sale process.

## IV. The Retention of SC&H is Critical to the Debtors' Success

40. The Debtors submit that the retention of SC&H is in the best interests of all parties in interest in these Chapter 11 Cases. SC&H is a preeminent investment banking firm that is intimately familiar with the Debtor's business and industry. Denial of the relief requested herein will deprive the Debtors of the assistance of uniquely qualified investment banking professionals from the onset of the case.

41. Based on the foregoing, the Debtors submit that they have satisfied the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules to support entry of an order authorizing the Debtors to retain and employ SC&H in this chapter 11 case on the terms described herein and in the Engagement Letter.

## Notice

42. Notice of this Application shall be provided to: (a) the Office of the United States Trustee for Region 3, serving the District of Delaware (Attn: Jon Lipshie, Esq.); (b) counsel to the Official Committee of Unsecured Creditors; (c) Counsel to HUB Truck Rental Corp; (d) counsel to the Debtors' lenders: (i) Eastern Funding, (ii) Kannegiesser GmnH, (iii) (v) MCA Servicing Co, (vi) Merchant Financial Corporation, (vii) Parkside Funding Group LLC, and (viii) counsel to the Debtors' DIP Lender, CSV Capital Partners LLC; and (e) any party entitled to notice pursuant to Bankruptcy Rule 2002 as of the time of service Due to the urgency of the circumstances surrounding this Application and the nature of the relief requested herein, the Debtors respectfully submit that no other or further notice is necessary.

**No Prior Request**

43. No prior request for the relief sought in this Application has been made to this or any other Court.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order substantially in the form attached as Exhibit C, granting the relief requested in the Application and such other further relief as may be just and proper.

Dated: September 2, 2026

GELLERT SEITZ BUSENKELL & BROWN LLC

*/s/ Ronald S. Gellert*
Ronald S. Gellert (DE 4259)
1201 North Orange Street, Suite 300
Wilmington, DE 19801
(302) 425-5806
rgellert@gsbblaw.com

and

MAYERSON & HARTHEIMER, PLLC
Sandra E. Mayerson, Esq.
David H. Hartheimer, Esq.
Mayerson & Hartheimer, PLLC
845 Third Avenue, 11th Floor
New York, NY 10022
Tel: (646) 778-4381
Fax: (646) 778-4384
sandy@mhlaw-ny.com
david@mhlaw-ny.com

*Counsel to the Debtors and Debtors in Possession*